**No. 2025-1883**

# United States Court of Appeals for the Federal Circuit

KAOTICA IP CORP.,

*Plaintiff-Appellee*

*v.*

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

*Defendants-Appellants*

*Appeals from the United States District Court for the Southern District of California in No. 2:21-cv-00433-CAB-DEB, United States District Judge Cathy Ann Bencivengo.*

## APPENDIX

STEPHEN M. LOBBIN, ESQ.
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
La Jolla, CA 92037
(949) 636-1391

*Counsel for Defendants-Appellants*

JANUARY 14, 2026

## TABLE OF CONTENTS

| Dkt. | Date | Docket Text | Appx |
|---|---|---|---|
| 69 | 5/21/25 | Order Denying Motion to Alter Judgment Pursuant to Rule 60 | 1-3 |
| --- | --- | Case Docket | 4-12 |
| 1 | 3/11/21 | Complaint for Patent and Copyright Infringement | 13-68 |
| 23-1 at 7 | 7/30/21 | Plaintiff's Memorandum in Support of Its Motion for Preliminary Injunction | 78 |
| 43 | 10/28/21 | Amended Stipulated Judgment and Permanent Injunction | 219-235 |
| 60 | 5/9/22 | Transcript of Proceedings March 24, 2022 | 259-260 |
| 66 | 5/2/25 | Defendant's Motion to Correct Mistake in Stipulated Judgment | 267-334 |
| 17 | 6/22/21 | Pro Hac Vice Application | 335-336 |
| 37 | 10/15/21 | Stipulated Judgment and Permanent Injunction | 337-353 |
| 40 | 10/27/21 | Stipulated Judgment and Permanent Injunction | 354-382 |
| 44-1 | 2/9/22 | Plaintiff's Memorandum in Support of Ex Parte Motion for OSC | 383-411 |
| 60 | 5/9/22 | Transcript of Proceedings March 24, 2022 | 412-442 |
| 66-2 | 5/2/25 | Declaration of Stephen M. Lobbin in Support of Defendant's Motion to Correct Mistake in Stipulated Judgment | 443-449 |
| 68 | 5/14/25 | Kaotica IP Corp.'s Opposition to Motion to Correct Mistake in Stipulated Judgment | 450-483 |
| 1 (-92 Action) | 1/23/22 | Complaint for Declaratory Judgment | 513-526 |
| 54 | 11/3/23 | Defendant Kaotica Corporation's Notice of Motion and Motion for Summary Judgment | 527-528 |
| 57 | 11/3/23 | Plaintiff's Motion for Summary Judgment Including Daubert Challenge | 529-543 |
| 100 | 6/11/24 | Transcript of Jury Trial June 10, 2024 | 544-553 |
| 103 | 6/12/24 | Transcript of Jury Trial June 11, 2024 | 554-564 |
| 107 | 6/14/24 | Transcript of Jury Trial June 13, 2024 | 565-577 |
| 145 | 2/5/25 | Order on Equitable Claims and Motion for Attorneys' Fees and Costs | 578-594 |
| 187 | 5/22/25 | Transcript of Motion Hearing May 16, 2025 | 595-618 |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KAOTICA IP CORP.,

Plaintiff,

v.

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

Defendants.

Case No.: 21-CV-433-CAB-DEB

**ORDER DENYING MOTION TO ALTER JUDGMENT PURSUANT TO RULE 60**

[Doc. No. 66]

On October 28, 2021, the Court entered an Amended Stipulated Judgment and Permanent Injunction in this matter. [Doc. No. 43.] Plaintiff Kaotica had accused Defendants Iconic Mars Corp. and Oluseyi James Olaleye of infringing various Kaotica intellectual property rights including Kaotica's trade dress rights.

Pursuant to the Stipulated Judgment, Kaotica alleged the Defendants products, "specifically its Iconic Mars Comet shown in Exhibit 2" to the Judgment, and subsequently referred to throughout the Judgment as "the Accused Products," violated Kaotica's trade dress. [*Id*. ¶ 4.] Defendants acknowledged and agreed the Accused Product was the only product it had sold and that it violated Kaotica's valid and subsisting trade dress rights causing irreparable harm to Kaotica. [*Id*. ¶¶ 3–7.] Defendants consented to a judgment

against them for trade dress infringement and a permanent injunction from further sales after December 31, 2021 of the Accused Products.

Attached to the Stipulated Judgment submitted by the parties and entered by the Court on October 28, 2021, as Exhibit 2 [*Id*. at 17], is a photograph of the Accused Product, the Iconic Mars Comet. Counsel Mr. Stephen Lobbin executed the Stipulated Judgment on October 27, 2021 on behalf of Defendants. [*Id*. at 6.]

Shortly thereafter, on February 9, 2022, Kaotica filed a motion for contempt alleging Defendants were violating the terms of the Stipulated Judgment. [Doc. No. 44-1.] Prominently displayed in Kaotica's motion are references to and pictures of Exhibit 2 from the Stipulated Judgment identifying it as the Accused Product and comparing it to Defendants' asserted new version of the Comet. [*Id*. at 6–10, 16.] In opposition to the motion for contempt, Defendants strenuously advocated that Iconic's new product was fundamentally different from the Accused Product subject of the Stipulated Judgment and injunction. [Doc. No. 45.] At that time Defendants never asserted that Exhibit 2 to the Stipulated Judgment was not a product Kaotica accused of infringement or depicted the product Defendants consented violated Kaotica's rights.

Now, over three years later, Defendants move to "correct" the Stipulated Judgment. Defendants assert that Exhibit 2, the identified Accused Product, is not what Kaotica accused of infringement in 2021, but depicts the redesigned product Defendants launched for sale in 2022. [Doc. No. 66.] It is inexplicable to the Court how if the depiction in Exhibit 2 of the Accused Product in the Stipulated Judgment is the Defendants' later product it could have gone unnoticed by the Defendants and their counsel at the time the Judgment was executed and filed. Moreover, that this alleged error went unnoticed and unaddressed during the contempt proceedings despite the intense focus on the appearance of the Accused Product and Defendants' asserted redesigned product.

Regardless, Defendants seek to bring their motion to alter Exhibit 2 to the Stipulated Judgment pursuant to Fed. R. Civ. P. 60(a). This requested alteration of the entered Judgment is not the result of a clerical error or oversight or omission by the Court. The

Court entered the Judgment as stipulated by the parties. *See, e.g., Gerstein v. C.I.A.*, 2010 WL 669743, at *10 (N.D. Cal. Feb 23, 2010) (contrasting Rule 60(a) to correct an error by the court and Rule 60(b) to correct error made by a party). Rule 60(a) does not apply in these circumstances.

Defendants are limited to seeking relief pursuant to Fed. R. Civ. P. 60(b), which provides for relief from a judgment based on "mistake, inadvertence, surprise or excusable neglect" by "a party." A Rule 60(b) motion fails.

Even if the Court were to excuse the utter lack of diligence by Defendants' counsel regarding the submission of a critical exhibit to a Stipulated Judgment and Injunction—and his dereliction to confront the alleged mistake in subsequent contempt proceedings involving this pivotal exhibit, which the Court considers inexcusable—the motion needed to be brought within a reasonable time, and no more than a year after the entry of judgment, in this case by October 28, 2022. Fed. R. Civ. P. 60(c). Defendants' motion filed May 2, 2025, is over two and a half years too late.

Defendants motion to amend the Stipulated Judgment is DENIED.

It is **SO ORDERED**.

Dated: May 22, 2025

Hon. Cathy Ann Bencivengo
United States District Judge

# U.S. District Court
# Southern District of California (San Diego)
# CIVIL DOCKET FOR CASE #: 3:21-cv-00433-CAB-DEB

Kaotica IP Corp. v. Iconic Mars Corporation et al
Assigned to: Judge Cathy Ann Bencivengo
Referred to: Magistrate Judge Daniel E. Butcher
Demand: $100,000
Related Case: 3:22-cv-00092-CAB-DEB
Case in other court: USCA Federal Circuit, 22-01816
Cause: 35:0271 Patent Infringement

Date Filed: 03/11/2021
Date Terminated: 10/27/2021
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Kaotica IP Corp.** represented by

**Dario A. Machleidt**
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue
Suite 3700
Seattle, WA 98101
206-497-9600
Email: dmachleidt@kilpatricktownsend.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Joseph Maune**
Kilpatrick Townsend & Stockton LLP
12255 El Camino Real
Suite 250
San Diego, CA 92130
858-350-6100
Fax: 858-350-6111
Email: jmaune@kilpatricktownsend.com
*(Inactive)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Michael Rosenfeld**
Kronenberger Rosenfeld, LLP
548 Market Street
Suite 85399
San Francisco, CA 94104
415-955-1155
Email: jeff@kr.law
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark J. Rosenberg**
zuMedia Inc.

1180 Sixth Avenue
Eighth Floor
New York, NY 10036
845-238-5996
Email: mrosenberg@zuinc.com
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Adele Hudak**
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
212-216-1174
Fax: 212-216-8001
Email: shudak@tarterkrinsky.com
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Iconic Mars Corporation** — represented by **Stephen M. Lobbin**
SML Avvocati P.C.
888 Prospect Street
Suite 200
La Jolla, CA 92037
949-636-1391
Email: sml@smlavvocati.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Oluseyi James Olaleye** — represented by **Stephen M. Lobbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Oluseyi James Olaleye** — represented by **Stephen M. Lobbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Iconic Mars Corporation** — represented by **Stephen M. Lobbin**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Kaotica IP Corp.**        represented by   **Dario A. Machleidt**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James Joseph Maune**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Michael Rosenfeld**
(See above for address)
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark J. Rosenberg**
(See above for address)
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sandra Adele Hudak**
(See above for address)
*TERMINATED: 05/06/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/11/2021 | 1 | COMPLAINT with Jury Demand against Iconic Mars Corporation, Oluseyi James Olaleye ( Filing fee $ 402 receipt number ACASDC-15511148.), filed by Kaotica IP Corp.. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit)<br><br>The new case number is 3:21-cv-433-WQH-DEB. Judge William Q. Hayes and Magistrate Judge Daniel E. Butcher are assigned to the case. (Rosenfeld, Jeffrey)(smd) (sjt). (Entered: 03/12/2021) |
| 03/12/2021 | 2 | REPORT on the filing or determination of an action regarding patent and/or trademark number(s) *8,737,662*, *D733,690* cc:USPTO (smd) (sjt). (Entered: 03/12/2021) |
| 03/12/2021 | 3 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (smd)(sjt). (Entered: 03/12/2021) |
| 03/12/2021 | 4 | Corporate Disclosure Statement by Kaotica IP Corp.. No Corporate Parents/Interested Parties. (Rosenfeld, Jeffrey)(ag). (Entered: 03/12/2021) |
| 03/12/2021 | 5 | NOTICE of Party With Financial Interest by Kaotica IP Corp. . No Parties With Financial Interest. (Rosenfeld, Jeffrey) (ag). (Entered: 03/12/2021) |

| | | |
|---|---|---|
| 03/16/2021 | 6 | MINUTE ENTRY: The Honorable William Q. Hayes declines assignment pursuant to General Order 598 and requests that the case be assigned to a participating patent judge. (Judge Cathy Ann Bencivengo added to the case. Judge William Q. Hayes is no longer assigned to case and Judge Cathy Ann Bencivengo is now assigned to the case. The new case number is 21cv0433-CAB-DEB).(no document attached) (ag) (Entered: 03/16/2021) |
| 03/16/2021 | 7 | NOTICE - *Report on the Filing or Determination of an Action re. Copyright* by Kaotica IP Corp. (Rosenfeld, Jeffrey) (anh). (Entered: 03/16/2021) |
| 05/06/2021 | 8 | MOTION for Alternative Service on Defendant Iconic Mars Corporation re 1 Complaint, by Kaotica IP Corp.. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Jeffrey M. Rosenfeld, # 3 Affidavit of Reasonable Diligence of Jaime Torres)(Rosenfeld, Jeffrey) (anh). (Entered: 05/06/2021) |
| 05/13/2021 | 9 | ORDER Granting Plaintiff's Motion for Alternative Service on Defendant Iconic Mars Corporation [Doc. No. 8 ]. Signed by Judge Cathy Ann Bencivengo on 5/13/2021. (anh) (Entered: 05/13/2021) |
| 05/21/2021 | 10 | SUMMONS Returned Executed by Kaotica IP Corp.. Iconic Mars Corporation served. (Rosenfeld, Jeffrey) (anh). (Entered: 05/21/2021) |
| 06/09/2021 | 11 | MOTION for Alternative Service on Defendant Oluseyi James Olaleye and for Extension of Time to Serve the Summons and Complaint re 1 Complaint, by Kaotica IP Corp.. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Jeffrey M. Rosenfeld, # 3 Affidavit of Reasonable Diligence of Jaime Torres)(Rosenfeld, Jeffrey) (anh). (Entered: 06/09/2021) |
| 06/09/2021 | 12 | ORDER Order Granting Plaintiff's Motion for Alternative Service on Defendant Oluseyi James Olaleye and for Additional Time to Serve Summons and Complaint. Signed by Judge Cathy Ann Bencivengo on 6/9/2021. (anh) (Entered: 06/10/2021) |
| 06/10/2021 | 13 | SUMMONS Returned Executed by Kaotica IP Corp.. Oluseyi James Olaleye served. (Rosenfeld, Jeffrey) (anh). (Entered: 06/10/2021) |
| 06/15/2021 | 14 | ANSWER to 1 Complaint, with Jury Demand , COUNTERCLAIM against Kaotica IP Corp. by Oluseyi James Olaleye, Iconic Mars Corporation. (Attachments: # 1 Exhibit A) (Lobbin, Stephen)Attorney Stephen M. Lobbin added to party Iconic Mars Corporation(pty:dft), Attorney Stephen M. Lobbin added to party Oluseyi James Olaleye(pty:dft) (anh). (Entered: 06/15/2021) |
| 06/15/2021 | 15 | NOTICE AND ORDER Setting Early Neutral Evaluation Conference; Rule 26 Compliance; and Case Management Conference. Signed by Magistrate Judge Daniel E. Butcher on 6/15/2021.(anh) (Entered: 06/15/2021) |
| 06/22/2021 | 16 | Request to Appear Pro Hac Vice, No payment Submitted. (Application to be reviewed by Clerk.) (Rosenberg, Mark) QC mail sent re missing fee (rmc). (Entered: 06/22/2021) |
| 06/22/2021 | 17 | Request to Appear Pro Hac Vice ( Filing fee received: $ 213 receipt number ACASDC-15850055.) (Application to be reviewed by Clerk.) (Rosenberg, Mark) (rmc). (Entered: 06/22/2021) |
| 06/23/2021 | 18 | ORDER Approving the Pro Hac Vice Application of Mark J. Rosenberg (Re: ECF No. 17 Request to Appear Pro Hac Vice). Signed by Judge Cathy Ann Bencivengo on 6/22/2021. (jrd) (Main Document 18 replaced on 6/23/2021) (jrd). (Entered: 06/23/2021) |
| 06/30/2021 | 19 | MOTION to Dismiss for Failure to State a Claim *Certain Counterclaims and Strike Defendants' Affirmative Defenses* by Kaotica IP Corp.. (Attachments: # 1 Memo of Points and Authorities)(Rosenfeld, Jeffrey) (jpp). (Entered: 06/30/2021) |

| | | |
|---|---|---|
| 07/06/2021 | 20 | ANSWER to 14 Answer to Complaint,, Counterclaim, *; Jury Demand* by Kaotica IP Corp.. (Rosenfeld, Jeffrey) (anh). (Entered: 07/06/2021) |
| 07/21/2021 | 21 | RESPONSE in Opposition re 19 MOTION to Dismiss for Failure to State a Claim *Certain Counterclaims and Strike Defendants' Affirmative Defenses* filed by Iconic Mars Corporation, Oluseyi James Olaleye. (Richardson, Austin) (anh). (Entered: 07/21/2021) |
| 07/28/2021 | 22 | REPLY to Response to Motion re 19 MOTION to Dismiss for Failure to State a Claim *Certain Counterclaims and Strike Defendants' Affirmative Defenses* filed by Kaotica IP Corp.. (Rosenfeld, Jeffrey) (anh). (Entered: 07/28/2021) |
| 07/30/2021 | 23 | MOTION for Preliminary Injunction by Kaotica IP Corp.. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Konrad Zukowski, # 3 Declaration of Mark Rosenberg)(Rosenfeld, Jeffrey) (anh). (Entered: 07/30/2021) |
| 08/05/2021 | 24 | REPORT of Rule 26(f) Planning Meeting. (Rosenberg, Mark) (anh). (Entered: 08/05/2021) |
| 08/06/2021 | 25 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: At the parties' request and with good cause appearing, the Early Neutral Evaluation Conference and Case Management Conference scheduled for August 12, 2021 at 1:30 p.m. are vacated and reset for September 1, 2021 at 1:30 p.m. The deadline to submit confidential briefs, file an updated Joint Discovery Plan, and provide the Court with contact information for all participants is August 25, 2021. (no document attached) (blr) (Entered: 08/06/2021) |
| 08/20/2021 | 26 | RESPONSE in Opposition re 23 MOTION for Preliminary Injunction filed by Iconic Mars Corporation, Oluseyi James Olaleye. (Attachments: # 1 Declaration Oluseyi James Olaleye, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(Lobbin, Stephen) (anh). (Entered: 08/20/2021) |
| 08/23/2021 | 27 | ORDER Granting Motion to Dismiss Counterclaim and to Strike Affirmative Defenses [Doc. No. 19 ]. Signed by Judge Cathy Ann Bencivengo on 8/23/2021. (anh) (Entered: 08/23/2021) |
| 08/25/2021 | 28 | REPORT of Rule 26(f) Planning Meeting. (Rosenberg, Mark) (anh). (Entered: 08/25/2021) |
| 08/27/2021 | 29 | REPLY to Response to Motion re 23 MOTION for Preliminary Injunction filed by Kaotica IP Corp.. (Attachments: # 1 Declaration of Mark J. Rosenberg)(Rosenberg, Mark) (anh). (Entered: 08/27/2021) |
| 08/27/2021 | 30 | DECLARATION re 29 Reply to Response to Motion *Corrected Declaration* by Plaintiff Kaotica IP Corp.. (Rosenberg, Mark) (anh). (Entered: 08/27/2021) |
| 08/31/2021 | 31 | ORDER Setting Hearing on Motion for Preliminary Injunction [Doc. No. 23 ]. Signed by Judge Cathy Ann Bencivengo on 8/31/2021.(anh) (Entered: 08/31/2021) |
| 09/01/2021 | 32 | ORDER Rescheduling Hearing on Motion for Preliminary Injunction [Doc. No. 23 ]. Signed by Judge Cathy Ann Bencivengo on 9/1/2021.(anh) (Entered: 09/01/2021) |
| 09/01/2021 | 33 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: An Early Neutral Evaluation Conference was held on 9/1/2021. Because settlement discussions are ongoing, the Case Management Conference ("CMC") was not held. A Settlement Conference is set for 9/2/2021 at 2:30 PM. Counsel and party representatives with full settlement authority must participate. The Settlement Conference will be held by Zoom. The Court will provide instructions for Zoom participation beforehand. If the case does not settle, a CMC will be held immediately following the Settlement Conference. (Plaintiff Attorney Mark J. Rosenberg). (Defendant Attorney Joshua Osborn and Stephen Lobbin). (no document attached) (Dech, E.) (Entered: 09/01/2021) |

| | | |
|---|---|---|
| 09/02/2021 | 34 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: A Settlement Conference was held on 9/2/2021. The case settled, and the terms of that settlement were placed on the record. The attorneys must appear for a telephonic Settlement Disposition Conference ("SDC") on 10/1/2021 at 9:30 AM unless a consent judgment is filed with the Court prior to the SDC. Plaintiff's counsel must initiate the Conference and call the Court's Chambers with all counsel on the line. (Plaintiff Attorney Mark J. Rosenberg). (Defendant Attorney Joshua Osborn). (no document attached) (Dech, E.) (Entered: 09/02/2021) |
| 09/03/2021 | 35 | ORDER Vacating Hearing on Motion for Preliminary Injunction [Doc. No. 23 ]. Signed by Judge Cathy Ann Bencivengo on 9/3/2021. (anh) (Entered: 09/03/2021) |
| 10/01/2021 | 36 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: A Settlement Disposition Conference ("SDC") was held on 10/1/2021. A second SDC is set for 10/15/2021 at 9:30 AM. Plaintiff's counsel must initiate the conference call and call the Court's Chambers with all counsel on the line. The SDC will be vacated if the parties file the appropriate consent judgment papers beforehand. (Plaintiff Attorney Mark J. Rosenberg). (Defendant Attorney Joshua Osborn). (no document attached) (Dech, E.) (Entered: 10/01/2021) |
| 10/15/2021 | 37 | MOTION to Approve Consent Judgment *STIPULATED JUDGMENT AND PERMANENT INJUNCTION* by Kaotica IP Corp.. (Rosenberg, Mark) (anh). (Entered: 10/15/2021) |
| 10/22/2021 | 38 | MINUTE ORDER: It is hereby ORDERED that a telephonic hearing regarding the parties submitted Stipulated Judgment and Permanent Injunction [Doc. No. 37 ] will be held on Tuesday, October 26, 2021 at 10:00 a.m. Counsel is instructed to connect through the Courts teleconference line at (888) 398-2342, access code 1749358.(anh) (Entered: 10/22/2021) |
| 10/26/2021 | 39 | Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Motion Hearing held on 10/26/2021 re 37 MOTION to Approve Consent Judgment *STIPULATED JUDGMENT AND PERMANENT INJUNCTION* filed by Kaotica IP Corp. Parties to resubmit stipulation. (Court Reporter/ECR Mauralee Ramirez). (Plaintiff Attorney Mark J. Rosenberg). (Defendant Attorney Stephen M. Lobin; Joshua N. Osborn). (no document attached) (smy) (Entered: 10/26/2021) |
| 10/27/2021 | 40 | MOTION to Approve Consent Judgment *Stipulated Judgment and Permanent Injunction (Revised)* by Kaotica IP Corp.. (Rosenberg, Mark) (anh). (Entered: 10/27/2021) |
| 10/27/2021 | 41 | Stipulated Judgment and Permanent Injunction. Signed by Judge Cathy Ann Bencivengo on 10/27/2021. (anh) (Entered: 10/27/2021) |
| 10/28/2021 | 42 | Amended MOTION to Approve Consent Judgment *Amended Stipulated Judgment and Permanent Injunction* by Kaotica IP Corp.. (Rosenberg, Mark) (anh). (Entered: 10/28/2021) |
| 10/28/2021 | 43 | AMENDED Stipulated Judgment and Permanent Injunction. Signed by Judge Cathy Ann Bencivengo on 10/28/2021. (anh) (Entered: 10/28/2021) |
| 02/09/2022 | 44 | MOTION for Order *to Show Cause Why Defendants Should Not Be Held In Contempt* by Kaotica IP Corp.. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Mark J. Rosenberg, # 3 Declaration of Tim J. Billick, # 4 Declaration of Konrad Zukowski)(Rosenfeld, Jeffrey) (anh). (Entered: 02/09/2022) |
| 02/14/2022 | 45 | RESPONSE in Opposition re 44 MOTION for Order *to Show Cause Why Defendants Should Not Be Held In Contempt* filed by Iconic Mars Corporation, Oluseyi James Olaleye. (Attachments: # 1 Declaration Oluseyi James Olaleye,, # 2 Exhibit A, # 3 Exhibit B, # 4 |

| | | |
|---|---|---|
| | | Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K)(Lobbin, Stephen) (anh). (Entered: 02/14/2022) |
| 02/14/2022 | 46 | DECLARATION re 44 MOTION for Order *to Show Cause Why Defendants Should Not Be Held In Contempt (Supplemental)* by Plaintiff Kaotica IP Corp.. (Rosenfeld, Jeffrey) (anh). (Entered: 02/14/2022) |
| 02/14/2022 | 47 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: A telephonic Status Conference will be held on 2/22/2022 at 11:00 AM, regarding Kaotica IP Corp.'s Motion for an Order to Show Cause. Dkt. No. 44. To join the Conference, counsel must call the Court's teleconference line at 1-888-398-2342, enter access code 8389272, and press * if prompted for a security code. (no document attached) (Dech, E.) (Entered: 02/14/2022) |
| 02/22/2022 | 48 | Minute Entry for proceedings held before Magistrate Judge Daniel E. Butcher: Status Conference held on 2/22/2022. (Plaintiff Attorney Mark J. Rosenberg). (Defendant Attorneys Joshua Osborn and Stephen Lobbin). (no document attached) (Dech, E.) (Entered: 02/22/2022) |
| 02/22/2022 | 49 | ORDER Setting Hearing on Motion to Hold Defendants in Contempt [Doc. No. 44 ]. Signed by Judge Cathy Ann Bencivengo on 2/22/2022.(anh) (Entered: 02/22/2022) |
| 02/25/2022 | 50 | Joint MOTION to Continue *Contempt Hearing (ECF No. 49)* by Kaotica IP Corp.. (Rosenberg, Mark) (anh). (Entered: 02/25/2022) |
| 02/25/2022 | 51 | ORDER Continuing Hearing on Motion to Hold Defendants in Contempt [Doc. No. 50 ]. Signed by Judge Cathy Ann Bencivengo on 2/25/2022. (anh) (Entered: 02/25/2022) |
| 03/09/2022 | 52 | Request to Appear Pro Hac Vice ( Filing fee received: $ 213 receipt number ACASDC-16634981.) (Application to be reviewed by Clerk.) (Hudak, Sandra) (rmc). (Entered: 03/09/2022) |
| 03/09/2022 | 53 | ORDER Approving the Pro Hac Vice Application of Sandra Adele Hudak, re 52 Request to Appear Pro Hac Vice. Signed by Judge Cathy Ann Bencivengo on 3/9/2022.(rmc) (Entered: 03/10/2022) |
| 03/24/2022 | 54 | Minute Order. for proceedings held before Judge Cathy Ann Bencivengo:Motion Hearing held on 3/24/2022 re 44 MOTION for Order *to Show Cause Why Defendants Should Not Be Held In Contempt* filed by Kaotica IP Corp. Defendant Oluseyi James Olaleye (Iconic Mars Corp.) called/sworn and examined by the Court. For reasons stated on the record, the Court denies the 44 Motion for Order re Contempt. (Court Reporter/ECR Mauralee Ramirez). (Plaintiff Attorney Mark Rosenberg and Sandra Hudak).(Defendant Attorney Stephen Lobbin and Joshua Osborn). (no document attached) (lmh) (Entered: 03/25/2022) |
| 04/22/2022 | 55 | MOTION for Extension of Time to File *Notice of Appeal (Consent)* by Kaotica IP Corp.. (Rosenberg, Mark) (anh). (Entered: 04/22/2022) |
| 04/22/2022 | 56 | ORDER Extending Time to File Notice of Appeal [Doc. No. 55 ]. Signed by Judge Cathy Ann Bencivengo on 4/22/2022. (ave) (jms). (Entered: 04/22/2022) |
| 05/05/2022 | 57 | NOTICE *OF SUBSTITUTION OF COUNSEL* by Kaotica IP Corp. (Maune, James)Attorney James Joseph Maune added to party Kaotica IP Corp.(pty:pla), Attorney James Joseph Maune added to party Kaotica IP Corp.(pty:cd) (anh). (Entered: 05/05/2022) |
| 05/05/2022 | 58 | NOTICE of Appearance by James Joseph Maune on behalf of Kaotica IP Corp. (Maune, James) (anh). (Entered: 05/05/2022) |
| 05/06/2022 | 59 | ORDER Granting Motion to Substitute Counsel [Doc. No. 57 ]. Signed by Judge Cathy Ann Bencivengo on 5/6/2022. (anh) (Entered: 05/06/2022) |

| | | |
|---|---|---|
| 05/09/2022 | 60 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Motion Hearing) held on 3/24/2022 before Judge Cathy Ann Bencivengo. Court Reporter/Transcriber: Mauralee Ramirez. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 5/31/2022. Redacted Transcript Deadline set for 6/9/2022. Release of Transcript Restriction set for 8/8/2022. (akr) (Entered: 05/09/2022) |
| 05/10/2022 | 61 | Request to Appear Pro Hac Vice ( Filing fee received: $ 213 receipt number ACASDC-16810322.) (Application to be reviewed by Clerk.) (Machleidt, Dario) (rmc). (Entered: 05/10/2022) |
| 05/10/2022 | 62 | PRO HAC APPROVED: Dario A. Machleidt appearing for Plaintiff Kaotica IP Corp., Counter Defendant Kaotica IP Corp. (no document attached) (rmc) (Entered: 05/10/2022) |
| 05/20/2022 | 63 | NOTICE OF APPEAL to the Federal Circuit by Kaotica IP Corp as to [ECF 54] Order denying Plaintiff's Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt. (Filing fee $ 505 receipt number ACASDC-16842090.) (Maune, James). (Modified on 5/20/2022: Edited docket text re linked Order. Notice of Appeal electronically transmitted to the US Court of Appeals for the Federal Circuit.) (akr). (Entered: 05/20/2022) |
| 05/23/2022 | 64 | USCA Case Number 2022-1816 for 63 Notice of Appeal to the Federal Circuit filed by Kaotica IP Corp. (akr) (Entered: 05/23/2022) |
| 10/24/2022 | 65 | MANDATE of USCA for the Federal Circuit as to 63 Notice of Appeal to Federal Circuit, filed by Kaotica IP Corp. (smy1)(jrd) (Entered: 10/24/2022) |
| 05/02/2025 | 66 | MOTION to Amend/Correct 43 Order on Motion to Approve Consent Judgment *Under Fed. R. Civ. P. 60(a)* by Iconic Mars Corporation, Oluseyi James Olaleye. (Attachments: # 1 Declaration Oluseyi James Olaleye, # 2 Declaration Stephen M. Lobbin, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12)(Lobbin, Stephen) (anh). (Entered: 05/02/2025) |
| 05/07/2025 | 67 | MINUTE ORDER: Iconic Mars has filed a motion to amend the stipulated judgment in this case. [Doc. No. 66 .] Kaotica should file a response to this motion by May 14, 2025 in advance of the May 16, 2025 hearing.(anh) (Entered: 05/07/2025) |
| 05/14/2025 | 68 | REPLY to Response to Motion re 66 MOTION to Amend/Correct 43 Order on Motion to Approve Consent Judgment *Under Fed. R. Civ. P. 60(a)* filed by Kaotica IP Corp.. (Attachments: # 1 Declaration of Machleidt, # 2 Exhibit 1 to Machleidt Decl, # 3 Exhibit 2 to Machleidt Decl, # 4 Exhibit 3 to Machleidt Decl, # 5 Exhibit 4 to Machleidt Decl) (Machleidt, Dario) (dim). (Entered: 05/14/2025) |
| 05/21/2025 | 69 | ORDER Denying Motion to Alter Judgment Pursuant to Rule 60 [Doc. No. 66 ]. Signed by Judge Cathy Ann Bencivengo on 5/22/2025. (All non-registered users served via U.S. Mail Service)(anh) (Entered: 05/21/2025) |
| 06/20/2025 | 70 | NOTICE OF APPEAL to the Federal Circuit as to 69 Order on Motion to Amend/Correct, 43 Order on Motion to Approve Consent Judgment by Iconic Mars Corporation, Oluseyi James Olaleye., $ 605, receipt number ACASDC-20070722, Paid on 7/7/2025. (Lobbin, Stephen) ** Certified Public Docket, Notice of Appeal, ECF Nos. 69 and 43 sent to the Federal Circuit via email ; acknowledgment of Receipt Email received on 06/23/2025 at |

| | | |
|---|---|---|
| | | 7:53AM. ** (mjw). Modified on 7/24/2025: To reflect Fee Payment received on 07/07/2025. ** (mjw). (Entered: 06/20/2025) |
| 07/07/2025 | 71 | Fee for Appeal to Federal Circuit Court of Appeals re: 70 : $ 605, receipt number ACASDC-20070722, Paid on 7/7/2025. (no document attached) (Lobbin, Stephen) ** Modified on 7/24/2025: Change Appeal Payment from Ninth Circuit Court of Appeals to Federal Circuit Court of Appeals. ** (mjw). (Entered: 07/07/2025) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/03/2025 13:35:10 | | | |
| **PACER Login:** | slobbin2017 | **Client Code:** | IMC |
| **Description:** | Docket Report | **Search Criteria:** | 3:21-cv-00433-CAB-DEB |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |
| **Exempt flag:** | Not Exempt | **Exempt reason:** | Not Exempt |

Jeffrey M. Rosenfeld (State Bar No. 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jeff@krinternetlaw.com

Mark J. Rosenberg (NY Bar No. 2357036)
(*pro hac vice* application forthcoming)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

*Attorneys for Plaintiff*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA IP CORP.,

Plaintiff,

v.

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

Defendants.

Case No: '21CV0433 WQHDEB

**COMPLAINT FOR PATENT AND COPYRIGHT INFRINGEMENT**

**JURY TRIAL DEMANDED**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1. This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §1 *et seq*., copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §101 *et seq*., and trade dress infringement arising under the Lanham Act, 15 U.S.C. §1051 *et seq*., in which Plaintiff Kaotica IP Corp. makes the following allegations against Defendants Iconic Mars Corporation and Oluseyi James Olaleye (collectively, "Defendants").

**THE PARTIES**

2. Kaotica IP Corp. ("Kaotica" or "Plaintiff") is a Canadian corporation with its principal place of business at 3917-17th Street SW, Calgary, Alberta, Canada T2T 4P3.

3. Upon information and belief, Defendant Iconic Mars Corporation ("Iconic") is a company formed under the laws of the State of California with a place of business at 8152 Dodie Street, San Diego, California 92114.

4. Defendant Oluseyi James Olaleye is an individual who, upon information and belief, resides at 1941 F Avenue, Apt 3, National City, California 91950.

5. Upon information and belief, Mr. Olaleye is the acting, driving force behind the conduct of defendant Iconic alleged herein. Upon information and belief, all of the illegal acts of Iconic alleged herein were either performed by Mr. Olaleye or by persons acting at the direction and upon the authority of Mr. Olaleye.

**JURISDICTION AND VENUE**

6. This action arises under the patent laws of the United States, Title 35 of the United States Code and the Copyright Act, Title 17 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a).

7. This Court has personal jurisdiction over Defendants in this action because, among other reasons, Defendants both reside in this District, have committed

acts within this District giving rise to this action, and are subject to the jurisdiction of this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) and (3) because both Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

9. Kaotica is the owner by assignment of United States Patent No. 8,737,662 entitled "Noise Mitigating Microphone Attachment" (the "'662 Patent"). The '662 Patent was duly and legally issued by the United States Patent and Trademark Office on May 27, 2014. A true and correct copy of the '662 Patent is attached hereto as **Exhibit 1**.

10. Kaotica owns all right, title, and interest in and to the '662 Patent, including all rights to sue and recover for past and future infringement.

11. The '662 Patent provides for a portable and easy to use noise mitigating microphone attachment that allows for noise mitigation during sound recording by protecting a microphone from picking up unwanted sounds.

12. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled "Noise Mitigating Microphone Attachment" (the "'690 Patent"). The '690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015. A true and correct copy of the '690 Patent is attached hereto as **Exhibit 2**.

13. Kaotica owns all right, title, and interest in and to the '690 Patent, including all rights to sue and recover for past and future infringement.

14. The '690 Patent claims the ornamental design of a noise mitigating microphone attachment.

15. Kaotica also owns all right, title, and interest in and to the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the "Kaotica Text"). A copy of the Kaotica Text is attached

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

hereto as **Exhibit 3.** The Kaotica Text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021. A copy of this copyright registration is attached hereto as **Exhibit 4.**

16. Since October 2015, each KAOTICA EYEBALL noise mitigating microphone attachment has borne a unique trade dress, namely a spherical black body onto one side of which is placed a flat, circular pop filter of a contrasting color, creating the look of an eyeball (the "KAOTICA Trade Dress"). A true and correct photograph showing Kaotica's noise mitigating microphone attachment bearing the KAOTICA Trade Dress is attached hereto as **Exhibit 5.**

17. Kaotica has continuously used the KAOTICA Trade Dress in United States commerce for over five years. Noise mitigating microphone attachments baring the KAOTICA Trade Dress have enjoyed substantial sales and wide recognition by the purchasing public, the trade, the media, and social media, resulting in the sales of tens of thousands of units, generating millions of dollars in sales.

18. By virtue of the wide renown acquired by the KAOTICA Trade Dress, coupled with the extensive distribution and sales of noise mitigating microphone attachments offered under the KAOTICA Trade Dress throughout the United States along with the widespread media and social media presence, the KAOTICA Trade Dress, prior to the acts of the Defendants complained of herein, became famous and developed a secondary meaning and significance in the minds of the purchasing public, such that noise mitigating microphone attachments bearing this trade dress were and continue to be immediately identified by the purchasing public with a single source, namely KAOTICA.

19. Noise mitigating microphone attachments bearing the KAOTICA Trade Dress are widely recognized by the purchasing public throughout the United States to be of the highest quality, offered and sold under superior customer service conditions. As a result thereof, the KAOTICA Trade Dress and the goodwill associated therewith are of inestimable value to KAOTICA.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**COUNT I**

**INFRINGEMENT OF THE '662 PATENT**

20. Kaotica restates and incorporates by reference paragraphs 1 through 19 of this Complaint as if fully set forth herein.

21. In violation of 35 U.S.C. §271, Defendants make, use, offer for sale, sell, and/or import in the United States products that infringe at least Claim 1 of the claims of the '662 Patent, namely Defendants' Comet Microphone Isolation Booth (the "Accused Products").

22. Defendants have directly infringed one or more claims of the '662 Patent through the manufacture, use, sale, offer for sale, and/or importation of the Accused Products into the United States.

23. The Accused Products include all of the limitations of at least Claim 1 of the '662 Patent, as shown in **Exhibit 6** hereto.

24. Upon information and belief, all decisions regarding the manufacture, sale, offer for sale, and importation of the Accused Products into the United States were made by Defendant Mr. Olaleye.

25. Upon information and belief, unless enjoined, Defendants and/or others acting on behalf of Defendants will continue their infringing acts, thereby causing additional irreparable injury to Kaotica for which there is no adequate remedy at law.

26. Plaintiff has been damaged by Defendants' infringing conduct in an amount to be determined at trial, but no less than a reasonable royalty.

**COUNT II**

**INFRINGEMENT OF THE '690 PATENT**

27. Kaotica restates and incorporates by reference paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. In violation of 35 U.S.C. §271, Defendants make, use, offer for sale, sell, and/or import in the United States products that infringe the '690 Patent, and continue to do so, namely the Accused Products.

29. Defendants have directly infringed the '690 Patent through the manufacture, use, sale, offer for sale, and/or importation into the United States of products that bear an ornamental design that is substantially the same as the design claimed in the '690 Patent.

30. As shown in **Exhibit 7** hereto, the ornamental design claimed in the '690 Patent and the ornamental design of the Accused Products are substantially the same.

31. Upon information and belief, all decisions regarding the ornamental design of the Accused Products and their manufacture, sale, offer for sale, and importation into the United States were made by Defendant Mr. Olaleye.

32. Upon information and belief, unless enjoined, Defendants and/or others acting on behalf of Defendants will continue their infringing acts, thereby causing additional irreparable injury to Kaotica for which there is no adequate remedy at law.

33. Plaintiff has been damaged by Defendants' infringing conduct in an amount to be determined at trial, but no less than a reasonable royalty.

## COUNT III

## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §501

34. Kaotica restates and incorporates by reference paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. In violation of 17 U.S.C. §501, Defendants have infringed the copyright in the Kaotica Text by placing text on the packaging for the Accused Products (the "Infringing Text") that is derived and copied from the Kaotica Text without Kaotica's authorization. A copy of the Infringing Text is attached hereto as **Exhibit 8**.

36. The Infringing Text is derived and copied from and, in places, nearly word-for-word identical to the copyrighted Kaotica Text. *Compare* Exhibits 3 and 8.

37. The Infringing Text is substantially similar to the Kaotica Text.

38. Upon information and belief, Defendant Mr. Olaleye, knowing that the Infringing Text was derived and copied from the Kaotica Text without authorization, made the decision to place the Infringing Text on the packaging for the Accused

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Products.

39. Kaotica has been damaged by Defendants' infringing conduct in an amount to be determined at trial but believed to be at least $100,000.

40. Upon information and belief, unless enjoined, Defendants and/or others acting on behalf of Defendants will continue their infringing acts, thereby causing additional irreparable injury to Kaotica for which there is no adequate remedy at law.

## COUNT IV

## UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)

41. Kaotica restates and incorporates by reference paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. This claim arises under the provisions of the Lanham Act, 15 U.S.C. §1051 *et seq*., particularly under 15 U.S.C. §1125(a), and alleges the use in commerce of false designations of origin, false descriptions, and false representations.

43. Prior to the acts of the Defendants complained of herein, Kaotica extensively marketed, promoted, and used the KAOTICA Trade Dress throughout the United States to identify its products and to distinguish them from those provided by others. By reason of the distinctiveness of the KAOTICA Trade Dress, this trade dress indicates to customers, potential customers, and the trade that noise mitigating microphone attachments bearing the KAOTICA Trade Dress are offered and provided by Kaotica.

44. As a result of Kaotica's marketing, promotion, and substantial sales of noise mitigating microphone attachments bearing the KAOTICA Trade Dress, the KAOTICA Trade Dress has developed and has a secondary and distinctive meaning to customers, potential customers, and the trade so that noise mitigating microphone attachments bearing this trade dress are known and understood to originate from a single source, namely Kaotica.

45. Upon information and belief, years after Kaotica's adoption and commencement of use of the KAOTICA Trade Dress and after this trade dress had

become famous and acquired secondary meaning, Defendants, in an attempt to piggyback off of the fame and success of Kaotica and its KAOTICA Trade Dress, began using unauthorized imitations of the KAOTICA Trade Dress in connection with the offering and sale of noise mitigating microphone attachments, namely, the Accused Products.

46. In particular, in or about 2020, Defendants, without Kaotica's authorization, began offering and selling noise mitigating microphone attachments with an exterior comprised of a nearly spherical black body onto one side of which is placed a flat, circular pop filter of a contrasting color, creating the look of an eyeball (the "Infringing Trade Dress"). True and correct copies of photographs of Defendants' products bearing the Infringing Trade Dress is attached hereto as **Exhibit 9.**

47. Upon information and belief, all decisions regarding the exterior appearance of the Accused Products and their manufacture, promotion, sale, offer for sale, and importation into the United States were made by Defendant Mr. Olaleye.

48. Upon information and belief, Defendants have used the Infringing Trade Dress with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of Kaotica, and to improperly appropriate Kaotica's valuable trade dress rights.

49. Defendants' use and continued use of the Infringing Trade Dress will cause and is likely to cause confusion, mistake, or deception in the minds of the trade and purchasing public and create the erroneous impression that Defendants' use of the Infringing Trade Dress and the provision of the Accused Products under that trade dress are authorized, endorsed, sponsored, or approved by Kaotica or, alternatively, that the offering of noise mitigating microphone attachments bearing the KAOTICA Trade Dress are provided, authorized, endorsed, sponsored, authorized, or approved by Defendants.

50. Defendants' use of the Infringing Trade Dress constitutes a use in

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

interstate commerce of a false designation of origin and a false and misleading description and representation of goods in commerce, with knowledge of the falsity, which has and is likely to cause confusion, mistake, and deception and a use in commercial advertising and promotion which misrepresents the nature, characteristics, qualities, and origin of the Defendants' goods and commercial activities, all within the meaning and in violation of 15 U.S.C. §1125(a).

51. Defendants' use and continued use of the Infringing Trade Dress is causing and, unless enjoined, will continue to cause irreparable harm and damage to Kaotica and its business, reputation, and goodwill, and has caused Kaotica to suffer monetary damages in an amount not thus far determined but believed to be at least $100,000.

52. Unless restrained and enjoined, the Defendants' aforesaid acts will cause Kaotica irreparable harm and damage for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kaotica IP Corp. respectfully requests the Court enter a judgment in favor of Plaintiff and against the Defendants as follows:

A. That Defendants have infringed one or more claims of the '662 Patent;

B. That Defendants have infringed the '690 Patent;

C. That Defendants have infringed the copyright in the Kaotica Text;

D. That Defendants have infringed the KAOTICA Trade Dress;

E. Permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, from (i) further acts of direct and/or indirect infringement of the '662 Patent, the '690 Patent, and the KAOTICA Trade Dress, including the manufacture, use, sale, offer for sale, advertising, and importation of the Accused Products, and from using, copying, or creating derivative works from or otherwise infringing the Kaotica Text; (ii) unfairly competing with Kaotica; and (iii) using in connection with the sale of any goods or services or the dissemination or distribution

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

of advertising, promotional, or marketing materials, a false or misleading description or representation including words or other symbols tending to deceive or cause confusion with Kaotica or the KAOTICA Trade Dress.

D. Providing a full accounting for and an award of damages to Kaotica for Defendants' infringement of the '662 Patent and the '690 Patent, but in no event less than a reasonable royalty, plus enhanced damages pursuant to 35 U.S.C. §284 in an amount no less than treble damages;

E. That Kaotica have a recovery from Defendants of all damages sustained by Kaotica resulting from Defendants' infringing activities and unfair competition;

F. Declaring that this case is exceptional and awarding Kaotica its costs and reasonable attorney's fees under 35 U.S.C. §285;

G. Declaring that this case is exceptional and awarding Kaotica its attorney's fees under 15 U.S.C. §1117(a);

H. Requiring Defendants to account to Kaotica for all profits resulting from Defendants' infringement of the Kaotica Text and that such award of profits to Kaotica be increased by the Court as provided for under 17 U.S.C. §504;

I. Granting pre- and post-judgment interest on all damages awarded to Kaotica; and

J. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Kaotica hereby demands trial by jury on all claims and issues so triable.

Respectfully Submitted,

DATED: March 11, 2021

**KRONENBERGER ROSENFELD, LLP**

s/ Jeffrey M. Rosenfeld
Jeffrey M. Rosenfeld

# TABLE OF CONTENTS OF EXHIBITS

Exhibit 1— United States Patent No. 8,737,662 .......... 2

Exhibit 2 — United States Patent No. D733,690 .......... 14

Exhibit 3 — Kaotica Text .......... 21

Exhibit 4 — United States Copyright Registration No. TX 8-937-518 .......... 25

Exhibit 5 — KAOTICA Trade Dress .......... 28

Exhibit 6 — Accused Products .......... 32

Exhibit 7 — Comparison of the ornamental design claimed in the '690 Patent and the ornamental design of the Accused Products .......... 37

Exhibit 8 — Infringing Text .......... 42

Exhibit 9 — Defendants' products bearing the Infringing Trade Dress .......... 44

# EXHIBIT 1

US008737662B2

(12) **United States Patent**
**Zukowski**

(10) **Patent No.: US 8,737,662 B2**
(45) **Date of Patent: May 27, 2014**

(54) **NOISE MITIGATING MICROPHONE ATTACHMENT**

(75) Inventor: **Konrad Zukowski**, Calgary (CA)

(73) Assignee: **Kaotica Corporation**, Calgary, Alberta (CA)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/604,589**

(22) Filed: **Sep. 5, 2012**

(65) **Prior Publication Data**

US 2014/0064543 A1 Mar. 6, 2014

(51) **Int. Cl.**
***H04R 1/20*** (2006.01)
***H04R 1/34*** (2006.01)
*H04R 1/28* (2006.01)
*H04R 1/08* (2006.01)

(52) **U.S. Cl.**
CPC .............. ***H04R 1/342*** (2013.01); *H04R 1/2876* (2013.01); *H04R 1/083* (2013.01)
USPC .......................... **381/360**; 381/368; 381/354

(58) **Field of Classification Search**
CPC ........ H04R 1/08; H04R 1/083; H04R 1/2869; H04R 1/2876; H04R 1/342; H04R 2201/02; H04R 2410/07
USPC ........ 381/345, 353, 354, 355, 359, 360, 361, 381/368, 71.1; 181/151, 153, 175, 198
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,263,408 A 11/1941 Lakhovsky
3,440,365 A 4/1969 Bryant et al.
3,573,400 A 4/1971 Sessler et al.
3,895,188 A 7/1975 Ingraham
4,570,746 A 2/1986 Das et al.
4,805,728 A 2/1989 Carter et al.
4,834,212 A 5/1989 Figene et al.
4,967,874 A 11/1990 Scalli
5,022,486 A 6/1991 Miura et al.
5,309,808 A 5/1994 Tarrant

(Continued)

FOREIGN PATENT DOCUMENTS

EP 2330829 A1 6/2011
WO 99/49697 A1 9/1999
WO 2009/134519 A1 11/2009

OTHER PUBLICATIONS

International Search Report and Written Opinion mailed Oct. 28, 2013 in PCT/CA2013/050674, 8 pages.

*Primary Examiner* — Tuan D Nguyen
(74) *Attorney, Agent, or Firm* — Kilpatrick Townsend & Stockton LLP

(57) **ABSTRACT**

Methods, systems and apparatus are described for mitigating noise during sound recording. A noise mitigating microphone attachment comprises a foam structure. A first cavity extending from a first opening at a surface of the foam structure and into the foam structure. A microphone is inserted into the first cavity with sound receiving elements of the microphone fully installed in the structure. A second cavity extending from a second opening at the surface of the foam structure and into the foam structure is configured to receive sound from a sound source. The first cavity is fluidly connected to the second cavity within the foam structure so that a junction is formed between the first cavity and the second cavity. The junction, the sound cavity, and the sealing of the microphone work to shield the sound receiving elements of the microphone from sound other than received through the second opening.

**22 Claims, 5 Drawing Sheets**

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,395,168 | A | 3/1995 | Leenen | |
| 5,692,060 | A * | 11/1997 | Wickstrom | 381/361 |
| 6,968,053 | B1 | 11/2005 | Ray | |
| 7,496,208 | B2 | 2/2009 | Uchimura | |
| 7,747,033 | B2 | 6/2010 | Uchimura | |
| 7,783,069 | B1 | 8/2010 | Miller et al. | |
| 7,916,887 | B2 | 3/2011 | Cleckler et al. | |
| 8,069,946 | B1 | 12/2011 | Cruise, III | |
| 2005/0126848 | A1 * | 6/2005 | Siavoshai et al. | 181/207 |
| 2009/0202097 | A1 | 8/2009 | Tiscareno et al. | |

* cited by examiner



FIG. 1



U.S. Patent May 27, 2014 Sheet 2 of 5 US 8,737,662 B2

200
202
204
206

FIG. 2

6
Appx28



U.S. Patent May 27, 2014 Sheet 3 of 5 US 8,737,662 B2

300
310
308
312
302
306
304

FIG. 3

7
Appx29



U.S. Patent May 27, 2014 Sheet 4 of 5 US 8,737,662 B2

402
404
406

FIG. 4

8
Appx30



500
Insert microphone at first opening of a noise mitigating microphone attachment
502
Extend microphone through first cavity into second cavity
504
Position performance sound source proximate to second opening of the noise mitigating microphone attachment
506
Using microphone, record sound waves from performance sound source entering second cavity via the second opening
508

FIG. 5

# NOISE MITIGATING MICROPHONE ATTACHMENT

## BACKGROUND

When a microphone is used to record a performance in a space that has not been treated for sound recording, sound that is unrelated to the performance may be picked up by the microphone. Ambient noise or "room tone" can include noise originating within the space, such as the sound of an air conditioner or computer fan in the room. Noise entering the space from the exterior, such as traffic noise may also contribute to ambient noise levels. Ambient noise that is picked up by a microphone during the recording of a performance can detract from the quality of the recording.

Additionally, performance sound can be reflected from interior surfaces of the space, such as walls, ceiling, floor, furniture, etc. When the reflected sound waves arrive at the microphone, the reflected sound waves may be out of phase with the sound waves traveling directly from the performer to the microphone. These reflected sound waves may be picked up by the microphone as a muddled version or echo of the performance.

Because of these issues, performances are often recorded in a room that is specially treated for sound recording. For example, the interior surfaces of the room may be treated with sound absorbing materials to reduce reflections of performance sound within the room. The windows and doors of the room may be reinforced or constructed from materials designed to reduce the intrusion of exterior noise into the space. Additional measures may be taken to reduce machine noise in the room. Such measures can make treating a room for sound recording a costly and complicated endeavor. Moreover, when sound recording occurs within a home, it may be undesirable to alter the appearance of the room as needed to accommodate sound recording.

Portable sound recording booths may be set up within a room that is not treated for sound recording. The portable sound recording booth may have walls and a ceiling treated with sound absorbing material to reduce the amount of reflected sound picked up by a microphone. The booth may be costly, require a complicated assembly process and, when assembled, can occupy a substantial amount of space within a room.

Embodiments of the invention solve these and other problems.

## BRIEF SUMMARY

Methods and apparatus are described for mitigating noise with a portable microphone attachment.

According to one embodiment, an attachment for a microphone comprises a foam structure. A first cavity extending from a first opening at a surface of the foam structure and into the foam structure is configured to seal a microphone at least partly into the cavity with sound receiving elements of the microphone fully installed in the structure. A second cavity extending from a second opening at the surface of the foam structure and into the foam structure is configured to receive sound from a sound source. The first cavity is fluidly connected to the second cavity within the foam structure so that a junction is formed between the first cavity and the second cavity. The junction, the sound cavity, and the sealing of the microphone work to shield the sound receiving elements of the microphone from sound other than received through the second opening.

In another embodiment, a system for noise mitigation comprises a microphone and a means for installing the microphone within a structure such that sound receiving elements of the microphone are at least partially sealed within the structure. A cavity extends from an opening at the surface of the structure to a second position within the structure such that an airspace is located between the second position and the sound receiving elements when the microphone is held by the means for installing.

In a further embodiment, a method for mitigating noise comprises receiving a microphone through a first opening of a foam structure into a first cavity in the foam structure. The microphone extends through the first cavity into a second cavity in the foam structure. The second cavity is fluidly connected to the first cavity within the foam structure and extends from a second opening at a surface of the foam structure. Performance sound is received from a performance sound source via the second cavity. Sound waves incident on an exterior surface of the second cavity are attenuated by the foam structure.

To better understand the nature and advantages of the present invention, reference should be made to the following description and the accompanying figures. It is to be understood, however, that each of the figures is provided for the purpose of illustration only and is not intended as a definition of the limits of the scope of the present invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** shows an illustrative noise mitigating microphone attachment, according to an embodiment.

FIG. **2** shows an illustrative pop filter, according to an embodiment.

FIG. **3** illustrates the insertion of a pop filter and a microphone into an illustrative noise mitigating microphone attachment, according to an embodiment.

FIG. **4** is a front view of an illustrative noise mitigating microphone attachment shown seated in a shock mount, according to an embodiment.

FIG. **5** is an illustrative flowchart of a process for mitigating noise during a recording with a noise mitigating microphone attachment, according to an embodiment.

## DETAILED DESCRIPTION

Embodiments of the present invention relate to mitigating noise during a sound recording with a noise mitigating microphone attachment. Noise can refer to any unwanted sound, i.e., sound that is not desirable to have a microphone detect during a recording. For example, it may be desirable that noise such as ambient noise and reflections of sound waves originating from a performance sound source is mitigated. The noise mitigating microphone attachment can reduce the amount of noise that a microphone will pick up during a sound recording.

The noise mitigating microphone attachment is typically a foam structure, such as a foam sphere. The noise mitigating microphone attachment can have two openings. A microphone can be inserted through one of the openings into a first hollow cavity ("microphone cavity") within the foam structure. The second opening may be placed proximate to a sound source, such as a vocalist or an instrument. Sound radiating from the sound source travels through the second opening into a second hollow cavity ("sound cavity"). The microphone cavity and the sound cavity can intersect, allowing sound from the sound source to travel to the microphone via

the sound cavity. In some embodiments, the microphone can extend through the microphone cavity into the sound cavity.

The microphone can be attached to the foam structure by an elastic coupling between the microphone and the foam structure. The elastic coupling may form a seal around the casing of microphone The seal can reduce the amount of noise that enters the sound cavity through the microphone cavity.

The structure (e.g., foam) surrounding the sound cavity can be a sound attenuating material for attenuating sound waves incident on the exterior surface of the sound cavity, such that sound waves traveling through the structure into the sound cavity are attenuated. In some embodiments, the structure can absorb sound incident on the exterior surface of the noise mitigating microphone attachment. The structure may additionally attenuate sound waves incident on the interior surface of the sound cavity, such that sound waves traveling through the structure from the sound cavity to the exterior of the structure are attenuated. The structure can further absorb noise incident on the interior surface of the sound cavity. Performance sound received at the opening into the sound cavity can be channeled along the sound cavity to the microphone.

FIG. **1** shows a side view of a noise mitigating microphone attachment according to an embodiment. Noise mitigating microphone attachment **100** can include structure **102** having a sound cavity **104** and a microphone cavity **108**. In some embodiments, structure **102** is a foam having sound absorbing properties. For example, structure **102** may be polyurethane foam, such as an open cell polyurethane foam. The foam may have an Indentation Force Deflection (IFD) at 25% deflection between 40 and 150 pounds per 50 square inches (lb./50 in.$^2$), such as 65 to 70 lb./50 in.$^2$, e.g., 70 lb./50 in.$^2$. The foam may have a density threshold between 1.5 and 3.5 pounds per cubic foot (PCF), such as 2.45-2.55 PCF, e.g., 2.5 PCF. Polyurethane foam may be fabricated in a mold The foam can be fabricated with an integral skin or may be fabricated or modified to have no integral skin.

Structure **102** may have a spherical shape. The spherical shape can allow the noise mitigating microphone attachment to be supported within a shock mount, as described further below. Polyurethane foam may experience discoloration over time, and such discoloration may be relatively inconspicuous on a form having a spherical shape (compared with other shapes) due to even exposure of the sphere's surface to air. Structure **102** may be a sphere having a diameter in the range of 12 inches to 36 inches, such as 20 inches to 30 inches, e.g. 23-½" inches. The spherical shape may also facilitate seating of the noise mitigating microphone attachment within a shock mount. This allows the noise mitigating microphone attachment to be used with a microphone mounted to a microphone stand with a shock mount

Sound cavity **104** may extend from an opening **106** at the surface of structure **102**. In some embodiments, sound cavity **104** has a cylindrical shape. A cylindrical shape can allow even absorption and/or reflection of sound around the circumference and along the interior of sound cavity **104**. It will be understood that due to sound absorbing characteristics of the material of which structure **102** may be composed, reflection of sound occurring within sound cavity **104** may be low or negligible. Sound cavity **104** may have a diameter in the range of 1 inch to 8 inches, such as 4 inches to 5 inches, e.g. 4-¼ inches. Sound cavity **104** may have a length in the range of 3 inches to 12 inches, such as 5 inches to 6 inches, e.g. 5-½ inches. The distance from sound cavity **104** to the outer surface of structure **102** may be in the range of 1 inch to 6 inches, such as 1-½" to 3 inches, e.g., 2 inches.

Microphone cavity **108** may extend from an opening **110** at the surface of structure **102** and may intersect sound cavity **104**. In some embodiments, microphone cavity **108** has a cylindrical shape. A cylindrical shape can allow microphone cavity **108** to accommodate microphones having a variety of casings, such as cylindrical casings, rectangular casings, etc. A microphone may be inserted into microphone cavity **108** via opening **110**. The microphone may extend through microphone cavity **108** into sound cavity **104**. Microphone cavity **108** may have a diameter in the range of ½ inch to 3 inches, such as 1 inch to 2 inches, e.g. 1-¾ inches. Microphone cavity **108** may have a length in the range of 1 inch to 6 inches, such as 1-½ inches to 3 inches, e.g. 2 inches.

The microphone can be located at a distance from opening **106**, such a distance in a range of 1 inch to 8 inches, such as 1-½ inches to 4 inches e.g., 2-1/2 inches. The microphone can also be located at a distance from the end of sound cavity opposing opening **106**, such as a distance in a range of 1 inch to 8 inches, such as 2 to 5 inches, e.g., 3 inches. Locating the microphone at a distance from opening **106** allows noise entering sound cavity **104** to interact with absorptive interior surface of sound cavity **104** before arriving at a microphone in microphone cavity **108**. For example, the noise may enter sound cavity at an angle such that it is absorbed by the interior surface of sound cavity **104**. Sound cavity **104** may have a minimal effect on performance sound travelling directly from the performance sound source to the microphone.

Sound cavity **104** and microphone cavity **108** may be oriented at a variety of angles with respect to one another. For example, the longitudinal axis of sound cavity **104** and the longitudinal axis of microphone cavity **108** may be perpendicular with respect to one another, as shown in the illustrative example of FIG. **1**. In other embodiments, the longitudinal axis of sound cavity **104** may be aligned with the longitudinal axis of microphone cavity **108** (e.g., a single cavity extending through the noise mitigating microphone attachment can function as both microphone cavity and sound cavity, receiving a microphone at one end of the cavity and receiving sound at the other end of the cavity.)

A performance sound source may be placed proximate to opening **106** of sound cavity **104**. For example, microphone attachment **100** may be positioned such that opening **106** is aligned with and facing the mouth of a vocalist. In another example, **106** may be positioned adjacent to an instrument. Typically, opening **106** would be placed at a location relative to the performance sound source similar to where a microphone would be placed for recording the performance sound source. A microphone having no noise mitigating microphone attachment may be placed at a distance from a performance sound source to protect the performance sound source from damage due to contact with instruments, being knocked over, etc. Opening **106** of noise mitigating microphone attachment can be placed closer to a performance sound source than a microphone would be placed due to the protection against impact resistance that a noise mitigating microphone attachment provides to a microphone.

FIG. **2** shows a pop filter **200** that can be coupled to a noise mitigating microphone attachment, according to an embodiment. For example, pop filter **200** can be inserted into opening **106** of attachment of noise mitigating microphone attachment **100**. A pop filter can be used to reduce and/or eliminate popping sounds caused when plosive sounds (such as sound that may occur when the letter "B" or "P" is pronounced) and sibilants (such as sound that may occur when the letter "S" or "Z" is pronounced) are recorded by a microphone. Pop filter **200** can include base **206** and lip **204**. Base **206** and lip **204** can be metal, plastic, or other material. Base **206** and lip **204**

can be fabricated as a single part. Lip 204 may extend beyond opening 106 over the surface of structure 102. Pop filter 200 can include mesh 202 extending across the area defined by the interior circumference of lip 204. Mesh 202 may be, e.g., a polyester, metal, or nylon mesh. It will be recognized that a variety of materials or structures could be used as a pop filter in conjunction with a noise mitigating microphone attachment.

FIG. 3 illustrates the insertion of elements such as a pop filter and microphone into noise mitigating microphone attachment structure 300, according to an embodiment. Pop filter 302 may correspond to pop filter 200 described with reference to FIG. 2. Pop filter 302 can be inserted into opening 306 of structure 300. The material of structure 300 may be resilient such that pop filter can be inserted within opening 306 of structure 300 and held in place relative to structure 300 by the material of structure 300.

Microphone 304 can be inserted into microphone cavity 308 of noise mitigating microphone attachment 300. The material of structure 300 may be resilient such that different sizes of microphones can be accommodated by microphone cavity 308. In some embodiments, when microphone 304 is inserted into opening 308 of structure 300, the material of structure 300 elastically couples noise mitigating microphone attachment 300 to microphone 304. If a base of microphone 304 is too narrow to fit snugly within opening 308, an insert, such as a foam collar insert, may be placed around the microphone casing. In this manner, the diameter of the microphone base may be increased such that the microphone base can fit snugly within opening 308. When microphone 304 is inserted in opening 308, elastic coupling between the casing of microphone 304 (or a collar tightly secured around microphone 304) and opening 308 may form a seal. The seal can reduce the amount of noise that enters the sound cavity through the microphone cavity. In some embodiments, the elastic coupling between microphone 304 and opening 308 can allow the noise mitigating microphone attachment to be suspended from microphone 304 (i.e., as if FIG. 3 were rotated 180 degrees).

Microphone 304 can include sound receiving elements 310 and casing 312. Microphone 304 can be any of a wide variety of microphones. The microphone type may be, for example, condenser, electret condenser, dynamic, etc. Typically, microphone 304 is a microphone designed for use in a recording studio environment, although it will be recognized that other microphones may be used. Microphone 304 may have any polar pattern, such as omnidirectional, cardioid, hypercardioid, supercardioid, etc.

The noise mitigating microphone attachment can improve the performance of an omnidirectional microphone for recording performance sound. As will be recognized by those skilled in the art, an omnidirectional microphone may be undesirable when a microphone is used for recording a performance from a particular sound source, such as a vocal performance, because the omnidirectional microphone will pick up sound arriving directly from the vocalist and sound from other directions (e.g., environmental noise and reflected sound from the performance sound source) approximately equally. In contrast, when a noise mitigating microphone attachment is used with an omnidirectional microphone, the noise mitigating microphone attachment receives direct performance sound via the sound cavity and can attenuate and/or absorb sound arriving from other directions.

FIG. 4 is a front view 400 of a noise mitigating microphone attachment shown seated in a shock mount, according to an embodiment. In some embodiments, noise mitigating microphone attachment 402 can be seated in a shock mount 404. A shock mount is a mechanical fastener that can suspend a microphone in elastics that are attached to a microphone stand such that transmission of vibrations from the microphone stand to the microphone is minimized. The shape of the noise mitigating microphone attachment allows it to be used with a microphone mounted in a shock mount. The noise mitigating microphone attachment can also be used with a microphone mounted directly to a microphone stand.

To mount noise mitigating microphone attachment 402 within shock mount 404, the noise mitigating microphone attachment 402 is seated within a cradle formed by the upper arms of shock mount 404. In this manner, the noise mitigating microphone attachment 402 is held in place relative to shock mount 404 by gravity.

FIG. 5 is a flowchart of a process 500 for channeling sound during a recording with a noise mitigating microphone attachment, according to an embodiment

At block 502, a microphone can be inserted into a first opening, such as opening 110 of microphone cavity 108, of a noise mitigating microphone attachment 100. At block 504, the microphone can be extended through first cavity 108 into a second cavity, such as sound cavity 104, of the noise mitigating microphone attachment 100. At block 506, a performance sound source, such as the mouth of a vocalist, can be positioned proximate to a second opening, such as opening 106, of the noise mitigating microphone attachment. At block 508, the microphone can be used to record sound waves from the performance sound source that enter the second cavity via the second opening.

The embodiments described herein provide a portable device that can be produced at low cost relative to the cost of existing solutions for noise mitigation in recording environments. The noise mitigation microphone attachment can be used for sound recording in a home studio, outdoors, or other environment to protect a microphone from picking up unwanted sounds during a performance. A microphone can be inserted into a first opening of the noise mitigation microphone attachment and extend through a microphone cavity into a sound cavity. The sound cavity can extend from a second opening at the surface of the noise mitigating microphone attachment. A performance sound source is typically located proximate to the second opening. Sound incident on the exterior of the noise mitigating microphone attachment is attenuated by the structure of the noise mitigating microphone attachment.

While the invention has been described with respect to specific embodiments, one skilled in the art will recognize that numerous modifications are possible. Thus, although the invention has been described with respect to specific embodiments, it will be appreciated that the invention is intended to cover all modifications and equivalents within the scope of the following claims.

What is claimed is:

1. An attachment for a microphone, the attachment comprising:

a foam structure;

a first cavity extending from a first opening at a surface of the foam structure and into the foam structure, the first cavity configured to seal a microphone at least partly into the cavity with sound receiving elements of the microphone fully installed in the structure;

a second cavity extending from a second opening at the surface of the foam structure and into the foam structure, the second opening configured to receive sound from a sound source, wherein the second cavity is a cylindrical-shaped cavity with a substantially uniform diameter along a longitudinal axis of the second cavity; and

the first cavity being fluidly connected to the second cavity within the foam structure so that a junction is formed between the first cavity and the second cavity, the junction, the sound cavity, and the sealing of the microphone working to shield the sound receiving elements of the microphone from sound other than received through the second opening.

2. The attachment of claim 1, wherein the foam structure has a spherical shape.

3. The attachment of claim 2, wherein the diameter of the foam structure is between twenty and twenty-six inches.

4. The attachment of claim 1, wherein one or more of the first cavity and the second cavity has a cylindrical shape.

5. The attachment of claim 1, wherein a longitudinal axis of the first cavity extends perpendicular to a longitudinal axis of the second cavity.

6. The attachment of claim 1, wherein the diameter of the second cavity is between four and five inches.

7. The attachment of claim 1, wherein the foam structure is an open cell polyurethane foam.

8. The attachment of claim 1, further comprising a microphone coupled to the foam structure.

9. The attachment of claim 1, further comprising an elastic coupling, wherein the foam structure is removably mountable to a microphone by the elastic coupling between the first opening of the foam structure and the microphone.

10. The attachment of claim 1, further comprising a pop filter coupled to the foam structure at the second opening.

11. The attachment of claim 10, wherein the pop filter is removably mounted to the foam structure by an elastic coupling between the pop filter and the interior of the second opening of the foam structure.

12. A system for noise mitigation, the system comprising:

a microphone;

means for installing the microphone within a structure such that sound receiving elements of the microphone are at least partially sealed within the structure;

a cavity extending from an opening at the surface of the structure to a second position within the structure such that an airspace is located between the second position and the sound receiving elements when the microphone is held by said means for installing, wherein the cavity is a cylindrical-shaped cavity with a substantially uniform diameter along a longitudinal axis of the second cavity.

13. The system of claim 12, wherein the structure has a spherical shape.

14. The system of claim 12, wherein the structure is a foam structure.

15. The system of claim 12, wherein the structure is an open cell polyurethane foam.

16. The system of claim 12, wherein the means for installing the microphone within the foam structure include a collar disposed between the microphone and the foam structure.

17. The system of claim 12, further comprising a means for mitigating sound associated with at least one of plosives and sibilants.

18. A method for mitigating noise, the method comprising:

receiving a microphone through a first opening of a foam structure into a first cavity in the foam structure, wherein the microphone extends though the first cavity into a second cavity in the foam structure, the second cavity being fluidly connected to the first cavity within the foam structure and extending from a second opening at a surface of the foam structure, wherein the second cavity is a cylindrical-shaped cavity with a substantially uniform diameter along a longitudinal axis of the second cavity;

receiving performance sound from a performance sound source via the second cavity; and

absorbing, by the foam structure, sound waves incident on an exterior surface of the foam structure.

19. The method of claim 18, further comprising seating the foam structure in a cradle of a shock mount.

20. The method of claim 18, further comprising elastically coupling a pop filter to the foam structure at the second opening of the foam structure.

21. The method of claim 18, further comprising elastically coupling a microphone to the foam structure at the first opening of the foam structure.

22. The method of claim 18, further comprising attenuating sound waves incident on the interior surface of the sound cavity.

* * * * *

# EXHIBIT 2

14
Appx36

US00D733690S

(12) **United States Design Patent**
**Zukowski**

(10) **Patent No.: US D733,690 S**
(45) **Date of Patent: ** Jul. 7, 2015**

(54) **NOISE MITIGATING MICROPHONE ATTACHMENT**

(71) Applicant: **Kaotica Corporation, Corporation #2015091974**, Calgary (CA)

(72) Inventor: **Konrad Zukowski**, Calgary (CA)

(73) Assignee: **Kaotica Corporation**, Calgary (CA)

(**) Term: **14 Years**

(21) Appl. No.: **29/471,259**

(22) Filed: **Oct. 30, 2013**

(51) **LOC (10) Cl.** .......... **14-01**

(52) **U.S. Cl.**
USPC .......... **D14/228**

(58) **Field of Classification Search**
USPC .......... D14/203.1, 203.6, 204–207, 210–221, D14/223–229, 509; 381/322, 354–361, 380; 181/158, 242, 207, D11/121, D7/629, D9/425, 504, 505, 119, 715, 726, 776
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D49,555 S * 8/1916 Vivaudou .......... D9/504
D69,766 S * 3/1926 Miller .......... D9/505
D112,545 S * 12/1938 Younghusband .......... D9/504
2,263,408 A * 11/1941 Lakhovsky .......... 181/242
2,881,850 A * 4/1959 Bonn .......... 181/153
D186,892 S * 12/1959 Wilber .......... D14/211
D210,538 S * 3/1968 Lahti .......... D14/213
3,440,365 A 4/1969 Bryant et al.
3,573,400 A 4/1971 Sessler
D222,072 S * 9/1971 Levitt .......... D14/211
3,895,188 A 7/1975 Ingraham
D254,716 S * 4/1980 Mascia et al. .......... D9/776
D264,994 S * 6/1982 Rippley .......... D24/117
D272,128 S * 1/1984 Parmentier .......... D9/425
4,570,746 A 2/1986 Das et al.
D286,858 S * 11/1986 Giorgio .......... D9/519
D291,179 S * 8/1987 Frizon .......... D9/519
4,703,872 A * 11/1987 Cornette et al. .......... 222/158
4,792,013 A * 12/1988 Boynton .......... 181/242
4,805,728 A 2/1989 Carter et al.
4,834,212 A 5/1989 Figone et al.

(Continued)

FOREIGN PATENT DOCUMENTS

EP 2330829 A1 6/2011
WO 99/49697 A1 9/1999
WO 2009/134519 A1 11/2009

OTHER PUBLICATIONS

International Search Report and Written Opinion mailed Oct. 28, 2013 in PCT/CA2013/050674, 8 pages.

(Continued)

*Primary Examiner* — Susan Bennett Hattan
*Assistant Examiner* — Marie Fast Horse
(74) *Attorney, Agent, or Firm* — Kilpatrick Townsend & Stockton, LLP

(57) **CLAIM**

The ornamental design for a noise mitigating microphone attachment, as shown and described.

**DESCRIPTION**

FIG. **1** is a front elevational view of a noise mitigating microphone attachment showing my new design;
FIG. **2** is a rear elevational view;
FIG. **3** is a left side elevational view;
FIG. **4** is a right side elevational view;
FIG. **5** is a top plan view;
FIG. **6** is a bottom plan view; and,
FIG. **7** is a left, front perspective view.
The broken line in the drawings depicts parts of the noise mitigating microphone attachment that form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,953,223 A * | 8/1990 | Householder | | 381/387 |
| 4,967,874 A | 11/1990 | Scalli | | |
| 5,022,486 A | 6/1991 | Miura et al. | | |
| 5,309,808 A | 5/1994 | Tarrant | | |
| 5,395,168 A | 3/1995 | Leenen | | |
| 5,692,060 A | 11/1997 | Wickstrom | | |
| D395,715 S * | 6/1998 | Queen | | D26/24 |
| D404,681 S * | 1/1999 | Galerneau | | D11/121 |
| D430,142 S * | 8/2000 | Kuo et al. | | D14/216 |
| D445,831 S * | 7/2001 | Lindner | | D19/57 |
| D447,471 S * | 9/2001 | Andre et al. | | D14/216 |
| D460,952 S * | 7/2002 | Kataoka | | D14/126 |
| D464,571 S * | 10/2002 | Hill et al. | | D9/519 |
| D487,739 S * | 3/2004 | Wise | | D14/225 |
| 6,738,487 B1 * | 5/2004 | Nageno et al. | | 381/322 |
| 6,968,053 B1 | 11/2005 | Ray | | |
| 6,991,289 B2 | 1/2006 | House | | |
| D519,112 S * | 4/2006 | Yang | | D14/228 |
| D525,375 S * | 7/2006 | Funck et al. | | D26/26 |
| D526,644 S * | 8/2006 | Breit | | D14/216 |
| D528,257 S * | 9/2006 | Leclerc et al. | | D34/1 |
| D534,814 S * | 1/2007 | Johnston et al. | | D9/726 |
| D552,084 S * | 10/2007 | Chapman et al. | | D14/216 |
| D554,682 S * | 11/2007 | Martinez et al. | | D16/203 |
| D564,900 S * | 3/2008 | Green et al. | | D9/715 |
| D566,189 S * | 4/2008 | Ivey | | D19/75 |
| 7,496,208 B2 | 2/2009 | Uchimura | | |
| D588,583 S * | 3/2009 | McDougal | | D14/225 |
| D592,064 S * | 5/2009 | Kilany | | D9/519 |
| D596,306 S * | 7/2009 | Levine | | D24/214 |
| D596,616 S * | 7/2009 | Andre et al. | | D14/205 |
| D602,311 S * | 10/2009 | Finell | | D7/629 |
| D612,245 S * | 3/2010 | Canamasas Puigbo | | D9/519 |
| D618,209 S * | 6/2010 | Andre et al. | | D14/205 |
| D618,210 S * | 6/2010 | Andre et al. | | D14/205 |
| 7,747,033 B2 | 6/2010 | Uchimura | | |
| 7,783,069 B1 * | 8/2010 | Miller et al. | | 381/354 |
| 7,840,013 B2 * | 11/2010 | Dedieu et al | | 381/92 |
| D631,204 S * | 1/2011 | Dubitsky et al. | | D28/82 |
| 7,916,887 B2 | 3/2011 | Cleckler et al. | | |
| D640,248 S * | 6/2011 | Baumann et al. | | D14/253 |
| D645,846 S * | 9/2011 | Mordechai | | D14/216 |
| D650,280 S * | 12/2011 | de Peyerimhoff et al. | | D9/504 |
| 8,069,946 B1 | 12/2011 | Cruise, III | | |
| D661,540 S * | 6/2012 | Facey | | D7/354 |
| D661,994 S * | 6/2012 | Van Den Wouwer et al. | | D9/563 |
| D674,103 S * | 1/2013 | Smith | | D24/197 |
| D675,194 S * | 1/2013 | Andre et al. | | D14/223 |
| D676,423 S * | 2/2013 | Joseph | | D14/216 |
| 8,430,258 B2 * | 4/2013 | Yamamoto et al. | | 220/62.22 |
| D690,344 S * | 9/2013 | Hollinger | | D16/200 |
| D693,814 S * | 11/2013 | Park | | D14/434 |
| D696,298 S * | 12/2013 | Britt et al. | | D14/496 |
| D698,023 S * | 1/2014 | Iseberg et al | | D24/174 |
| D699,674 S * | 2/2014 | Man | | D13/108 |
| D700,591 S * | 3/2014 | Xiao et al. | | D14/216 |
| D701,831 S * | 4/2014 | Park et al. | | D13/108 |
| D705,844 S * | 5/2014 | Barr et al. | | D16/203 |
| 8,730,037 B2 * | 5/2014 | Houvener et al. | | 340/540 |
| 8,737,662 B2 * | 5/2014 | Zukowski | | 381/360 |
| 2005/0126848 A1 | 6/2005 | Siavoshai et al. | | |
| 2008/0302599 A1 * | 12/2008 | Zou | | 181/290 |
| 2009/0202097 A1 | 8/2009 | Tiscareno et al. | | |
| 2014/0061077 A1 * | 3/2014 | Guttag et al. | | 206/316.1 |
| 2014/0064543 A1 * | 3/2014 | Zukowski | | 381/360 |
| 2014/0064544 A1 * | 3/2014 | Zukowski | | 381/360 |

OTHER PUBLICATIONS

Office Action mailed Oct. 21, 2013 in U.S. Appl. No. 13/604,589, 9 pages.

* cited by examiner



U.S. Patent Jul. 7, 2015 Sheet 1 of 4 US D733,690 S

FIG. 1

17
Appx39

U.S. Patent Jul. 7, 2015 Sheet 2 of 4 US D733,690 S

FIG. 2

FIG. 3

18
Appx40



FIG. 4



FIG. 5



U.S. Patent Jul. 7, 2015 Sheet 4 of 4 US D733,690 S

FIG. 6

FIG. 7

20
Appx42

# EXHIBIT 3

21
Appx43

**Current**

YOUR STUDIO BOOTH ALTERNATIVE

The Kaotica Eyeball is the ultimate isolation solution for your microphone and is gaining recognition as the #1 portable booth on the market. The Eyeball is made from a premium custom foam which provides for ideal sound absorption. It's worldwide patented design technology offers encapsulated isolation for your microphone that creates a unidirectional sound channel which travels through its integrated pop filter reducing much of the external environment and lessening the need to treat your space.

The Kaotica Eyeball fits most side address microphones with diameters (38mm to 70mm / 1.5" to 2.75").

EASE OF SETUP

The Eyeball has no hardware, is extremely light weight, portable and literary sets up in seconds, providing a simple, affordable and effective isolation for your ring.

RECORD ANYWHERE

Weighing in at 5 ounces, the Kaotica Eyeball is easy to pack and carry, making it great for travel.

RECODING CONSISTENCY

The variables of sound nuances within recording environments are greatly reduced, enabling you to consistently capture studio quality tracks.

COLLABORATION

Eliminate the barriers and walls within a studio. Now that artist and the sound professionals can vibe in one space, allowing for a harmonious recording session.

Product Description:

Think of the Eyeball as a studio booth alternative that fits right over your microphone, sets up in seconds, and instantly transforms any space into a recording studio.

The Eyeball fits most vocal recording microphones and shock-mounts. Mics which are side address with long/short-bodies having a diameter of (38mm to 70mm / 1.5" to 2.75").

**ALT**

The Kaotica Eyeball is the ultimate isolation solution for your microphone and is gaining recognition as the #1 portable vocal booth in the market. The Eyeball is made from a premium custom foam which provides for ideal sound absorption. Its worldwide patented design technology offers encapsulated isolation for your microphone that creates a unidirectional sound channel which travels through its integrated pop filter, reducing much of the external environment and lessening the need to treat your recording space.

**ALT**

Eliminate the barriers and walls within a studio by simply placing the Eyeball on your favourite mic. #1 portable vocal booth in the market.

As an artist on the go, you know inspiration can strike anytime, but inspiration never waits for you to find the perfect recording conditions.  That's why we created the Kaotica Eyeball, so you can create anywhere.

Now you've got a portable vocal booth that can travel with you wherever your creativity takes you: whether in your home studio of the big studio, the bus or the hotel room, now you can record studio quality tracks anytime, anyplace.

**ALT**

Redefining your recording space:

Kaotica looked beyond the traditional methods of acoustically treating the space where you record.  We shifted our focus toward the two most important elements in the vocal recording process, capturing the pure tonality of your voice and the nuance of the microphone recording it.  Think of the Eyeball as a studio booth alternative that fits right over your microphone, sets up in seconds, and instantly transforms any space into a recording studio.

For the last century, you've been accustomed to purchasing panels, diffusers, base traps, blankets and maybe some egg crates. Whether you rent or own, you don't necessarily want to be putting holes in the walls. Even if you are committed to foaming everything up, it may not enhance the acoustics, unless you're an acoustician. At Kaotica, we firmly believe that you shouldn't have to think about the room you're recording in. Instead, you should concentrate on your performance.

**ALT**

Kaotica looked beyond the traditional methods of acoustically controlling the space around where artists record and shifted our focus toward the two most important elements in the vocal recording process; capturing the pure tonality of your voice and the nuance of the microphone recording it. Think of it as a studio booth alternative that fits right over your microphone, sets up in seconds and instantly transforms any space into a recording studio.

ALT

The Eyeball fits most vocal recording microphones and shock-mounts. Mics which are side address with long/short-bodies having a diameter of (38mm to 70mm / 1.5" to 2.75")

Musicians – Capture consistent studio quality tracks, whether working in your home studio or out on the road, in your hotel room, backstage or on the bus.

Voice Over Artists - Pack the Eyeball on your travels and capture your demo on the spot, giving you the competitive advantage that wins the job

Studio Engineers – Achieve collaboration flexibility and recording consistency when your artists send tracks back to the studio for mixing.

A&R Exces – Get the consistency of vocal performances for your artists who are shuttling between multiple producers, engineers and various recording studio

# EXHIBIT 4

# Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Shira Perlmutter

United States Register of Copyrights and Director

**Registration Number**

**TX 8-937-518**

**Effective Date of Registration:**
February 24, 2021

**Registration Decision Date:**
February 24, 2021

## Title

**Title of Work:** Kaotica Box Text

## Completion/Publication

**Year of Completion:** 2020
**Date of 1st Publication:** January 15, 2020
**Nation of 1st Publication:** United States

## Author

- **Author:** Kaotica IP Corporation
  **Author Created:** text
  **Work made for hire:** Yes
  **Citizen of:** Canada

## Copyright Claimant

**Copyright Claimant:** Koatica IP Corporation
3917-17th Street SW, Calgary, AB, T2T 4P3, Canada

## Limitation of copyright claim

**Material excluded from this claim:** text
**Previous registration and year:** TX-8-668-937, 2018

**New material included in claim:** text

## Rights and Permissions

**Organization Name:** Tarter Krinsky & Drogin LLP
**Name:** Mark J. Rosenberg
**Email:** tmdocket@tarterkrinsky.com
**Telephone:** (212)216-8000
**Address:** 1350 Broadway

11th Floor
New York, NY 10018 United States

## Certification

**Name:** Mark Rosenberg
**Date:** February 24, 2021
**Applicant's Tracking Number:** 85693-11

**Correspondence:** Yes

# EXHIBIT 5

28
Appx50



Kaotica

29
Appx51



Kaotica



31
Appx53

# EXHIBIT 6

32
Appx54

**CLAIM CHART FOR U.S. PATENT NO. 8,737,662 B2**

| CLAIM 1 | ICONIC MARS COMET |
|---|---|
| An attachment for a microphone, the attachment comprising: | The Iconic Mars Comet is a microphone screen. |
| a foam structure; | Foam Structure |

<table>
<tr>
<td>a first cavity extending from a first opening at a surface of the foam structure and into the foam structure, the first cavity configured to seal a microphone at least partly into the cavity with sound receiving elements of the microphone fully installed in the structure;</td>
<td>
First Opening
First Cavity
The Iconic Mars Comet has a first cavity extending from a first opening at the bottom of the foam structure and into the foam structure, where the first cavity seals a microphone into the cavity with the sound elements being inside the foam structure.</td>
</tr>
</table>

| | |
|---|---|
| a second cavity extending from a second opening at the surface of the foam structure and into the foam structure, the second opening configured to receive sound from a sound source, wherein the second cavity is a cylindrical-shaped cavity with a substantially uniform diameter along a longitudinal axis of the second cavity; and |  Second Opening<br>Uniform Diameter<br>Second Cavity The Iconic Mars Comet has a second cavity extending from a second opening at a surface of the foam structure into the foam structure, where the second cavity has a cylindrical shape with a uniform diameter along a longitudinal axis of the second cavity. |

<table>
<tr>
<td>the first cavity being fluidly connected to the second cavity within the foam structure so that a junction is formed between the first cavity and the second cavity, the junction, the sound cavity, and the sealing of the microphone working to shield the sound receiving elements of the microphone from sound other than received through the second opening.</td>
<td>
First Cavity
Second Opening
Second Cavity
The Iconic Mars Comet has a first cavity that is fluidly connected to the second cavity as shown above such that a junction is formed between the first cavity and the second cavity, which work together to shield the sound receiving elements of a microphone from sound other than sound from the second opening.</td>
</tr>
</table>

# EXHIBIT 7

# CLAIM CHART FOR U.S. PATENT NO. D733,690

| D733690 | ICONIC MARS COMET |
|---|---|
| FIG. 1 | |



FIG. 2

FIG. 3



FIG. 4

FIG. 5

40
Appx62



FIG. 6

FIG. 7

# EXHIBIT 8

42
Appx64

The Comet gives you studio-quality tracks anywhere you want to record. There's a reason it's gaining recognition as the best portable vocal booth on the market. The Comet is made from a premium and patented high-density foam that absorbs ambient sound. When combined with the built-in dual-layer pop filter, the Comet encapsulates your microphone into its own ultra-quiet sound-isolation booth. No hanging sound foam on your walls or background noise in your tracks. You get consistent, studio-quality sound with every track you record, guaranteed!
Simple Setup
There are no complicated parts or hardware. The Comet fits most microphones between the diameters of 40mm-65mm. The Comet is super lightweight, portable, and literally sets up in seconds. You get simple affordable sound isolation for your recording.
Record Anywhere
The Comet is easy to pack up and carry, making it great for travel and turning any area into a recording booth.
Recording Consistency
Background noise is different no matter where you go. The Comet massively lowers the sound variables that can occur, making all your tracks sound like they were recorded in the same place.
Simpler Post-Production
The Comet channels clear sound directly into the microphone, reducing excessive equalization during post-production. The Comet frees you up to focus on what's important - making a great recording!
Designed in California
www.iconicmars.com
43

# EXHIBIT 9



iconicmars

45
Appx67



iconicmars

46
Appx68

| **Plaintiff's KAOTICA EYEBALL** | **Defendants' Infringing Product** |
| --- | --- |

By selling its infringing knockoff, Defendants are irreparably harming Plaintiff's competitive position in the marketplace, as well as harming Plaintiff's goodwill and reputation associated with the real KAOTICA EYEBALL.

Mr. Olaleye—the sole executive officer of Defendant IMC—is no stranger to Plaintiff. In 2017, Mr. Olaleye entered into an agreement with the inventor of the KAOTICA EYEBALL product and Plaintiff's CEO—Konrad Zukowski—whereby Mr. Olaleye could purchase the KAOTICA EYEBALL product at a discount for resale, provided that he not sell the product online. (Declaration of Konrad Zukowski, "Zukowski Decl.," ¶¶ 20–21.) But, after Mr. Olaleye breached that agreement—and Mr. Zukowski terminated the relationship—Mr. Olaleye began his efforts to replicate the KAOTICA EYEBALL product. (*Id.* at ¶¶ 23–26.) It is clear that Defendants' infringement is intentional and will continue until stopped by this Court. Without a preliminary injunction, Plaintiff will suffer irreparable harm.

For these reasons and those discussed below, Plaintiff respectfully requests a preliminary injunction to prevent Defendants from continuing their infringement of Plaintiff's '662 and '690 Patents pending a final determination in this action.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA CORP.,

Plaintiff,

v.

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

Defendants.

Case No: 3:21-cv-00433-CAB-DEB

## AMENDED STIPULATED JUDGMENT AND PERMANENT INJUNCTION

Plaintiff Kaotica Corp. ("Kaotica") and Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Iconic Mars") have agreed to a compromise and settlement of this action for patent infringement, trade dress infringement and copyright infringement as to the claims, defenses and counterclaims that were asserted in this action.

**WHEREFORE**, with the consent of Kaotica and Iconic Mars, by and through their undersigned attorneys, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. This Court has jurisdiction over Kaotica and Iconic Mars and over the subject matter of this action, including for entry and enforcement of this Stipulated Judgment and Permanent Injunction.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1391(b)(2).

3. The parties have agreed to the following factual findings:

   a. Kaotica is the owner by assignment of United States Patent No. 8,737,662 (the "'662 Patent") entitled "Noise Mitigating Microphone Attachment." The '662 Patent was duly and legally

issued by the United States Patent and Trademark Office on May 27, 2014.

b. Kaotica owns all right, title and interest in and to the ‘662 Patent, including all rights to sue and recover for past and future infringement.

c. The ‘662 Patent is valid and enforceable.

d. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled “Noise Mitigating Microphone Attachment” (the “‘690 Patent”). The ‘690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015.

e. Kaotica owns all right, title and interest in and to the ‘690 Patent, including all rights to sue and recover for past and future infringement.

f. The ‘690 Patent is valid and enforceable.

g. Kaotica owns all right, title, and interest in and to, including all rights to sue and recover for past and future infringement, the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Text”), which text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021 (the “Kaotica Copyright”).

h. The Kaotica Copyright is valid and subsisting.

i. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Trade Dress”). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

j. The Kaotica Trade Dress is valid and subsisting.

4. In this action, Kaotica has alleged that Iconic Mars: (a) in violation of 35 U.S.C. § 271, makes, uses, offers for sale, sells, and/or imports into the United States products, specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the "Accused Products") that infringes one or more claims of the '662 Patent and/or the '690 Patent; (b) in violation of 17 U.S.C. § 501, infringes the Kaotica Copyright by placing text on the packaging for the Accused Products (the "Accused Text") that is derived and copied from the Kaotica Text without Kaotica's authorization; and (c) in violation of 15 U.S.C. § 1125(a), infringes the Kaotica Trade Dress by offering for sale and selling in the United States the Accused Products (the "Infringing Trade Dress").

5. Iconic Mars acknowledges and agrees that (a) the Accused Products are the only noise mitigating microphone attachments it has sold and (b) this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein.

6. Kaotica has further alleged that the Accused Products are offered for sale and have been sold in the United States.

7. Iconic Mars acknowledges and agrees that Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

8. Effective on January 1, 2022, pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502, 35 U.S.C. § 283, and Rule 65 of the Federal Rules of Civil Procedure, Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the

manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").

9. Iconic Mars reserves the right to challenge the validity and/or enforceability of the '662 Patent and/or the '690 Patent vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

10. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Trade dress vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

11. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Copyright vis-à-vis text other than the Accused Text.

12. Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

13. Within two (2) business days of the date of the entry of this Stipulated Judgment and Permanent Injunction, Iconic Mars shall deliver the sum of $25,000.00 (Twenty-Five Thousand Dollars) to Kaotica's undersigned New York counsel.

14. Judgment is hereby entered against defendant Iconic Mars in favor of plaintiff Kaotica.

15. Kaotica and Iconic Mars shall bear their respective attorneys' fees and costs incurred in connection with this action.

16. This Stipulated Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

17. Jurisdiction is retained by this Court for the purpose of enforcing compliance with the terms of this Stipulated Judgment and Permanent Injunction.

18. The Injunction shall remain in full force and effect unless and until modified by order of this Court.

///////////////////////////

SO STIPULATED:

Dated October 27, 2021

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark J. Rosenberg
Mark J. Rosenberg (admitted *pro hac vice*)
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

Jeffery M. Rosenfeld (SBN 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jrosenfeld@krinternetlaw.com

*Attorneys for Plaintiff*

SO STIPULATED:

Dated: October 27, 2021

SML AVVOCATI P.C.

By: /s/ Stephen M. Lobbin
Stephen M. Lobbin (SBN 181195)
Joshua N. Osborn (SBN 317435)
4640 Cass Street #90142
San Diego, California 92019
Telephone: (949) 636-1391
sml@smlavvocati.com
jno@smlavvocati.com

*Attorneys for Defendants*

It is **SO ORDERED**:

Dated: October 28, 2021

Hon. Cathy Ann Bencivengo
United States District Judge

# EXHIBIT 1

Kaotica

Kaotica

Appx227

Kaotica

EXHIBIT 2



iconicmars

Appx235

you don't get to go broader than a ball.  You have a ball.

ATTORNEY ROSENBERG:  We're only asking that the terms that the defendants agreed to in the stipulated judgment and injunction be enforced, that they were enjoined from selling a product that looks like the one on your right.  They are now selling a product that looks exactly identical to it.  And this is for the trade dress aspect.  We haven't got to the design patent yet.

THE COURT:  It's the same problem with your design patent.  You have a design patent on a circular device.

ATTORNEY ROSENBERG:  But they're enjoined from selling a device -- a specific device, the device on your right, Your Honor, the original device.  And the new device is not colorably different.  And that is the standard both in the judgment, that is the standard they can challenge the validity of the trade dress, and that is the standard whether or not a new product is subject to an existing injunction.  It is not colorably different.  It is the same.  Minor differences does not render one product colorably different than another.

THE COURT:  Okay.  I've heard that argument.  You made that argument.  I am not convinced.  I'm sorry.  They have their dec relief action.  You can charge their new product with infringement.  You can file your counterclaim that they are still infringing your patents and your trade dress, but I do not believe at this point for purposes of a contempt citation

that the changes they have made, which have moved farther away from your original design, are not insufficient enough to give rise to contempt.  I'm not persuaded.  So that issue is not on the table.  And this gentleman is the principle of the company?

ATTORNEY LOBBIN:  Yes.

THE COURT:  I'd like you to take the stand, sir.

ATTORNEY ROSENBERG:  One more thing, Your Honor.  With respect to the photographs, there's nothing on the record that the defendant said these photographs shown in that chart or any photographs in our brief were of the new product.  Never denied it.  Now for the first time, counsel is denying it.

THE COURT:  That's why I want to put him on the stand. He's the responsible party.

Oluseyi James Olaleye, called as a witness, testified as follows:

   (Witness given an oath)

THE CLERK:  I am going to ask you to state your entire name, spelling it all for the record.

THE WITNESS:  All right.  Oluseyi Olaleye.

THE COURT:  She's going to need for you to spell your name.

THE WITNESS:  O-l-i-s-e-y-i, middle name is James, and last name is O-l-a-y-e.

THE COURT:  Sir, the allegation has been made that as of January 1st of this year when you were enjoined from

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

*Pro Bono* Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**Kaotica IP Corp.**, a Canadian corporation,

Plaintiff,

v.

**Iconic Mars Corporation**, a California corporation, et al.,

Defendants.

Case No. 3:21-cv-00433-CAB-DEB

**DEFENDANTS' MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT; MEMORANDUM IN SUPPORT**

Date: June 6, 2025

Honorable Cathy Ann Bencivengo

PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARARTELY ORDERED BY THE COURT

PLEASE TAKE NOTICE that pursuant to CivLR 7.1.f. and Rule 60(a), Defendants Iconic Mars Corporation and Oluseyi James Olaleye (collectively "Iconic") respectfully will and do move this Court to correct a mistake in the Stipulated Judgment in this action. *See* ECF No. 43. The mistake is that the "Accused Product" (as correctly defined in Paragraph 4 as Iconic's "Version 1" identified in the Complaint, with its logo/lettering in a ***dull grey color***) is displayed

incorrectly as Exhibit 2 to the document. *See id.* at 17. Exhibit 2 mistakenly is an image of Iconic's "Version 2" redesigned product, which existed as of October 2021 and ***a sample was displayed on Iconic's website by early October 2021***. The mistake is confirmed by the ***white color*** of the logo/lettering on the Version 2 image (as distinct from the dull grey color of Version 1), and the product's more oblong and less ball shape. The Version 2 product had other redesigned features, including addressing patent issues resolved by the settlement. The correct image of the actual "Accused Product" is found instead at ECF No. 1-2 at 45, as filed with the Complaint. This is confirmed by the dull grey color of the logo/lettering on the Version 1 image, and the rounder shape, closer to a ball. Therefore, Exhibit 2 of the Stipulated Judgment should be corrected to display the correct Version 1 accused product image found with the Complaint at ECF No. 1-2 at 45.

This Motion is based upon this Notice and the Memorandum herein, and the pleadings and other papers on file in this action, including the declarations and exhibits filed herewith, and such further evidence or argument as may be presented at or before the hearing of this Motion.

**Memorandum**

Under Rule 60(a), "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." *Id.* ("The court may do so on motion or on its own, with or without notice."). "The touchstone for Rule 60(a) is 'fidelity to the intent behind the original judgment.'" *Evans v. California Comm'n on Peace Officers Standards & Training*, No. 15-1951, 2025 WL 1142437, at *16 (E.D. Cal. Apr. 18, 2025) (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1078 (9th Cir. 2012).

The Stipulated Judgment in this action is a key document in the related action between the parties and before this Court, Case No. 3:22-cv-00092-CAB-DEB. Therefore, it is critical that the document reflects accurately the parties' agreement, and the intent behind the original Stipulated Judgment. During trial in the related

action, as the Court noted accurately, the Stipulated Judgment "was a judgment that ended the case ***over the Version 1 [product]***." ECF No. 107 at 90 (emphasis added). As such, the intent and scope of the Stipulated Judgment concerns only the Version 1 product, not including the Version 2 redesigned product that Iconic began to sell following the settlement.

The scope of the Stipulated Judgment is confirmed by its literal language. As stated correctly in Paragraph 4, the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, limited to the Version 1 product identified in Kaotica's Complaint and preliminary injunction motion. *See* ECF No. 43 at 3; ECF No. 1-2 at 33-36, 38-41 and 45-46; ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19; Olaleye Decl. ¶¶ 2-4, Ex. 1; Lobbin Decl. ¶¶ 2-4, Ex. 1.[1] Only Version 1 existed at the time of the Complaint in early 2021, and only Version 1 was an accused product. *See* Olaleye Decl. ¶¶ 2-4, Ex. 1; Lobbin Decl. ¶¶ 2-4, Ex. 1. Paragraph 4 also references to the "Accused Products" as being those alleged to "infringe[] one or more claims of the '662 Patent and/or the '690 Patent." *See* ECF No. 43 at 3; Olaleye Decl. ¶¶ 10-11, Ex. 6; Lobbin Decl. ¶¶ 10-11, Ex. 6. Only the Version 1 product was ever alleged to infringe the Kaotica patents in the first action. *See* Olaleye Decl. ¶ 14, Ex. 8; Lobbin Decl. ¶¶ 14-15, Ex. 8.

Iconic's witness, Mr. James Olaleye, testified as the creator of the products that as compared to Version 1, among other differences the ***Version 2 product displayed a white logo/lettering*** rather than the dull grey logo/lettering used on the Version 1 product. *See* Olaleye Decl. ¶ 15, Ex. 9; Lobbin Decl. ¶ 16, Ex. 9. Only the Version 2 product displayed the white logo/lettering; the Version 1 product never did. *See* Olaleye Decl. ¶ 15. Because of typical lead times for a new product design becoming ready for sale, and in anticipation of being prepared to sell the Version 2 product following the parties' settlement, ***Iconic uploaded sample images***

[1] Exhibits 1-12 to this Motion are attached with the Lobbin Declaration, and certain exhibits are referenced also in the Olaleye Declaration.

***of the Version 2 product to its website by early October 2021***, before the Stipulated Judgment was finalized in late October 2021. *See* Olaleye Decl. ¶¶ 5-9, 18, Exs. 2-5, 12; Lobbin Decl. ¶¶ 5-9, 23, Exs. 2-5, 12. This explains how the Version 2 image could have been accessed on Iconic's website and used as Exhibit 2 by mistake, instead of the correct Version 1 image from the Complaint. The coloring difference alone confirms the mistake. *See* Olaleye Decl. ¶¶ 12-13, Ex. 7; Lobbin Decl. ¶¶ 12-13, Ex. 7.[2]

Regrettably and with sincere apologies to the Court for its inattention, Iconic did not recognize the mistake until trial in the related case. *See* Olaleye Decl. ¶¶ 16-17; Lobbin Decl. ¶¶ 17-22, Exs. 10-11. Iconic's inattention to the mistake was, in part, because:

(a) Kaotica's counsel assembled and filed the Stipulated Judgment;

(b) Iconic never received from Kaotica the image of Exhibit 2 before Kaotica filed the Stipulated Judgment;

(c) the focus of the parties' discussions for many weeks in September-October 2021 was exclusively on finalizing the written terms of the Stipulated Judgment, which specifies in Paragraph 4 that the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, as limited to the Version 1 product identified in the Complaint (*see* ECF No. 43 at 3) and preliminary injunction motion (*see* ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19);

(d) Iconic assumed that any image of the accused product attached as Exhibit 2 would match one of the images of the Version 1 product which Kaotica filed with the Complaint and preliminary injunction motion; and

---

[2] Before trial in the related case, the parties conferred about another mistake in Exhibit 1 of the Stipulated Judgment, which shows corrupted images for the Kaotica product. *See* ECF No. 43 at 8-15; Lobbin Decl. ¶ 24.

(e) Iconic's attention in the related case was on the differences between the actual, three-dimensional Version 1 and Version 2 product designs, rather than the scope of the Stipulated Judgment which expressly was limited to the Version 1 design.

*See* Lobbin Decl. ¶ 21.

At the time of the Stipulated Judgment, Kaotica's lead counsel was Mr. Mark J. Rosenberg of the Tarter Krinsky firm in New York. Since the 2024 trial in the related case, Iconic has attempted to contact Mr. Rosenberg to discuss Exhibit 2 to the Stipulated Judgment, but Mr. Rosenberg never responded to several inquiries. Iconic learned that Mr. Rosenberg moved to a new position and is no longer with the Tarter Krinsky firm. *See* Lobbin Decl. ¶¶ 18, 22.

**Conclusion**

For each of the foregoing reasons, Iconic respectfully requests that this Court should order that the product image shown in the Stipulated Judgment at ECF No. 43 at 17 be replaced with the correct image of the accused product identified in the Complaint, at ECF No. 1-2 at 45.

Respectfully submitted,

Dated: May 2, 2025

**SML Avvocati P.C.**

By: /s/ Stephen M. Lobbin
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

*Pro Bono* Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**Kaotica IP Corp.**, a Canadian corporation,

Plaintiff,

v.

**Iconic Mars Corporation**, a California corporation, et al.,

Defendants.

Case No. 3:21-cv-00433-CAB-DEB

**DECLARATION OF OLUSEYI JAMES OLALEYE IN SUPPORT OF DEFENDANTS' MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT**

Honorable Cathy Ann Bencivengo

I, Oluseyi James Olaleye, declare and state as follows:

1. I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2. In the Complaint in this action, Plaintiff Kaotica identified Iconic's "Comet Version 1" product, which was the only version existing at that time. I had just recently started the company. Kaotica attached with its Complaint several images of the Comet Version 1 accused product, all of which show correctly this microphone attachment product having features including a smooth, cylindrical interior and a circular "pop filter" attachment with Iconic's name and logo

"iconicmars" ***depicted in gray-colored lettering***. *See* ECF No. 1-2 at 33-36, 38-41 and 45-46. Attached herewith as **Exhibit 1** are two of the images of the accused product filed with the Complaint. See ECF No. 1-2 at 45-46.

3. In August 2021, Kaotica provided similar, correct images of the Comet Version 1 accused product with its Motion for Preliminary Injunction. *See* ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19.

4. The parties conducted a settlement conference with Magistrate Judge Butcher in September 2021 and reached a settlement in principle based, in part, on Iconic's proposed redesigns of its accused infringing Comet Version 1 product.

5. For several months in 2021, before and after the September 2021 settlement, I and Iconic worked to create new, non-infringing redesigns, and we specifically disclosed and discussed our efforts with Kaotica. *See, e.g.*, ECF No. 26-6 at 2. Iconic was a new company and we intended to create our own distinctive products and brand image. Also, as a startup, Iconic could not afford to engage in extended litigation.

6. Attached herewith as **Exhibit 2** is a true and correct copy of a July 2021 invoice from TN Connections in Los Angeles for sample product images for Iconic's "Comet Version 2" redesign. Images of the Comet Version 2 redesign samples existed as early as July 2021, but preparing for inventory to sell takes time.

7. Attached herewith as **Exhibit 3** is a true and correct copy of an invoice dated September 29, 2021 from a vendor for a new mold for the Comet Version 2, and a first production of inventory, in preparation for beginning to sell the redesigned product after the settlement.

8. Attached herewith as **Exhibit 4** is a true and correct image of the Comet Version 2 (shown at ECF No. 45-12 at 2), which is more oblong and angular at the base, includes internal ridges avoiding Kaotica's patents and Trademark Registration No. 5,568,302, and has a pop filter with a ***white instead of grey logo/lettering***. *Compare* Exhibits 1 and 4 (herein); *see also* ECF No. 60 at 25

(Court noting "the changes they have made [] have moved farther away from your original design").

9.    By early October 2021, I had uploaded to Iconic's website several images of the Comet Version 2 product redesign.  Attached herewith as **Exhibit 5** is a true and correct copy of a web page image from October 3, 2021, showing one of the images of the Comet Version 2 product on Iconic's website during that time.  In anticipation of selling the Version 2 product following the settlement, I wanted to introduce the new design to Iconic's customers and potential customers, to gain feedback on the design, and generate interest and momentum for the transition from Version 1 to Version 2 by January 2022, as agreed in the settlement.

10.    As stated correctly in Paragraph 4 of the Stipulated Judgment entered October 28, 2021, the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, which was limited to the Comet Version 1 as stated in Kaotica's Complaint.  *See* ECF No. 43 at 3; ECF No. 1-2 at 33-36, 38-41 and 45-46.  Only Version 1 existed at the time of the Complaint in early 2021, and only Version 1 was an accused product in this action.

11.    Paragraph 4 also makes reference to the "Accused Products" as being the example "shown in Exhibit 2 hereto . . . that infringes one or more claims of the '662 Patent and/or the '690 Patent."  *See* ECF No. 43 at 3, 17.  Attached herewith as **Exhibit 6** is a true and correct copy of the Stipulated Judgment, showing the image filed as ECF No. 43 at 17.

12.    The Exhibit 2 attached to the Stipulated Judgment, however, shows a new Version 2 image from Iconic's website, rather than the Version 1 accused product from Kaotica's Complaint.  This was a mistake.  As noted, the Version 1 accused product is rounder and shows a logo in ***gray-colored lettering on the pop filter*** (*see* Exhibit 1 herein), while the Version 2 is more oblong and shows a logo in ***stark white lettering on the pop filter*** (*see* Exhibits 4-5 herein).

13. Attached herewith as **Exhibit 7** is a true and correct copy of a visual comparison of the images of ECF 1-2 at 46 and ECF No. 43 at 17. The latter image purports to depict the accused product as Exhibit 2 to the Stipulated Judgment, but by the explicit terms of Paragraph 4, it does not. The latter image shows the Version 2 redesign, which was a mistake to be included with the Stipulated Judgment.

14. Moreover, the Version 2 redesign does not infringe the Kaotica patents (as referenced in Paragraph 4 of the Stipulated Judgment). Attached herewith as **Exhibit 8** is a true and correct copy of Kaotica's dismissal of any patent infringement contentions vis-à-vis the Version 2 product.

15. ***Only the Comet Version 2 had a pop filter with a white instead of grey logo and lettering***; never the Version 1 product. This is the coloring distinction to which I testified at the June 2024 trial. Attached hereto as **Exhibit 9** is a true and correct copy of this portion of my trial testimony. As I explained that "Version 1 also, the pop filter was gray, so I could easily tell [the difference in the images]."

16. Although I am not certain how this mistake happened, I am certain the image shown in Exhibit 2 of the Stipulated Judgment is a mistake—that is, Exhibit 2 shows the Version 2 product, not the accused infringing Version 1 product. That a mistake happened is obvious when comparing the images of the accused infringing Comet Version 1 that are attached to Kaotica's Complaint and motion with the image of Comet Version 2 in the Stipulated Judgment. *Compare* ECF No. 43 at 17 *with* ECF No. 1-2 at 33-36, 38-41 and 45-46, ECF No. 23-1 at 7, 15-17 and 20, ECF No. 23-2 at 11-14 and 16-19; *see also* Ex. 5 (herewith).

17. I did not recognize the mistake with Exhibit 2 to the Stipulated Judgment until much later, long after the it was filed and approved by the Court. As I recall, I assumed the correct accused product image from the Complaint was attached to the Stipulated Judgment. Also, I knew the settlement agreement concerned only Version 1.

18. During the same time frame in mid-2021, Iconic also created a "Comet Pro" redesign with a distinctive square-shaped pop filter. Attached herewith as **Exhibit 12** is a true and correct image of the Comet Pro redesign. Unfortunately, because of supply and sourcing difficulties and delays, Iconic was not able to transition completely to the Comet Pro design in time for January 1, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 1st day of May 2025 at San Diego, California.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

*Pro Bono* Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**Kaotica IP Corp.**, a Canadian corporation,

Plaintiff,

v.

**Iconic Mars Corporation**, a California corporation, et al.,

Defendants.

Case No. 3:21-cv-00433-CAB-DEB

**DECLARATION OF STEPHEN M. LOBBIN IN SUPPORT OF DEFENDANTS' MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT**

Honorable Cathy Ann Bencivengo

I, Stephen M. Lobbin, declare and state as follows:

1. I am an attorney with SML Avvocati P.C., *pro bono* counsel to Defendants (collectively "Iconic"). I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2. In the Complaint in this action, Plaintiff Kaotica asserted utility patent infringement, design patent infringement, copyright infringement, and trade dress infringement against Iconic's accused infringing "Comet Version 1" product. Kaotica attached with its Complaint several images of the Comet Version 1 accused

product, all of which show correctly this microphone attachment product having features including a smooth, cylindrical interior and a circular "pop filter" attachment with Iconic's name and logo "iconicmars" ***depicted in gray-colored lettering***. *See* ECF No. 1-2 at 33-36, 38-41 and 45-46. Attached herewith as **Exhibit 1** are two of the images of the accused product filed with the Complaint. See ECF No. 1-2 at 45-46.

3. In August 2021, Kaotica provided similar, correct images of the Comet Version 1 accused product with its Motion for Preliminary Injunction. *See* ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19.

4. The parties conducted a settlement conference with Magistrate Judge Butcher in September 2021 and reached a settlement in principle based, in part, on Iconic's proposed redesigns of its accused infringing Comet Version 1 product.

5. For several months in 2021, before and after the September 2021 settlement, Iconic worked to create new, non-infringing redesigns, and Iconic specifically disclosed and discussed its efforts with Kaotica. *See, e.g.*, ECF No. 26-6 at 2. Iconic was a new company and intended to create its own distinctive products and brand image. Also, as a startup, Iconic could not afford to engage in extended litigation.

6. Attached herewith as **Exhibit 2** is a true and correct copy of a July 2021 invoice from TN Connections in Los Angeles for sample product images for Iconic's "Comet Version 2" redesign. Images of the Comet Version 2 redesign existed as early as July 2021.

7. Attached herewith as **Exhibit 3** is a true and correct copy of an invoice dated September 29, 2021 from a vendor for samples of Iconic's Comet Version 2, in preparation for beginning to sell the redesigned product after the settlement.

8. Attached herewith as **Exhibit 4** is a true and correct image of the Comet Version 2 (shown at ECF No. 45-12 at 2), which is more oblong and angular at the base, includes internal ridges avoiding Kaotica's patents and Trademark

Registration No. 5,568,302, and has a pop filter with a ***white instead of grey logo/lettering***.  *Compare* Exhibits 1 and 4 (herein); *see also* ECF No. 60 at 25 (Court noting "the changes they have made [] have moved farther away from your original design").

9.     By early October 2021, Iconic had uploaded to its website images of the Comet Version 2 product redesign.  Attached herewith as **Exhibit 5** is a true and correct copy of a web page image from October 3, 2021, showing one of several images of the Comet Version 2 product on Iconic's website during that time.  In anticipation of selling the Version 2 product following the settlement, Iconic wanted to introduce the new design to its customers and potential customers, to gain feedback on the design, and generate interest and momentum for the transition from Version 1 to Version 2 by January 2022.

10.     As stated correctly in Paragraph 4 of the Stipulated Judgment entered October 28, 2021, the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, which was limited to the Comet Version 1 as stated in Kaotica's Complaint.  *See* ECF No. 43 at 3; ECF No. 1-2 at 33-36, 38-41 and 45-46.  Only Version 1 existed at the time of the Complaint in early 2021, and only Version 1 was an accused product in this action.

11.     Paragraph 4 also makes reference to the "Accused Products" as being the example "shown in Exhibit 2 hereto . . . that infringes one or more claims of the '662 Patent and/or the '690 Patent."  *See* ECF No. 43 at 3, 17.  Attached herewith as **Exhibit 6** is a true and correct copy of the Stipulated Judgment, showing the image filed as ECF No. 43 at 17.

12.     The Exhibit 2 attached to the Stipulated Judgment, however, shows a new Version 2 image from Iconic's website, rather than the Version 1 accused product from Kaotica's Complaint.  This was a mistake.  As noted *supra*, the Version 1 accused product is rounder (closer to a ball) and shows a logo in ***gray-colored lettering on the pop filter*** (*see* Exhibit 1 herein), while the Version 2 is

more oblong and shows a logo in ***stark white lettering on the pop filter*** (*see* Exhibits 4-5 herein).

13. Attached herewith as **Exhibit 7** is a true and correct copy of a visual comparison of the images of ECF 1-2 at 46 and ECF No. 43 at 17. The latter image purports to depict the accused product as Exhibit 2 to the Stipulated Judgment, but by the explicit terms of Paragraph 4, it does not. The latter image shows the Version 2 redesign, which was a mistake to be included with the Stipulated Judgment.

14. Moreover, the Version 2 redesign does not infringe the Kaotica patents (as referenced in Paragraph 4 of the Stipulated Judgment). Attached herewith as **Exhibit 8** is a true and correct copy of Kaotica's dismissal of any patent infringement contentions vis-à-vis the Version 2 product.

15. The incorrect image shown in Exhibit 2 to the Stipulated Judgment (ECF No. 43 at 17) does not change the scope or reach of the literal terms of agreement, particularly the definition of "Accused Products" in Paragraph 4.

16. ***Only the Comet Version 2 has a pop filter with a white instead of grey logo and lettering***. This is the coloring distinction to which Iconic's witness testified at the June 2024 trial. Attached hereto as **Exhibit 9** is a true and correct copy of this portion of the trial testimony of Iconic's principal, Mr. James Olaleye. In his testimony, Mr. Olaleye explains that "Version 1 also, the pop filter was gray, so I could easily tell [the difference in the images]."

17. Although I am not certain how this mistake happened exactly, I am certain the image shown in Exhibit 2 of the Stipulated Judgment is a mistake—that is, Exhibit 2 shows the Version 2 product, not the accused infringing Version 1 product. That a mistake happened is obvious when comparing the images of the accused infringing Comet Version 1 that are attached to Kaotica's Complaint and motion with the image of Comet Version 2 in the Stipulated Judgment. *Compare* ECF No. 43 at 17 *with* ECF No. 1-2 at 33-36, 38-41 and 45-46, ECF No. 23-1 at 7, 15-17 and 20, ECF No. 23-2 at 11-14 and 16-19; *see also* Ex. 5 (herewith).

18.     After the parties agreed on the body/text of the Stipulated Judgment, which took many weeks, Kaotica's counsel at the time—Mr. Mark J. Rosenberg of the Tarter Krinsky firm in New York—emailed me on October 13, 2021 a revised version of the agreement terms, and he attached 8 images for the representation of the Kaotica product at issue.  Mr. Rosenberg did not include any image(s) corresponding to the Iconic accused product.

19.     Attached herewith as **Exhibit 10** is a true and correct copy of Mr. Rosenberg's October 13, 2021 email.  I do not remember having a concern, however, because the scope of the agreement was limited by its terms to the Comet Version 1 design.  I was not aware, however, that by mid-October 2021, Iconic had posted an image of the Comet Version 2 design on its website.

20.     Mr. Rosenberg sent me another confirming email on October 26, 2021, but this time he attached only the body/text of the agreement, without any exhibits or images.  Attached herewith as **Exhibit 11** is a true and correct copy of Mr. Rosenberg's October 26, 2021 email.  After I confirmed the final version of the agreement, Mr. Rosenberg filed the Stipulated Judgment with two exhibits, as it now appears as ECF No. 43.

21.     Regrettably and with sincere apologies to the Court for my inattention, I did not recognize the mistake until trial in the related case.  My inattention to the mistake was, in part, because: (a) Kaotica's counsel assembled and filed the Stipulated Judgment; (b) I never received from Kaotica the image of Exhibit 2 before Kaotica filed the Stipulated Judgment; (c) the focus of the parties' discussions for many weeks in September-October 2021 was exclusively on finalizing the written terms of the Stipulated Judgment, which specifies in Paragraph 4 that the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, as limited to the Version 1 product identified in the Complaint (*see* ECF No. 43 at 3) and preliminary injunction motion (*see* ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19); (d) I assumed that any image of the

accused product attached as Exhibit 2 would match one of the images of the Version 1 product which Kaotica filed with the Complaint and preliminary injunction motion; and (e) my attention in the related case was on the differences between the actual, three-dimensional Version 1 and Version 2 product designs, rather than the scope of the Stipulated Judgment which expressly was limited to the Version 1 design.

22.    Since the 2024 trial in the related case, I have attempted to speak with Mr. Rosenberg to discuss Exhibit 2 to the Stipulated Judgment, but Mr. Rosenberg never responded to several inquiries.  I learned that Mr. Rosenberg moved to a new position and is no longer with the Tarter Krinsky firm.

23.    During the same time frame in mid-2021, Iconic also created a "Comet Pro" redesign with a distinctive square-shaped pop filter.  Attached herewith as **Exhibit 12** is a true and correct image of the Comet Pro redesign.  Unfortunately, because of supply and sourcing difficulties and delays, Iconic was not able to transition completely to the Comet Pro design in time for January 1, 2022, which could have mooted any dispute in this action concerning trade dress infringement.

24.    Before trial in the related case, the parties conferred about another mistake in Exhibit 1 of the Stipulated Judgment, which shows corrupted images for the Kaotica product.  *See* ECF No. 43 at 8-15.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 1st day of May 2025 at San Diego, California.

/s/ Stephen M. Lobbin

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin

# EXHIBIT 1

iconicmars

iconicmars

46
Appx288

# EXHIBIT 2

**TN Connections Inc**
608 S Hill Street Suite 900
Los Angeles, CA 90014 US
tnconnections@gmail.com
thenewconnections.com

# INVOICE

**BILL TO**
James Olaleye

**INVOICE #** 2907
**DATE** 07/19/2021
**DUE DATE** 07/19/2021
**TERMS** Due on receipt

| DATE | ACTIVITY | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | **Product Photography** | | 15 | 18.00 | 270.00 |
| | **transparent background** | PNG | 15 | 3.00 | 45.00 |

PAYMENT 315.00
BALANCE DUE **$0.00**

PAID

# EXHIBIT 3

# Proforma Invoice

| | | | |
|---|---|---|---|
| **Vendee:** | ICONIC MARS | **Vender:** | Shenzhen Dingchuang Smart Manufacturing Company Limit |
| **Contact:** | James Olaleye | **Contact:** | Jasmine Wang sales08@dcmanufacture.com |
| **Telphone:** | | **Telphone:** | +86 18194050470 |
| **Address:** | 435 W. Los Feliz Road unit 338. Glendale, CA 91204，USA +1(619) 519-3670 | **Address:** | Factory Building 1, Aoxiang Road, Ailian Community, Longcheng Street, Longgang District, Shenzhen, PRC |

P/N: DCMTPI-20210929A03 Date: 29/Sep/21

| Products No. | Description | Quantity (Unit) | Unit price (USD) | Total (USD) |
|---|---|---|---|---|
| Mould fee | Foam mould fee and plastical mould | 1 | US$ 2,500.00 | $ 2,500.00 |
| Wave pattern fee | Wave pattern fee | 3,000 | US$ 2.00 | $ 6,000.00 |
| | 2 times DHL fee | 2 | US$ 38.00 | $ 76.00 |
| | | | AMOUNT: | $ 11,576.00 |

**Terms of trade**

1 Country of origin: China
2 Packaging： netural package
3 Trade term： FCA SHENZHEN

**Bank Information**

1 BENEFICIARY'S NAME: Shenzhen Dingchuang Smart Manufacturing Company Limited
2 A/C NO. :100001 24491489
3 BENEFICIARY BANK: JPMorgan Chase Bank N.A., Singapore Branch
4 SWIFT CODE: CHASSGSGXXX or CHASSGSG
5 Beneficiary region: Singapore
6 Beneficiary bank address: 168 Robinson Road, Capital Tower 17-00, Singapore 068912
7 Bank code: 7153
8 Branch code: 001

Exhibit 126
Iconic Mars Corporation v. Kaotica Corporation
Case No. 3:22-cv-00092-CAB-DEB

# EXHIBIT 4

Iconic Mars All products   

   

Listed by Iconic Mars

# Comet | Microphone Isolation Booth

$99.95

$14.99 standard shipping

View on Website

This will take you to www.iconicmars.com

Save

Details

Store Information View shop

Iconic Mars
422 people like this Page

More from this shop See all

# EXHIBIT 5

APPAREL

A premium unisex sweatshirt in soft fleece fabric, featuring Iconic Mars original graphic logo. The high definition print provides a perfect blend of comfort and style.

SHOP COLLECTION

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA CORP.,

             Plaintiff,

       v.

ICONIC MARS CORPORATION and
OLUSEYI JAMES OLALEYE,

             Defendants.

Case No: 3:21-cv-00433-CAB-DEB

**AMENDED STIPULATED JUDGMENT
AND PERMANENT INJUNCTION**

Plaintiff Kaotica Corp. ("Kaotica") and Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Iconic Mars") have agreed to a compromise and settlement of this action for patent infringement, trade dress infringement and copyright infringement as to the claims, defenses and counterclaims that were asserted in this action.

**WHEREFORE**, with the consent of Kaotica and Iconic Mars, by and through their undersigned attorneys, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. This Court has jurisdiction over Kaotica and Iconic Mars and over the subject matter of this action, including for entry and enforcement of this Stipulated Judgment and Permanent Injunction.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1391(b)(2).

3. The parties have agreed to the following factual findings:

    a.    Kaotica is the owner by assignment of United States Patent No. 8,737,662 (the "'662 Patent") entitled "Noise Mitigating Microphone Attachment." The '662 Patent was duly and legally

issued by the United States Patent and Trademark Office on May 27, 2014.

b. Kaotica owns all right, title and interest in and to the ‘662 Patent, including all rights to sue and recover for past and future infringement.

c. The ‘662 Patent is valid and enforceable.

d. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled “Noise Mitigating Microphone Attachment” (the “‘690 Patent”). The ‘690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015.

e. Kaotica owns all right, title and interest in and to the ‘690 Patent, including all rights to sue and recover for past and future infringement.

f. The ‘690 Patent is valid and enforceable.

g. Kaotica owns all right, title, and interest in and to, including all rights to sue and recover for past and future infringement, the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Text”), which text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021 (the “Kaotica Copyright”).

h. The Kaotica Copyright is valid and subsisting.

i. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Trade Dress”). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

j. The Kaotica Trade Dress is valid and subsisting.

4. In this action, Kaotica has alleged that Iconic Mars: (a) in violation of 35 U.S.C. § 271, makes, uses, offers for sale, sells, and/or imports into the United States products, specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the "Accused Products") that infringes one or more claims of the '662 Patent and/or the '690 Patent; (b) in violation of 17 U.S.C. § 501, infringes the Kaotica Copyright by placing text on the packaging for the Accused Products (the "Accused Text") that is derived and copied from the Kaotica Text without Kaotica's authorization; and (c) in violation of 15 U.S.C. § 1125(a), infringes the Kaotica Trade Dress by offering for sale and selling in the United States the Accused Products (the "Infringing Trade Dress").

5. Iconic Mars acknowledges and agrees that (a) the Accused Products are the only noise mitigating microphone attachments it has sold and (b) this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein.

6. Kaotica has further alleged that the Accused Products are offered for sale and have been sold in the United States.

7. Iconic Mars acknowledges and agrees that Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

8. Effective on January 1, 2022, pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502, 35 U.S.C. § 283, and Rule 65 of the Federal Rules of Civil Procedure, Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the

manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").

9. Iconic Mars reserves the right to challenge the validity and/or enforceability of the '662 Patent and/or the '690 Patent vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

10. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Trade dress vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

11. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Copyright vis-à-vis text other than the Accused Text.

12. Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

13. Within two (2) business days of the date of the entry of this Stipulated Judgment and Permanent Injunction, Iconic Mars shall deliver the sum of $25,000.00 (Twenty-Five Thousand Dollars) to Kaotica's undersigned New York counsel.

Case 3:21-cv-00433-CAB-DEB Document 36 Filed 08/02/21 PageID.426 Page 5 of 17

14. Judgment is hereby entered against defendant Iconic Mars in favor of plaintiff Kaotica.

15. Kaotica and Iconic Mars shall bear their respective attorneys' fees and costs incurred in connection with this action.

16. This Stipulated Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

17. Jurisdiction is retained by this Court for the purpose of enforcing compliance with the terms of this Stipulated Judgment and Permanent Injunction.

18. The Injunction shall remain in full force and effect unless and until modified by order of this Court.

//////////////////////////

SO STIPULATED:

Dated October 27, 2021

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark J. Rosenberg
Mark J. Rosenberg (admitted *pro hac vice*)
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

Jeffery M. Rosenfeld (SBN 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jrosenfeld@krinternetlaw.com

*Attorneys for Plaintiff*

SO STIPULATED:

Dated: October 27, 2021

SML AVVOCATI P.C.

By: /s/ Stephen M. Lobbin
Stephen M. Lobbin (SBN 181195)
Joshua N. Osborn (SBN 317435)
4640 Cass Street #90142
San Diego, California 92019
Telephone: (949) 636-1391
sml@smlavvocati.com
jno@smlavvocati.com

*Attorneys for Defendants*

It is **SO ORDERED**:

Dated: October 28, 2021

Hon. Cathy Ann Bencivengo
United States District Judge

Caase 3:21-cv-00433-CAB-DEB Document 46-8 Filed 10/28/21 PageID.748 Page 7 of 18
of 18

# EXHIBIT 1

Appx304

Kaotica

Kaotica

Kaotica

Case 3:21-cv-00433-CAB-DEB   Document 136   Filed 10/28/25   PageID.474   Page 14 of 18







EXHIBIT 2

iconicmars

# EXHIBIT 7



iconicmars

46
Appx316

ICONICMARS

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ICONIC MARS CORPORATION,
Plaintiff,

v.

KAOTICA CORPORATION,
Defendant.

Case No.: 22-CV-0092-CAB-DEB

**DISMISSING CLAIMS WITH PREJUDICE**

**[Doc. No. 49]**

On August 24, 2023, the Parties filed a joint motion for partial dismissal. Upon review of the motion, the Court hereby **ORDERS** that the motion is **GRANTED.** Count I – Declaratory Judgment of Noninfringement of U.S. Patent 8,737,662 and Count II – Declaratory Judgment of Noninfringement of U.S. Patent D733,690 of the Complaint are hereby **DISMISSED WITH PREJUDICE.** Each Party shall bear its own costs and fees.

It is **SO ORDERED**.

Dated: August 24, 2023

Hon. Cathy Ann Bencivengo
United States District Judge

3 of 3

2
Appx320
22-CV-0092-CAB-DEB

# EXHIBIT 9

everything I could.  Even Mr. Zukowski say he will try help us --

Q    James, just answer the question.

Have you tried contacting Kaotica to regain access to your Instagram account?

A    Yes, we did.  They said they will, but we never did.

Q    Thank you.  Let me go to my next question.

Was your Facebook and Instagram account linked?

A    Yes, they were linked together.

Q    They are linked together right now?

A    Yes.  When I post to Instagram, it goes on Facebook.

Q    Were they linked after January 1 of 2022?

A    They have always been linked together.

Q    We will go to the next question.

Did the stipulated judgment prevent you from advertising or marketing the Comet Version 2?

A    No.

Q    Let's go back to the stipulated judgment.  Go to Exhibit 2.

James, what is this image?

A    The Comet.

Q    Which version?

A    This is Version 2, not Version 1, because Version 1 does not have -- apart from the height and everything, Version 1 also, the pop filter was gray, so I could easily tell.  Even

just by looking at it, I know straight up, it's Version 2.

Q So, you are telling me the stipulated judgment had Version 2, not Version 1?

A The stipulated judgment has Version -- well, this image they are using is actually Version 2, not Version 1.

THE COURT: Sir, this is the exhibit to the stipulated judgment that was the accused product. I think you might want to reconsider your response.

Perhaps if you gave him a hard copy instead of doing it on the screen, it might help him.

ATTORNEY LYONS: Your Honor, we will move on.

THE COURT: Okay.

BY ATTORNEY LYONS:

Q How did Instagram marketing and advertising drive Iconic Mars' sales?

A The advertising?

Q Yes.

A When we advertise the products by posting on Instagram, it helps a lot because it helps customers to be able to see the products and what the product does, so the customers can now go to the website and buy the products. So it does help improve a lot, huge margin.

Q How did Facebook marketing and advertising drive sales?

A Facebook does help a lot, because when we run ads, it shows on Facebook and Instagram together, and customers get to

# EXHIBIT 10

 Stephen Lobbin <sml@smlavvocati.com>

# Kaotica v. Iconic Mars

**Mark J. Rosenberg** <mrosenberg@tarterkrinsky.com> Wed, Oct 13, 2021 at 12:44 PM
To: Stephen Lobbin <sml@smlavvocati.com>
Cc: Josh Osborn <jno@smlavvocati.com>, "Joel H. Rosner" <jrosner@tarterkrinsky.com>

Steve,

Your revisions are acceptable.

Attached are the photos regarding Kaotica's trade dress that Kaotica intends to attach to the consent judgment . Please let me know if these are acceptable.

Mark

**Mark J. Rosenberg|Partner**
T: 212-216-1127|F: 212-216-8001
mrosenberg@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

---

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

---------- Forwarded message ----------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000

Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Eyeball Yellow Right.JPG**
File Size
**624110 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe**. You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Front Perspective Dark.JPG**
File Size
**242703 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe**. You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Kaotica-U87_GreenPop_Left_OnWhite.png**
File Size
**3580221 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe**. You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Left side vocal acceptence.JPG**
File Size
**150325 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe**. You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Top Perspective.JPG**
File Size
**54762 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe**. You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Kaotica-U87_BlackPop_Left_OnWhite.png**
File Size
**3676260 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe.** You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:
Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

File Name
**Top Sized.JPG**
File Size
**581007 Bytes**
Click Here to Download

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe.** You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

---------- Forwarded message ---------
From: Administrator <postmaster@tarterkrinsky.com>
To: "sml@smlavvocati.com" <sml@smlavvocati.com>
Cc:
Bcc:

Date: Wed, 13 Oct 2021 19:44:57 +0000
Subject: [Tarter Krinsky & Drogin LLP] Attachment Link - Mimecast

**Linked Attachment Download**

An email attachment exceeding our size limit has been sent to you by an email user at Tarter Krinsky & Drogin LLP. The large attachment was removed from the associated email message. You may download the attachment by clicking the *Click Here to Download* link below.

**Please note that the link is valid for 21 days.** Be sure to download the attachment before its expiration.

| File Name |
|---|
| **Back Sized.JPG** |
| File Size |
| **571368 Bytes** |
| Click Here to Download |

This attachment file has passed various security checks, but **this does NOT guarantee that the file is safe**. You should only download the attachment if you know and trust the sender.

Attachment downloads are monitored and audited for security reasons.

# EXHIBIT 11



Stephen Lobbin <sml@smlavvocati.com>

# Kaotica v. Iconic Mars

**Mark J. Rosenberg** <mrosenberg@tarterkrinsky.com> Tue, Oct 26, 2021 at 10:14 AM
To: Stephen Lobbin <sml@smlavvocati.com>
Cc: Josh Osborn <jno@smlavvocati.com>

Steve,

Please see the attached. Please confirm that its is acceptable and that I can file with your e-signature.

Thanks,

Mark

**Mark J. Rosenberg|Partner**
T: 212-216-1127|F: 212-216-8001
mrosenberg@tarterkrinsky.com|Bio
Tarter Krinsky & Drogin LLP
1350 Broadway|New York|NY|10018
www.tarterkrinsky.com|LinkedIn
COVID-19 RESOURCE CENTER

Tarter Krinsky & Drogin is fully operational. All attorneys and staff have been and will continue to be working remotely and TKD has put measures in place to ensure our services continue uninterrupted. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically, until further notice. Please contact Katrinia Soares at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies during these unprecedented times.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and in attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

**Kaotica-Iconic Mars Consent Judgment (revised pursuant to Court's request) (02520524xA1AB5).docx**
57K

# EXHIBIT 12

Appx332

Iconic Mars All products Comet Microphone Isolation Booth Follow

iconicmars

Listed by Iconic Mars

# Comet Pro | Microphone Isolation Booth

$129.95 ~~$149.95~~

Free standard shipping

View on Website

This will take you to www.iconicmars.com

Save

Details

Store Information View shop

Iconic Mars
565 followers
View business information

Follow Message

## More from this shop

See all

Comet X7B | Microphone Isolation Booth
$129.95 ~~$149.95~~

Comet | Microphone Isolation Booth
$99.95

Comet X7A | Microphone Isolation Booth
$149.95

iconicmars

Galaxy Black Pro
$19.95

iconicmars

Midnight Purple
$19.95

DESTINATION
MARS

Destination Mars Acid Wash Pullover Hoodie
$59.95

iconicmars

Galaxy Black
$19.95

Space Astronaut Pullover Hoodie
$59.95

Exhibit
323
No. 3:22-cv-00092-CAB-DEB

IMC000254






Soft White Pro
$19.95

Retro Red
$19.95

Retro Red Pro
$19.95

Space Gray Pro
$19.95

Aqua Blue
$19.95

Lost In Space T-shirt
$49.95

Canary Yellow
$19.95



# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

KAOTICA IP CORP., **Plaintiff,**

**v.**

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE, **Defendant.**

**Case No.** 3:21-cv-00433-CAB-DEB

## PRO HAC VICE APPLICATION

Plaintiff
Party Represented

I, Mark J. Rosenberg (Applicant) hereby petition the above entitled court to permit me to appear and participate in this case and in support of petition state:

My firm name: Tarter Krinsky & Drogin LLP
Street address: 1350 Broadway
City, State, ZIP: New York, NY 10018
Phone number: 212-216-1127
Email: mrosenberg@tarterkrinsky.com

That on 6/18/1990 (Date) I was admitted to practice before Appellate Division of the Supreme Court of the State of New York (Name of Court)

and am currently in good standing and eligible to practice in said court, that I am not currently suspended or disbarred in any other court, and that I ☐ have) ☒ have not) concurrently or within the year preceding this application made any pro hac vice application to this court.

**(If previous application made, complete the following)**

Title of case ______

Case Number ______ Date of Application ______

Application: ☐ Granted ☐ Denied

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Mark J. Rosenberg
(Signature of Applicant)

## DESIGNATION OF LOCAL COUNSEL

I hereby designate the below named as associate local counsel.

Jeffrey M. Rosenfeld (Name) 415-955-1155 (Telephone)

Kronenberger & Rosenfeld, LLP (Firm)

150 Post Street, Ste. 520 (Street) San Francisco, California (City) 94108 (Zip code)

/s/ Mark J. Rosenberg
(Signature of Applicant)

I hereby consent to the above designation.

/s/ Jeffrey M. Rosenfeld
(Signature of Designee Attorney)

**Pro Hac Vice** (For this one particular occasion)

An attorney who is not a member of the California State Bar, but who is a member in good standing of, and eligible to practice before, the bar of any United States court or of the highest court of any State or of any Territory or Insular possession of the United States, who is of good moral character, and who has been retained to appear in this Court, be permitted to appear and participate in a particular case. An attorney is not eligible to practice pursuant to this paragraph if any one or more of the following apply to him/her: (1) he/she resides in California, (2) he/she is regularly employed in California, or (3) he/she is regularly engaged in business, professional, or other activities in California.

The pro hac vice application shall be presented to the Clerk and shall state under penalty of perjury (1) the attorney's residence and office address, (2) by what court he/she has been admitted to practice and the date of admission, he/she is in good standing and eligible to practice in said court, (4) that he/she is not currently suspended or disbarred in any other court, and (5) if he/she has concurrently or within the year preceding his/her current application made any pro hac vice application to this court, the title and the case number of each matter wherein he made application, the date of application, and whether or not his/her application was granted. He/She shall also designate in his application a member of the bar of this Court with whom the Court and opposing counsel may readily communicate regarding the conduct of the case and upon whom papers shall be served. He/She shall file with such application the address, telephone number and written consent of such designee.

**Fee:** **$213.00**

**If application and fee require submission via U.S. Mail, please contact:**

CASD Attorney Admissions Clerk
(619) 557-5329

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA CORP.,

Plaintiff,

v.

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

Defendants.

Case No: 3:21-cv-00433-CAB-DEB

**STIPULATED JUDGMENT AND PERMANENT INJUNCTION**

Plaintiff Kaotica Corp. ("Kaotica") and Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Iconic Mars") have agreed to a compromise and settlement of this action for patent infringement, trade dress infringement and copyright infringement as to the claims, defenses and counterclaims that were asserted in this action.

**WHEREFORE**, with the consent of Kaotica and Iconic Mars, by and through their undersigned attorneys, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. This Court has jurisdiction over Kaotica and Iconic Mars and over the subject matter of this action, including for entry and enforcement of this Stipulated Judgment and Permanent Injunction.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1391(b)(2).

3. Kaotica is the owner by assignment of United States Patent No. 8,737,662 (the "'662 Patent") entitled "Noise Mitigating Microphone Attachment." The '662 Patent was duly and legally issued by the United States Patent and Trademark Office on May 27, 2014.

4. Kaotica owns all right, title and interest in and to the ‘662 Patent, including all rights to sue and recover for past and future infringement.

5. The ‘662 Patent is valid and enforceable.

6. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled “Noise Mitigating Microphone Attachment” (the “‘690 Patent”). The ‘690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015.

7. Kaotica owns all right, title and interest in and to the ‘690 Patent, including all rights to sue and recover for past and future infringement.

8. The ‘690 Patent is valid and enforceable.

9. Kaotica owns all right, title, and interest in and to, including all rights to sue and recover for past and future infringement, the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Text”), which text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021 (the “Kaotica Copyright”).

10. The Kaotica Copyright is valid and subsisting.

11. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Trade Dress”). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

12. The Kaotica Trade Dress is valid and subsisting.

13. In this action, Kaotica has alleged that Iconic Mars: (a) in violation of 35 U.S.C. § 271, makes, uses, offers for sale, sells, and/or imports into the United States products, specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the “Accused Products”) that infringes one or more claims of the ‘662 Patent and/or the ‘690 Patent; (b) in violation of 17 U.S.C. § 501, infringes the Kaotica

Copyright by placing text on the packaging for the Accused Products (the "Accused Text") that is derived and copied from the Kaotica Text without Kaotica's authorization; and (c) in violation of 15 U.S.C. § 1125(a), infringes the Kaotica Trade Dress by offering for sale and selling in the United States the Accused Products (the "Infringing Trade Dress").

14. Iconic Mars acknowledges and agrees that (a) the Accused Products are the only noise mitigating microphone attachments it has sold and (b) this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein.

15. Kaotica has further alleged that the Accused Products are offered for sale and have been sold in the United States.

16. Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

17. Effective on January 1, 2022, pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502, 35 U.S.C. § 283, and Rule 65 of the Federal Rules of Civil Procedure, Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to

reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").

18.     Iconic Mars reserves the right to challenge the validity and/or enforceability of the '662 Patent and/or the '690 Patent vis-à-vis products other than the Accused Products provided that such products are more than colorably different that the Accused Products.

19.     Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Trade dress vis-à-vis products other than the Accused Products provided that such products are more than colorably different that the Accused Products.

20.     Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Copyright vis-à-vis text other than the Accused Text.

21.     Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

22.     Within two (2) business days of the date of the entry of this Stipulated Judgment and Permanent Injunction, Iconic Mars shall deliver the sum of $25,000.00 (Twenty-Five Thousand Dollars) to Kaotica's undersigned New York counsel.

23.     Judgment is hereby entered against defendant Iconic Mars in favor of plaintiff Kaotica.

24.     Kaotica and Iconic Mars shall bear their respective attorneys' fees and costs incurred in connection with this action.

25.     This Stipulated Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

26. Jurisdiction is retained by this Court for the purpose of enforcing compliance with the terms of this Stipulated Judgment and Permanent Injunction.

27. The Injunction shall remain in full force and effect unless and until modified by order of this Court.

SO STIPULATED:

Dated October 15, 2021

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark J. Rosenberg

Mark J. Rosenberg (admitted *pro hac vice*)
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

Jeffery M. Rosenfeld (SBN 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jrosenfeld@krinternetlaw.com

*Attorneys for Plaintiff*

SO STIPULATED:

Dated: October 15, 2021

SML AVVOCATI P.C.

By: /s/ Stephen M. Lobbin

Stephen M. Lobbin (SBN 181195)
Joshua N. Osborn (SBN 317435)
4640 Cass Street #90142
San Diego, California 92019
Telephone: (949) 636-1391
sml@smlavvocati.com
jno@smlavvocati.com

*Attorneys for Defendants*

SO ORDERED:

______________________________

U.S.D.J.

# EXHIBIT 1



Kaotica

Appx344



Kaotica

Appx345



Kaotica

Appx346

Kaotica

Appx350



Appx351

EXHIBIT 2

ICONICMARS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA CORP.,

                    Plaintiff,

          v.

ICONIC MARS CORPORATION and
OLUSEYI JAMES OLALEYE,

                    Defendants.

Case No: 3:21-cv-00433-CAB-DEB

**STIPULATED JUDGMENT AND PERMANENT INJUNCTION**

Plaintiff Kaotica Corp. ("Kaotica") and Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Iconic Mars") have agreed to a compromise and settlement of this action for patent infringement, trade dress infringement and copyright infringement as to the claims, defenses and counterclaims that were asserted in this action.

**WHEREFORE**, with the consent of Kaotica and Iconic Mars, by and through their undersigned attorneys, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.     This Court has jurisdiction over Kaotica and Iconic Mars and over the subject matter of this action, including for entry and enforcement of this Stipulated Judgment and Permanent Injunction.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1391(b)(2).

3.     The parties have agreed to the following factual findings:

          a.     Kaotica is the owner by assignment of United States Patent No. 8,737,662 (the "'662 Patent") entitled "Noise Mitigating Microphone Attachment." The '662 Patent was duly and legally

issued by the United States Patent and Trademark Office on May 27, 2014.

b. Kaotica owns all right, title and interest in and to the ‘662 Patent, including all rights to sue and recover for past and future infringement.

c. The ‘662 Patent is valid and enforceable.

d. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled “Noise Mitigating Microphone Attachment” (the “‘690 Patent”). The ‘690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015.

e. Kaotica owns all right, title and interest in and to the ‘690 Patent, including all rights to sue and recover for past and future infringement.

f. The ‘690 Patent is valid and enforceable.

g. Kaotica owns all right, title, and interest in and to, including all rights to sue and recover for past and future infringement, the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Text”), which text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021 (the “Kaotica Copyright”).

h. The Kaotica Copyright is valid and subsisting.

i. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Trade Dress”). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

j.       The Kaotica Trade Dress is valid and subsisting.

4.       In this action, Kaotica has alleged that Iconic Mars: (a) in violation of 35 U.S.C. § 271, makes, uses, offers for sale, sells, and/or imports into the United States products, specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the "Accused Products") that infringes one or more claims of the '662 Patent and/or the '690 Patent; (b) in violation of 17 U.S.C. § 501, infringes the Kaotica Copyright by placing text on the packaging for the Accused Products (the "Accused Text") that is derived and copied from the Kaotica Text without Kaotica's authorization; and (c) in violation of 15 U.S.C. § 1125(a), infringes the Kaotica Trade Dress by offering for sale and selling in the United States the Accused Products (the "Infringing Trade Dress").

5.       Iconic Mars acknowledges and agrees that (a) the Accused Products are the only noise mitigating microphone attachments it has sold and (b) this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein.

6.       Kaotica has further alleged that the Accused Products are offered for sale and have been sold in the United States.

7.       Iconic Mars acknowledges and agrees that Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

8.       Effective on January 1, 2022, pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502, 35 U.S.C. § 283, and Rule 65 of the Federal Rules of Civil Procedure, Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the

manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").

9. Iconic Mars reserves the right to challenge the validity and/or enforceability of the '662 Patent and/or the '690 Patent vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

10. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Trade dress vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

11. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Copyright vis-à-vis text other than the Accused Text.

12. Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

13. Within two (2) business days of the date of the entry of this Stipulated Judgment and Permanent Injunction, Iconic Mars shall deliver the sum of $25,000.00 (Twenty-Five Thousand Dollars) to Kaotica's undersigned New York counsel.

14. Judgment is hereby entered against defendant Iconic Mars in favor of plaintiff Kaotica.

15. Kaotica and Iconic Mars shall bear their respective attorneys' fees and costs incurred in connection with this action.

16. This Stipulated Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

17. Jurisdiction is retained by this Court for the purpose of enforcing compliance with the terms of this Stipulated Judgment and Permanent Injunction.

18. The Injunction shall remain in full force and effect unless and until modified by order of this Court.

///////////////////////////

SO STIPULATED:

Dated October 27, 2021

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark J. Rosenberg
Mark J. Rosenberg (admitted *pro hac vice*)
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

Jeffery M. Rosenfeld (SBN 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jrosenfeld@krinternetlaw.com

*Attorneys for Plaintiff*

SO STIPULATED:

Dated: October 27, 2021

SML AVVOCATI P.C.

By: /s/ Stephen M. Lobbin
Stephen M. Lobbin (SBN 181195)
Joshua N. Osborn (SBN 317435)
4640 Cass Street #90142
San Diego, California 92019
Telephone: (949) 636-1391
sml@smlavvocati.com
jno@smlavvocati.com

*Attorneys for Defendants*

SO ORDERED:

____________________________
U.S.D.J.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA CORP.,

　　　　　　　　　Plaintiff,

　　　　v.

ICONIC MARS CORPORATION and
OLUSEYI JAMES OLALEYE,

　　　　　　　　　Defendants.

Case No: 3:21-cv-00433-CAB-DEB

**STIPULATED JUDGMENT AND PERMANENT INJUNCTION**

Plaintiff Kaotica Corp. ("Kaotica") and Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Iconic Mars") have agreed to a compromise and settlement of this action for patent infringement, trade dress infringement and copyright infringement as to the claims, defenses and counterclaims that were asserted in this action.

**WHEREFORE**, with the consent of Kaotica and Iconic Mars, by and through their undersigned attorneys, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.　　This Court has jurisdiction over Kaotica and Iconic Mars and over the subject matter of this action, including for entry and enforcement of this Stipulated Judgment and Permanent Injunction.

2.　　Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1391(b)(2).

3.　　The parties have agreed to the following factual findings:

　　　a.　　Kaotica is the owner by assignment of United States Patent No. 8,737,662 (the "'662 Patent") entitled "Noise Mitigating Microphone Attachment." The '662 Patent was duly and legally

issued by the United States Patent and Trademark Office on May 27, 2014.

b. Kaotica owns all right, title and interest in and to the '662 Patent, including all rights to sue and recover for past and future infringement.

c. The '662 Patent is valid and enforceable.

d. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled "Noise Mitigating Microphone Attachment" (the "'690 Patent"). The '690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015.

e. Kaotica owns all right, title and interest in and to the '690 Patent, including all rights to sue and recover for past and future infringement.

f. The '690 Patent is valid and enforceable.

g. Kaotica owns all right, title, and interest in and to, including all rights to sue and recover for past and future infringement, the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the "Kaotica Text"), which text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021 (the "Kaotica Copyright").

h. The Kaotica Copyright is valid and subsisting.

i. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the "Kaotica Trade Dress"). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

j. The Kaotica Trade Dress is valid and subsisting.

4. In this action, Kaotica has alleged that Iconic Mars: (a) in violation of 35 U.S.C. § 271, makes, uses, offers for sale, sells, and/or imports into the United States products, specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the "Accused Products") that infringes one or more claims of the '662 Patent and/or the '690 Patent; (b) in violation of 17 U.S.C. § 501, infringes the Kaotica Copyright by placing text on the packaging for the Accused Products (the "Accused Text") that is derived and copied from the Kaotica Text without Kaotica's authorization; and (c) in violation of 15 U.S.C. § 1125(a), infringes the Kaotica Trade Dress by offering for sale and selling in the United States the Accused Products (the "Infringing Trade Dress").

5. Iconic Mars acknowledges and agrees that (a) the Accused Products are the only noise mitigating microphone attachments it has sold and (b) this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein.

6. Kaotica has further alleged that the Accused Products are offered for sale and have been sold in the United States.

7. Iconic Mars acknowledges and agrees that Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

8. Effective on January 1, 2022, pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502, 35 U.S.C. § 283, and Rule 65 of the Federal Rules of Civil Procedure, Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the

manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").

9. Iconic Mars reserves the right to challenge the validity and/or enforceability of the '662 Patent and/or the '690 Patent vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

10. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Trade dress vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

11. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Copyright vis-à-vis text other than the Accused Text.

12. Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

13. Within two (2) business days of the date of the entry of this Stipulated Judgment and Permanent Injunction, Iconic Mars shall deliver the sum of $25,000.00 (Twenty-Five Thousand Dollars) to Kaotica's undersigned New York counsel.

14. Judgment is hereby entered against defendant Iconic Mars in favor of plaintiff Kaotica.

15. Kaotica and Iconic Mars shall bear their respective attorneys' fees and costs incurred in connection with this action.

16. This Stipulated Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

17. Jurisdiction is retained by this Court for the purpose of enforcing compliance with the terms of this Stipulated Judgment and Permanent Injunction.

18. The Injunction shall remain in full force and effect unless and until modified by order of this Court.

///////////////////////////

SO STIPULATED:

Dated October 27, 2021

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark J. Rosenberg
Mark J. Rosenberg (admitted *pro hac vice*)
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

Jeffery M. Rosenfeld (SBN 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jrosenfeld@krinternetlaw.com

*Attorneys for Plaintiff*

SO STIPULATED:

Dated: October 27, 2021

SML AVVOCATI P.C.

By: /s/ Stephen M. Lobbin
Stephen M. Lobbin (SBN 181195)
Joshua N. Osborn (SBN 317435)
4640 Cass Street #90142
San Diego, California 92019
Telephone: (949) 636-1391
sml@smlavvocati.com
jno@smlavvocati.com

*Attorneys for Defendants*

It is **SO ORDERED.**

Dated: October 27, 2021

Hon. Cathy Ann Bencivengo
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA CORP.,

Plaintiff,

v.

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

Defendants.

Case No: 3:21-cv-00433-CAB-DEB

## AMENDED STIPULATED JUDGMENT AND PERMANENT INJUNCTION

Plaintiff Kaotica Corp. ("Kaotica") and Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Iconic Mars") have agreed to a compromise and settlement of this action for patent infringement, trade dress infringement and copyright infringement as to the claims, defenses and counterclaims that were asserted in this action.

**WHEREFORE**, with the consent of Kaotica and Iconic Mars, by and through their undersigned attorneys, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. This Court has jurisdiction over Kaotica and Iconic Mars and over the subject matter of this action, including for entry and enforcement of this Stipulated Judgment and Permanent Injunction.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1391(b)(2).

3. The parties have agreed to the following factual findings:

a. Kaotica is the owner by assignment of United States Patent No. 8,737,662 (the "'662 Patent") entitled "Noise Mitigating Microphone Attachment." The '662 Patent was duly and legally

issued by the United States Patent and Trademark Office on May 27, 2014.

b. Kaotica owns all right, title and interest in and to the ‘662 Patent, including all rights to sue and recover for past and future infringement.

c. The ‘662 Patent is valid and enforceable.

d. Kaotica is the owner by assignment of United States Patent No. D733,690 entitled “Noise Mitigating Microphone Attachment” (the “‘690 Patent”). The ‘690 Patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 2015.

e. Kaotica owns all right, title and interest in and to the ‘690 Patent, including all rights to sue and recover for past and future infringement.

f. The ‘690 Patent is valid and enforceable.

g. Kaotica owns all right, title, and interest in and to, including all rights to sue and recover for past and future infringement, the copyright in the original text placed on packaging for the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Text”), which text is the subject of a United States Copyright Registration No. TX 8-937-518, dated February 24, 2021 (the “Kaotica Copyright”).

h. The Kaotica Copyright is valid and subsisting.

i. Kaotica owns all right, title and interest in and to, including all rights to sue and recover for past and future infringement, the trade dress employed on the KAOTICA EYEBALL noise mitigating microphone attachment (the “Kaotica Trade Dress”). Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1.

j. The Kaotica Trade Dress is valid and subsisting.

4. In this action, Kaotica has alleged that Iconic Mars: (a) in violation of 35 U.S.C. § 271, makes, uses, offers for sale, sells, and/or imports into the United States products, specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the "Accused Products") that infringes one or more claims of the '662 Patent and/or the '690 Patent; (b) in violation of 17 U.S.C. § 501, infringes the Kaotica Copyright by placing text on the packaging for the Accused Products (the "Accused Text") that is derived and copied from the Kaotica Text without Kaotica's authorization; and (c) in violation of 15 U.S.C. § 1125(a), infringes the Kaotica Trade Dress by offering for sale and selling in the United States the Accused Products (the "Infringing Trade Dress").

5. Iconic Mars acknowledges and agrees that (a) the Accused Products are the only noise mitigating microphone attachments it has sold and (b) this representation is a material inducement for Kaotica to resolve this matter on the terms set forth herein.

6. Kaotica has further alleged that the Accused Products are offered for sale and have been sold in the United States.

7. Iconic Mars acknowledges and agrees that Kaotica has suffered and will continue to suffer irreparable harm and injury from Iconic Mars' continued importation, offering for sale and sale of the Accused Products in the United States.

8. Effective on January 1, 2022, pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502, 35 U.S.C. § 283, and Rule 65 of the Federal Rules of Civil Procedure, Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the

manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").

9. Iconic Mars reserves the right to challenge the validity and/or enforceability of the '662 Patent and/or the '690 Patent vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

10. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Trade dress vis-à-vis products other than the Accused Products provided that such products are more than colorably different than the Accused Products.

11. Iconic Mars reserves the right to challenge the validity and/or enforceability of the Kaotica Copyright vis-à-vis text other than the Accused Text.

12. Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

13. Within two (2) business days of the date of the entry of this Stipulated Judgment and Permanent Injunction, Iconic Mars shall deliver the sum of $25,000.00 (Twenty-Five Thousand Dollars) to Kaotica's undersigned New York counsel.

14. Judgment is hereby entered against defendant Iconic Mars in favor of plaintiff Kaotica.

15. Kaotica and Iconic Mars shall bear their respective attorneys' fees and costs incurred in connection with this action.

16. This Stipulated Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

17. Jurisdiction is retained by this Court for the purpose of enforcing compliance with the terms of this Stipulated Judgment and Permanent Injunction.

18. The Injunction shall remain in full force and effect unless and until modified by order of this Court.

///////////////////////////

SO STIPULATED:

Dated October 27, 2021

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark J. Rosenberg
Mark J. Rosenberg (admitted *pro hac vice*)
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
mrosenberg@tarterkrinsky.com

Jeffery M. Rosenfeld (SBN 222187)
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
jrosenfeld@krinternetlaw.com

*Attorneys for Plaintiff*

SO STIPULATED:

Dated: October 27, 2021

SML AVVOCATI P.C.

By: /s/ Stephen M. Lobbin
Stephen M. Lobbin (SBN 181195)
Joshua N. Osborn (SBN 317435)
4640 Cass Street #90142
San Diego, California 92019
Telephone: (949) 636-1391
sml@smlavvocati.com
jno@smlavvocati.com

*Attorneys for Defendants*

SO ORDERED:

______________________________
U.S.D.J.

# EXHIBIT 1

Kaotica

Kaotica

Kaotica

EXHIBIT 2



iconicmars

Appx382

Jeffrey M. Rosenfeld (State Bar No. 222187)
jeff@krinternetlaw.com
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, California 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Mark J. Rosenberg (NY Bar No. 2357036)
(Admitted *pro hac vice*)
mrosenberg@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001

Attorneys for Plaintiff Kaotica IP Corp.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA IP CORP.,

Plaintiff,

v.

ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE,

Defendants.

Case No: 3:21-cv-00433-CAB-DEB

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

The Honorable Cathy Ann Bencivengo

Action Filed: March 11, 2021
Judgment: October 28, 2021

PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. The Injunction Is a "Specific and Definite" Court Order ..... 7

B. There Is Clear and Convincing Evidence of Defendants' Failure to Comply with the Injunction ..... 9

1. Defendants' Sales, Offers for Sale, and Advertising of the Accused Products after January 1, 2022 ..... 9

2. Defendants' Sales of the New Products after January 1, 2022 ..... 11

a. The New Product Is Not "Colorably Different" from the Accuse Products ..... 11

b. The New Product Infringes the '690 Patent ..... 14

c. The New Product Infringes the Kaotica Trade Dress ..... 17

3. Defendants' Offers for Sale of the Accused Products Outside of Defendants' Website ..... 18

C. The Sanctions Requested by Kaotica are Appropriate ..... 19

1. Compensatory Sanctions are an Appropriate Remedy in this Case ..... 21

2. An Award of Attorneys' Fees and Costs is Appropriate ..... 23

V. CONCLUSION ..... 24

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

# TABLE OF AUTHORITIES

## Cases

*3D Sys., Inc. v. Aarotech Lab'ys, Inc.*,
160 F.3d 1373 (Fed. Cir. 1998)....................19

*Advanced Cleanup Techs., Inc. v. BP Am., Inc.*,
No. 2:14–cv–09033. 2018 WL 941663(C.D. Cal. Feb. 16, 2018)....................20

*Blackberry Ltd. v. Typo Prod. LLC*,
No. 14-CV-00023-WHO, 2014 WL 1318689 (N.D. Cal. Mar. 28, 2014)....................16

*Cal. Dep't of Soc. Servs. v. Leavitt*,
523 F.3d 1025 (9th Cir. 2008)....................6

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002)....................15

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010)....................16

*Daimler AG, v. A-Z Wheels LLC*,
No. 16-CV-875 JLS (MDD), 2022 WL 281580 (S.D. Cal. Jan. 31, 2022) .....22, 23

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)....................15, 16

*Eros Entm't, Inc. v. Melody Spot, L.L.C.*,
No. 99-cv-1157, 2005 WL 4655385 (E.D.N.Y. Oct. 11, 2005) ....................21

*Fed. Trade Comm'n v. Dayton Fam. Prods*., 2:97-cv-00750-GMN-VCF,
No. 2:97-cv-00750-GMN-VCF, 2016 WL 1047353 (D. Nev. Mar. 16, 2016).....21

*Forever 21, Inc. v. Ultimate Offprice, Inc.*,
No. 2:10-CV-05485-ODW, 2013 WL 4718366 (C.D. Cal. Sept. 3, 2013) .............7

*Gen. Signal Corp. v. Donallco, Inc.*,
787 F.2d 1376 (9th Cir. 1986)....................19, 20

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871) ....................15, 16

*H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*,
No. 3:16-CV-0480-BEN-WVG, 2022 WL 104730 (S.D. Cal. Jan. 11, 2022)....................*passim*

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993)....................6

*ISCO Int'l, Inc. v. Conductus, Inc.*,
No. C.A. 01-487-GMS, 2003 WL 280276 (D. Del. Feb. 10, 2003) ....................19

*Jerry's Famous Deli, Inc. v. Papanicolaou*,
383 F.3d 998 (9th Cir. 2004)....................21

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
539 F.3d 1039 (9th Cir. 2008)....................19

*Line-X LLC v. Tefft*,
No. 5:20-CV-01707-SB-SHK, 2021 WL 6494881 (C.D. Cal. Dec. 21, 2021) ..... 23
*Natural Fashions, Inc. v. Best of Kashmir*,
No. 2:15-cv-00033-MCE-CMK, 2021 WL 1264916 (E.D. Cal. Apr. 6, 2021)..... 23
*Rosen Entn't Sys., LP v. Icon Enters, Inc.*,
359 F. Supp. 2d 902 (C.D. Cal. 2005)..... 14
*SEC v. Hickey*,
322 F.3d 1123 (9th Cir. 2003)..... 7
*Shillitani v. United States*,
384 U.S. 364 (1966) ..... 6
*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011)..... 11, 14
*Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*,
281 F. Supp. 3d 967 (C.D. Cal. 2017)..... 21, 23
*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947) ..... 20
*W. E. Bassett Co. v. Revlon, Inc.*,
435 F.2d 656 (2d Cir. 1970)..... 22
*Wolfard Glassblowing Co. v. Vanbragt*,
118 F.3d 1320 (9th Cir. 1997)..... 12, 14, 17

**Statutes**

15 U.S.C. §1125..... 5
35 U.S.C. §289..... 21

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

## I. INTRODUCTION

This motion is for an order holding Defendants Iconic Mars Corporation and Oluseyi James Olaleye (individually and collectively, "Defendants") in contempt of the judgment entered in this action.

In this case for utility patent, design patent, trade dress, and copyright infringement, Defendants agreed to the entry of the Stipulated Judgment and Permanent Injunction and the Amended Stipulated Judgment and Permanent Injunction (respectively, the "Judgment," and the "Amended Judgment" and collectively, the "Judgments").[1] (ECF Nos. 41 and 43.) But, Defendants have never complied with the injunction set forth in the Judgments. During the period before January 1, 2022, when the Judgments restricted Defendants to selling the accused microphone isolation booth on their own website, Defendants offered that product for sale on other websites such as Amazon, eBay, and Facebook. Since January 1, 2022, when the Judgments required all sales of the accused products to cease, Defendants have continued to advertise and offer that product for sale. Given the continuity and scope of Defendants' conduct, and their repeated disregard of Kaotica's demands that they comply with the Judgments, it is beyond argument that Defendants intentionally and repeatedly violated the injunction contained in the Judgments. For these violations Defendants should be held in contempt and, at a minimum, be required to disgorge all their profits obtained through their violation of the injunction.

## II. FACTUAL BACKGROUND

On October 27, 2021, the Court entered the Judgment (ECF No. 41), and on October 28, 2021, the Court entered the Amended Judgment (ECF No. 43). All the terms of the Judgments and the Court's entry thereof were agreed to by the parties.

---

[1] The only substantive difference between the Judgment and the Amended Judgment is that the Amended Judgment includes exhibits that were inadvertently omitted from the Judgment.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Pursuant to the Judgments, effective January 1, 2022,

> Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text.

(ECF Nos. 41 and 43 at ¶8) (the "Injunction").

As set forth in ¶4 of the Judgments, "Accused Products" were defined as the Iconic Mars Comet shown in Exhibit 2 to the Amended Judgment. Exhibit 2 is reproduced below.

The Injunction had an exception that permitted, prior to January 1, 2022, Defendants to continue selling the Accused Products only on their own website: "Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com." (ECF No. 43 at ¶12) (respectively, the "Exemption" and "Defendants' Website".)

Defendants have never abided by the terms of the Injunction or the Exemption. Just four days after the Court entered the Amended Judgment, Defendants were offering the Accused Products for sale on Amazon.com and eBay. (Rosenberg Decl., Ex. 2.) In addition, between the entry of the Amended Judgment and December 31, 2021, the day the Exemption expired, Defendants repeatedly offered the Accused Products for sale on Facebook using that platform's "Shop" function and a "checkout" button. (Rosenberg Decl., Exs. 3–4; Billick Decl. ¶2.) A screenshot of Defendants offering the Accused Products for sale on Facebook from December 7, 2021, is shown below. (Rosenberg Decl., Ex. 3.)

When put on notice of their violations of the Injunction, Defendants claimed that such offers were not, in fact, offers for sale of the Accused Products, but rather advertising, which was not prohibited during the Exemption period. According to Defendants, the offers on Facebook's "Shop" section—which included a photo and description of the Accused Products, its price, and a checkout button—were not offers for sale because, after clicking on the Checkout on Website button, "the potential customer is taken to the Iconic Mars website with an empty cart [and the

consumer] need[s] to construct an order by placing items into the cart." (Rosenberg Dec., Ex. 7.) Put another way, Defendants contend that because they created a needlessly complicated shopping experience, there were no offers for sale on Facebook during the Exemption period.

Since January 1, 2022, when the Exemption expired, Defendants' violation of the Judgments has grown exponentially worse. Instead of ceasing all "sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products," (ECF No. 43 at ¶8), Defendants continue to sell, offer for sale, advertise, promote, and distribute the original Accused Products on Defendants' Website as well as on Amazon and through the Shop function of Facebook. A copy of the relevant portion of a screenshot of Defendants' Amazon listing for the Accused Products on Amazon, taken on February 8, 2022 (Rosenberg Decl. Ex. 4), is shown below.

Thus, more than three months after the Court entered the Judgments and more than five weeks after the Exemption expired, Defendants are still, among other prohibited acts, offering for sale, promoting, and selling the very products that were the subject of this action and the Judgments. When confronted with these prohibited sales, Defendants have evaded the issue and claimed that they are selling a different

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

product; in effect, claiming that, instead of violating the Injunction, they are engaging in false advertising under 15 U.S.C. §1125(a)(2) by using photos of the Accused Products to sell another product. Defendants have also asserted that Kaotica is interfering with their business through its efforts to have Facebook and other platforms take down listings displaying the original Accused Products, i.e., by insisting that Defendants comply with the Injunction and the Exemption.

Even though Defendants continue to promote and offer the Accused Products for sale, it does appear that Defendants are, at least occasionally, fulfilling orders for the original Accused Products with slightly modified versions thereof. In other words, a bait and switch. As shown in the comparison chart attached as Exhibit 5 to the Rosenberg Declaration, the modified product (the "New Product") and the original Accused Products are nearly identical. The only noticeable design difference between the two products are the interior grooves of the New Product, which are difficult to discern in normal lighting conditions and are not seen at all when the New Product's "pop" filter is put in place. Moreover, the grooves have no bearing on trade dress issues as Kaotica's Trade Dress only includes the exterior of the product with the pop filter covering the product's interior. (ECF No. 43 at Ex. 1; Rosenberg Decl. at Ex. 1.) It is noted that the pop filter for the Kaotica Eyeball comes in a number of different colors, including red, as do the filters for the Defendants' products offered for sale on Amazon. (ECF 43 at Ex. 1; Rosenberg Decl., Ex. 8; Zukowski Declaration at ¶2.)

New Product
Accused Products
iconicmors
iconicmors

A comparison of the front view of Kaotica's Trade Dress and the New Product

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

is shown below.[2]

| Kaotica Trade Dress | New Product |
|---|---|
|  | |

On multiple occasions in November and December 2021 and in January 2022, Kaotica put Defendants on notice of their violations of the injunction, but to no avail. As these facts show, despite Defendants' agreement to the terms of the Judgments, and the Injunction contained therein, Defendants never intended to abide by the Injunction or the limitations of the Exemption. Instead, Defendants used the Judgments as a tool to halt the underlying litigation so they could continue their infringing conduct, leaving it up to Kaotica to force their compliance. This is a classic instance of contempt of a court's order for which Defendants should be held liable.

## III. LEGAL STANDARD

"There is no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). To establish contempt, the moving party "must demonstrate by clear and convincing evidence that the alleged contemnor violated a specific and definite court order by failing to 'take all reasonable steps within the party's power to comply.'" *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, No. 3:16-CV-0480-BEN-WVG, 2022 WL 104730, at *2 (S.D. Cal. Jan. 11, 2022) (quoting *In re Dual-Deck*

---

[2] For the purposes of this motion, Kaotica focuses on the New Product's infringement of the '690 Patent and Kaotica's Trade Dress. Kaotica reserves all right with respect to the New Product's infringement of U.S. Patent No. 8,737,662.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). If the moving party successfully makes such a showing, "the burden shifts to the contemnor to demonstrate why they were unable to comply." *H.I.S.C.*, 2022 WL 104730, at *2 (internal quotation omitted).

"The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *H.I.S.C.*, 2022 WL 104730, at *2 (internal quotations omitted).

When a court finds a party in contempt, it has "broad equitable power to order appropriate relief in civil contempt proceedings." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). "Appropriate sanctions may be imposed to coerce the contemnor into compliance with the court's order, to compensate the complainant for losses sustained as a result of the contemptuous behavior, or both." *Forever 21, Inc. v. Ultimate Offprice, Inc.*, No. 2:10-CV-05485-ODW, 2013 WL 4718366, at *3 (C.D. Cal. Sept. 3, 2013).

## IV. ARGUMENT

As established by the above facts, and in the accompanying declarations of Mark J. Rosenberg, Tim J. Billick, and Konrad Zukowski, Defendants have blatantly, willfully, and continuously defied the Injunction from nearly the day that it was entered. Kaotica respectfully submits that such conduct calls for action by this Court to ensure Defendants' future compliance with the Injunction and to compensate Kaotica for its damages and the expenses it has incurred and will incur due to Defendants' violation of the Injunction.

### A. The Injunction Is a "Specific and Definite" Court Order.

The language of the Injunction is clear and unambiguous. It states:

> 8. Effective on January 1, 2022, . . . Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them, are permanently enjoined from any and all acts of direct, contributory

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

> or induced infringement of the '662 Patent, the '690 Patent, the Kaotica Copyright and the Kaotica Trade Dress, including, without limitation, (a) the manufacture, use, sale, offer for sale, advertising, promotion, distribution and importation of the Accused Products in and to the United States; (b) causing or inducing others to manufacture, use, sell, offer for sale, advertise, promote, distribute or import the Accused Products in and to the United States; (c) reproducing, creating derivative works from and publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text; and (d) causing or inducing others to reproduce, create derivative works from or publicly displaying the Kaotica Text or any text that is substantially similar to the Kaotica Text (the "Injunction").
>
> . . .
>
> 12. Prior to January 1, 2022, in the United States Iconic Mars, its parents, subsidiaries and their respective officers, shareholders, agents, servants, employees, attorneys, instrumentalities, and those persons in privity, active concert, or participation with them shall only offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com.

(ECF Nos. 41 & 43 at ¶¶8, 12.) More succinctly, and with particular relevance to Defendants' contempt, the Injunction "permanently enjoined" Defendants from: (i) "the . . . sale, offer for sale, [and] advertising . . . of the Accused Products in and to the United States" "[e]ffective on January 1, 2022" (*Id.* at ¶8); (ii) otherwise "infring[ing] . . . the '690 Patent . . . and the Kaotica Trade Dress" "[e]ffective on January 1, 2022" (*Id.*); and (iii) "[p]rior to January 1, 2022," "offer[ing] for sale and sell[ing] the Accused Products" in channels other than "on Iconic Mars' website" (*Id.* at ¶12).

Each of Kaotica's relevant intellectual property rights—including "the '690 Patent," and "the Kaotica Trade Dress"—were clearly defined in the Judgments that were acknowledged and agreed to by Defendants. (*Id.* at ¶3.) And, with respect to the Accused Products and any colorable imitations thereof, Defendants conceded the validity of Kaotica's intellectual property rights. (*Id.* at ¶¶3, 9–11.) Consequently, the language and the prohibition are objectively "specific and definite."

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

### B. There Is Clear and Convincing Evidence of Defendants' Failure to Comply with the Injunction.

#### 1. Defendants' Sales, Offers for Sale, and Advertising of the Accused Products after January 1, 2022

There is clear and convincing evidence that Defendants have violated and are continuing to violate the portion of the Injunction enjoining Defendants from selling, offering for sale, and advertising the Accused Products in the United States after January 1, 2022.

For example, Defendants are currently advertising and offering the Accused Products for sale on Amazon.com, as shown by the screenshot below, taken on February 8, 2022. (Rosenberg Decl., Ex. 4.)





KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

Likewise, Defendants are advertising and offering the Accused Products for sale on Facebook, as shown by the screenshot to the left, taken on February 5, 2022. (Rosenberg Decl., Ex. 11.)

Defendants are also advertising and offering the Accused Products for sale on the Iconic Mars website, as shown by the screenshot below, taken on February 4, 2022. (Rosenberg Decl., Ex. 9.)

Defendants should be found in contempt of the Injunction and the Judgments,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

as these advertisements and offers for sale of the Accused Products are a clear violation of the specific and definite restrictions of the Injunction.

**2. Defendants' Sales of the New Products after January 1, 2022**

**a. The New Product Is Not "Colorably Different" from the Accused Products.**

As discussed above, after the Injunction was entered, Defendants came out with their New Product, which is almost identical to the original Accused Products. The only substantive difference between the two products is that the New Product includes grooves in the interior channel which are difficult to discern in normal lighting conditions and not seen at all when the pop filter is in place. The New Product also includes minor changes to the outside shape which do not change the overall appearance of the product.

In the context of an injunction based on patent infringement, "the party seeking to enforce the injunction must prove both that the newly accused product is not more than *colorably different* from the product found to infringe and that the newly accused product actually infringes." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (emphasis added). "The primary question on contempt should be whether the newly accused product is so different from the product previously found to infringe that it raises a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Id.* (internal quotation omitted). "The analysis must focus *not on differences between randomly chosen features* of the product found to infringe in the earlier infringement trial and the newly accused product, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." *Id.* (emphasis added and internal citation omitted). To be more than colorable, the modification must be "significant." *Id.*

Similarly, "[i]n the context of trademark-infringement actions, a party who has once infringed is allowed less leniency for purposes of injunction enforcement than

an innocent party." *H.I.S.C.*, 2022 WL 104730, at *2 (internal quotation omitted). After a finding of infringement has been made, a prior infringer "must keep a fair distance from the 'margin line.'" *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997). "This requirement exists to protect the plaintiff from the scenario where the enjoined infringer makes an insignificant change and begins a new trademark contest in the context of a contempt hearing." *H.I.S.C.*, 2022 WL 104730, at *2 (internal quotation omitted).

Here, as shown in the chart attached to the Rosenberg Declaration as Exhibit 5, the New Product is not more than colorably different from the Accused Products—indeed, it is almost identical. As shown below, any minor differences are insignificant with respect to the overall appearance of the product, which is relevant to both design patent and trade dress infringement:

Kaotica Trade Dress
Accused Products
New Product
Kaotica
ICONICMORS
ICONICMORS
'690 Patent
Accused Products
New Product
FIG. 1

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108



FIG. 2
FIG. 3
FIG. 4
FIG. 5

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108



FIG. 6
FIG. 7

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

As shown above, the minor changes between the Accused Products and the New Product are barely noticeable. The overall appearance and impression of the New Product is still extremely close to the design claimed by the ’690 Patent and the Kaotica Trade Dress. Thus, the changes are nowhere near the “significant” changes that would be needed to make the New Product more than “colorably different” and “keep a fair distance” from the line of infringement. *TiVo*, 646 F.3d at 882; *Wolfard*, 118 F.3d at 1322.

**b. The New Product Infringes the ’690 Patent.**

Because the New Product is almost identical to the Accused Products, it infringes the ’690 Patent for the same reasons discussed in Kaotica’s Motion for Preliminary Injunction, (*See* ECF No. 23-1 at 13–15), which are addressed below.

The infringement analysis for design patents is a two-step process in which the claim at issue is construed as a matter of law, and then applied to the accused device to determine as a matter of fact whether the claim is infringed. *Rosen Entn’t Sys., LP*

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

*v. Icon Enters, Inc.*, 359 F. Supp. 2d 902, 908 (C.D. Cal. 2005). However, claim construction is typically simpler in the design patent context because it should avoid "a detailed verbal description of the claimed design" as is typically done in utility patent cases. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). The reason for this caution is that if a design is verbally described in detail, the finder of fact may "focus on each individual described feature in the verbal description rather than on the design as a whole." *Id.* at 679–80.

Instead, to ensure that the finder of fact focuses on the design as a whole, it is preferable to let the design patent drawings speak for themselves. *See id.* Therefore, in this case, a proper construction of the claim of the '690 Patent is "[t]he ornamental design for a noise mitigating microphone attachment, as shown and described" in Figures 1 through 7. *See, e.g., id.* at 679 (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002), in which the Federal Circuit approved of the district court's claim construction of "a tray of a certain design as shown in Figures 1–3").

The next step is to determine whether Defendants' New Product infringes the claim so construed. Infringement of a design patent is analyzed using the "ordinary observer" test. *Egyptian Goddess*, 543 F.3d at 678. An accused design infringes a design patent if "an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design." *Id.* at 670, 682; *see also Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871) ("If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").

The two designs "need not be the same 'to the eye of an expert,' because if that were the test, 'there never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an

expert could not distinguish them." *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham*, 81 U.S. at 527). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *see also, e.g.*, *Blackberry Ltd. v. Typo Prod. LLC*, No. 14-CV-00023-WHO, 2014 WL 1318689, at *5 (N.D. Cal. Mar. 28, 2014) (granting preliminary injunction where differences between the claimed design and accused product were "insignificant and [did] not alter the overall impression that the two designs are the same").

Here, the design of Defendants' New Product (just like the Accused Products) is essentially identical to Kaotica's patented design and Trade Dress. Indeed, because a judgment was entered against Defendants and in favor of Kaotica on all of its claims, including its claims for design patent infringement and trade dress infringement, (ECF Nos. 41 at 43 at ¶23), the Accused Products have been deemed to infringe the '690 Patent and the Kaotica Trade Dress.

Even if res judicata does not apply, an ordinary observer of the New Product and the design claimed by the '690 Patent, giving the attention which one would ordinarily give, would immediately notice the overall similarities between the two:

'690 Patent
Accused Product
New Product
FIG. 1

A side-by-side comparison of each of the figures of the '690 Patent with corresponding views of the New Product is attached to the Rosenberg Declaration as Exhibit 6. (*See also supra* §III.B.2.a.) While minor differences exist, those differences

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

do not diminish the deceptively similar overall appearance of the New Product and the design claimed in the '690 Patent. As such, the New Product infringes the '690 Patent and for this reason alone, Defendants are in contempt of the Injunction.

**c. The New Product Infringes the Kaotica Trade Dress**

Likewise, because the New Product is almost identical to the Accused Products, it infringes the Kaotica Trade Dress for the same reasons as the Accused Products. Unlike for patent infringement claims, with respect to contempt of injunctions relating to a trade dress infringement claim, the Court need not engage in a full infringement analysis, such as an analysis of the *Sleekcraft* factors. Rather, the Court need only determine that that the design of the New Product is confusingly similar to the Kaotica Trade Dress. *Wolfard*, 118 F.3d at 1322 ("When enforcing injunctions that enjoin use of any mark confusingly similar to the protected mark, courts should not adjudicate issues such as product proximity but should simply evaluate whether or not the new mark is confusingly similar to the protected mark.").

Kaotica "is not required to muster all of the evidence it would need to make out an original infringement case in order to prove contempt." *Id.* "[Kaotica] would have had no incentive to settle its infringement case if the resulting injunction could not be enforced without renewed litigation of all of the elements of its original infringement claim." *Id.* "The question is no longer trademark infringement; it is whether [Defendants'] [N]ew [Product] is a 'colorable imitation' of [Kaotica]'s [Product]." *Id.* As discussed above (*see supra* §III.B.2.a.) and as shown in Exhibit 5 to the Rosenberg Declaration, Defendants' New Product is almost identical to their original Accused Products, which is the subject of the Injunction.

Defendants' almost identical New Product clearly does not "keep a fair distance from the 'margin line.'" *Wolfard*, 118 F.3d at 1323. Defendants did not comply with their "duty to stay well away from" Kaotica's Kaotica Trade Dress, and thus should be found in contempt. *See, e.g.*, *H.I.S.C.*, 2022 WL 104730, at *3 (finding contempt where enjoined party made only "an insignificant modification").

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

**3. Defendants' Offers for Sale of the Accused Products Outside of Defendants' Website**

In addition to the above ongoing violations of the Injunction, there is clear and convincing evidence that Defendants violated the Injunction immediately after it was entered by offering the Accused Products for sale in channels other than "on Iconic Mars' website," as required by the Exemption. (ECF No. 43 at ¶12.)

For example, in early November 2021, Defendants offered the Accused Products for sale on Amazon and eBay. (Rosenberg Decl. at Ex. 2.) During December 2021, Defendants offered the Accused Products for sale on Facebook, as shown by the screenshot to the left, taken on December 7, 2021. (*Id.* at Ex. 3.) When put on notice of this violation, Defendants argued that this (and other similar offers for sale on other platforms other than Defendants' websites) were somehow not violating the Injunction because they were not true "offers for sale." (Rosenberg Decl. at Ex. 7.) As noted above, Defendants claimed that this was so because clicking on the "Checkout on Website" does not "complete the sale," but rather brings the consumer to Defendants' website and where the consumer needs to "select how many products they want to order, the types of products they want to

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

order, where the products are to be delivered, etc." prior to completing the sale. *Id.*

Defendants' argument is nonsense. The screenshot above displays the product, states what the price is, and gives the customer specific instructions regarding how to place an order, i.e., by clicking on the *"Checkout"* button. The fact that the customer must provide additional details on subsequent pages regarding their sale is simply the nature of modern ecommerce and does not transform a "Checkout" button into a mere advertisement. *See, e.g.*, *3D Sys., Inc. v. Aarotech Lab'ys, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) (finding "price quotation letters" which "state on their face that they are purportedly not offers," to be "offers to sell" because they included "a description of the allegedly infringing merchandise and the price at which it can be purchased"); *ISCO Int'l, Inc. v. Conductus, Inc.*, No. C.A. 01-487-GMS, 2003 WL 280276, at *2 (D. Del. Feb. 10, 2003) ("Web site pages or 'advertisements' are considered offers for sale if they include pricing and/or other ordering information[.]").

Pursuant to the stipulated Injunction, the Exemption was a compromise that permitted Defendants to sell off their stock of the Accused Products for a limited time, but *only by offers for sale and sales through Defendants' Website*, and the Court so ordered that Exemption. Defendants were not permitted to unilaterally back out of their agreement and disregard the Court's order by simply creating a clumsy checkout process.

These offers for sale of the Accused Products on platforms other than Defendants' Website were clear and repeated violations of the specific and definite restrictions of the Injunction, and Defendants should therefore be found in contempt.

**C. The Sanctions Requested by Kaotica are Appropriate.**

After finding a party in civil contempt, the court may impose sanctions. *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042–43 (9th Cir. 2008). The sanctions may be awarded for either or both of two purposes: (i) to compensate the complainant for losses sustained from violations of the court's order; and (ii) to coerce the defendant into compliance. *See Gen. Signal Corp. v. Donallco,*

*Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Both purposes apply here. Sanctions should be levied against Defendants to both compensate Kaotica for the extended damage to its rights, the additional expenses it has had to incur as a result of the Defendants' violations, and to coerce Defendants into complying with the Injunction entered by the Court.

Civil sanctions may include attorneys' fees, costs, and a per diem fine until compliance has been established. *See id*. (dismissing appeal relating to assessment of attorneys' fees, lost royalties, storage costs, and per diem fine for further violations as sanction for violation of preliminary injunction in trademark case). In deciding whether to award sanctions, courts consider: (1) the harm arising from non-compliance; (2) the probable effectiveness of the sanction; (3) the contemnor's financial resources and the burden sanctions may impose; and (4) the contemnor's willfulness in disregarding the court's order. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *Advanced Cleanup Techs., Inc. v. BP Am., Inc.*, No. 2:14–cv–09033. 2018 WL 941663. *2 (C.D. Cal. Feb. 16, 2018) (same).

Kaotica respectfully requests that the Court impose sanctions (i) paying coercive sanctions to the Court; (ii) requiring Defendants to pay to Kaotica an amount equal to all of Defendants' profits from all sales of the Accused Products and New Product since inception, or in the alternative, all of Defendants' profits from all sales of the Accused Products (a) made on or through Facebook, eBay, and Amazon.com between October 28, 2021 through and including December 31, 2021, and (b) from sales of the Accused Products and the New Product since January 1, 2022; (iii) requiring Defendants to pay to Kaotica an amount sufficient to reimburse Kaotica for its costs, expenses, and reasonable attorney's fees in investigating and remedying the violation, including prosecuting this Motion; (iv) requiring Defendants to destroy any and all Accused Products, the New Product, or colorable imitations thereof in Defendants' possession or control; (v) referring this case to a magistrate judge for

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

damages discovery to determine Defendants' sales and provable deductions, and Kaotica's costs, expenses and attorneys' fees and Defendants' profits.

**1. Compensatory Sanctions are an Appropriate Remedy in this Case.**

After holding a party in civil contempt, a court may award compensatory damages to be paid directly to the party that brought the action. "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 987–88 (C.D. Cal. 2017). "The measure of compensatory sanctions must be proven by a preponderance of the evidence, not by clear and convincing evidence." *Fed. Trade Comm'n v. Dayton Fam. Prods*., 2:97-cv-00750-GMN-VCF, 2016 WL 1047353, at *9 (D. Nev. Mar. 16, 2016), *aff'd sub nom. Fed. Trade Comm'n v. Burke*, 699 F. App'x 669 (9th Cir. 2017).

Although the purpose of a compensatory monetary award is meant to correspond with the amount of damage to the requesting party, the requesting party need not prove actual damages, and disgorgement of Defendants' profits can be used as an appropriate measure of damages.

"[D]isgorgement of profits is a traditional trademark remedy and the district court's use of profits as a measure for the contempt sanction is hardly a novel proposition." *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004); *Toyo Tire*, 281 F. Supp. 3d at 993. Disgorgement of profits is also a remedy for infringement of a design patent. *See* 35 U.S.C. §289.

To deter Defendants from future violations, a full accounting of its profits from its sale and distribution of the Accused Products and the New Product, both before and after the entry of the Injunction, is proper. *See, e.g.*, *Eros Entm't, Inc. v. Melody Spot, L.L.C.*, No. 99-cv-1157, 2005 WL 4655385, at *7 (E.D.N.Y. Oct. 11, 2005) (concluding that the "appropriate remedy" for contempt was the "compensatory and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

punitive damages to which they would have been entitled had they not entered into the Consent Judgment"); *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970) (awarding an accounting of trademark infringer's profits from the sale of the infringing article both before and after entry of preliminary injunction). The Amended Judgment was entered into by Kaotica in exchange for Defendants submitting to the Injunction; had Kaotica known that Defendants intended to simply carry on with their infringing activities, it would have pursued the litigation for the full amount of damages to which Kaotica would have been entitled but for the parties' agreement to resolve this action. Thus, in light of Defendants' subsequent violations, Kaotica should now be compensated for its full amount of damages. Such accounting is necessary where, as here, future deliberate violations would not be adequately deterred by lesser remedies. *See, e.g.*, *W. E. Bassett Co.*, 435 F.2d at 664 ("An accounting should be granted if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again.").

Through their violation of the Injunction, Defendants have demonstrated their intent to continue to violate Kaotica's intellectual property rights and disregard the authority of this Court. In light of Defendants' continued and repeated violations of the Injunction, only a full accounting will help to ensure that the Defendants cease their violations and compensate Kaotica for Defendants' unjust enrichment.

Here, Kaotica is unaware of the actual number of products sold by Defendants in violation of the Amended Judgment, and thus respectfully requests that the Court defer the determination of the amount of damages to be awarded in favor of limited discovery on the issue of Defendants' sales. *See, e.g.*, *Daimler AG, v. A-Z Wheels LLC*, No. 16-CV-875 JLS (MDD), 2022 WL 281580, at *6 (S.D. Cal. Jan. 31, 2022) ("Defendants shall within sixty (60) days from the date of this Order . . . [p]roduce to Plaintiff an accounting of all profits received from the marketing and sale of products in violation of the permanent injunction."); *H.I.S.C.*, 2022 WL 104730, at *6 (finding

contempt of injunction but "reserv[ing] the issue of damages" and "order[ing] discovery of Plaintiffs' and Defendants' corporate records"); *Seal Shield, LLC v. Otter Products, LLC*, No. 13-cv-2736-CAB (NLS), Order at 6 (C.D. Cal. Dec. 30, 2014), ECF No. 163 (Rosenberg Decl., Ex. 12) (ordering contumacious party to provide "an accounting, including the gross and net profits" for all enjoined products within 30 days of the order finding contempt).

**2. An Award of Attorney's Fees and Costs is Appropriate**

Due to Defendants' willful contempt of the Injunction, Kaotica has incurred substantial expenses, including attorney's fees and other expenses. Kaotica is entitled to recover such attorney's fees and costs, including the costs of investigation. *See, e.g.*, *Daimler*, 2022 WL 281580, at *5 ("Compensatory sanctions may also take the form of Plaintiff's attorneys' fees in obtaining the contempt finding."); *Natural Fashions, Inc. v. Best of Kashmir*, No. 2:15-cv-00033-MCE-CMK, 2021 WL 1264916, at *4 (E.D. Cal. Apr. 6, 2021) (awarding compensatory payment and reasonable attorney's fees for selling products that infringed plaintiff's copyright, in violation of injunction); *Toyo Tire*, 281 F. Supp. 3d at 993 (awarding "reasonable attorneys' fees and costs reasonably and necessarily incurred in an attempt to enforce compliance with the Final Judgment" as part of compensatory award).

Kaotica respectfully requests that the Court defer a determination of Kaotica's reasonable attorney's fees and costs incurred in an attempt to enforce compliance with the Amended Judgment until after the parties complete their discovery regarding Defendants' profits, in the interests of judicial economy and conserving the parties' resources. *See, e.g.*, *Line-X LLC v. Tefft*, No. 5:20-CV-01707-SB-SHK, 2021 WL 6494881, at *2 (C.D. Cal. Dec. 21, 2021) (granting attorney's fees based on evidence submitted at hearing on order to show cause for contempt of injunction); *Seal Shield*, No. 13-cv-2736-CAB (NLS), ECF No. 163 at 6 (awarding attorneys' fees as part of order finding contempt of injunction and permitting movant about two weeks to file application for fees). Kaotica is prepared to provide supplemental briefing and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

evidence regarding the amount of fees sought upon request by the Court.

## V. CONCLUSION

For the foregoing reasons, Kaotica requests that the Court enter an Order:

(1) declaring that Defendants are in civil contempt of this Court for violating the Injunction, and that Defendants be further restrained from violating the Injunction;

(2) requiring Defendants to pay coercive sanctions to the Court in an amount the Court determines to be just and proper for each day from November 1, 2021 through at least the date that this motion was submitted;

(3) requiring Defendants to pay to Kaotica an amount equal to all of Defendants' profits, both before and after the entry of the Injunction, generated from the Accused Products or colorable imitations thereof;

(4) requiring Defendants to pay to Kaotica an amount sufficient to reimburse Kaotica for its costs, expenses, and reasonable attorney's fees in investigating and remedying the violation, including prosecuting this Motion;

(5) requiring Defendants to destroy any and all Accused Products and New Products, or colorable imitations thereof in Defendants' possession or control;

(6) referring this case to a magistrate judge for damages discovery to determine Defendants' sales and provable deductions, and Kaotica's costs, expenses and attorney's fees and Defendants' profits; and

(7) ordering such other relief as may be just and proper.

//

//

//

//

Respectfully submitted,

Dated: February 9, 2022

TARTER KRINSKY & DROGIN LLP

By: */s/ Mark J. Rosenberg*

Mark J. Rosenberg (admitted *pro hac vice*)
mrosenberg@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel: (212) 216-8000
Fax: (212) 216-8001

Jeffrey M. Rosenfeld (SBN 222187)
jeff@krinternetlaw.com
KRONENBERGER ROSENFELD, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Tel: (415) 955-1155
Fax: (415) 955-1158

***Attorneys for Plaintiff Kaotica IP Corp.***

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BEFORE HONORABLE CATHY ANN BENCIVENGO, JUDGE PRESIDING

| | |
|---|---|
| KAOTICA IP CORP., Plaintiff, vs. ICONIC MARS CORPORATION and OLUSEYI JAMES OLALEYE, Defendants. | CASE NO. 21CV0433-CAB<br>SAN DIEGO, CALIFORNIA<br>MARCH 24, 2022 |

STENOGRAPHIC COURT REPORTER'S TRANSCRIPT OF PROCEEDINGS
MOTION HEARING
PAGES 1-31

Proceedings reported by stenography, transcript produced by CAT software

Mauralee Ramirez, RPR, CSR No. 11674
Federal Official Stenographic Court Reporter
ordertranscript@gmail.com

COUNSEL APPEARING:

For The Plaintiff:   Tarter Krinsky & Drogin llp
                     Mark J. Rosenberg
                     Sandra Adele Hudak
                     1350 Broadway
                     New York, NY 10018


For The Defendants:  SML Avvocati P.C.
                     Steven M. Lobbin
                     Joshua Osborn
                     888 Prospect Street, Suite 200
                     La Jolla, CA 92037


Also Present:  Oluseyi James Olaleye

San Diego, California; Thursday, March 24, 2022; 2:00 p.m.

*(Case 21CV0433-CAB called)*

ATTORNEY ROSENBERG:  Good afternoon.  This is Mark Rosenberg for the plaintiff.

ATTORNEY HUDAK:  Good afternoon.  Sandra Haduk for the plaintiff.

ATTORNEY LOBBIN:  Good afternoon, Your Honor.  Steven Lobbin of SML Avvocati here in San Diego for the defendants.

ATTORNEY OSBORN:  Hi, Your Honor.  This is Joshua Osborn of SML Avvocati for the defendants.

DEFENDANT OLALEYE:  Oluseyi Olaleye, San Diego.

THE COURT:  Thank you.  All right.  We're here today on the defendants' motion or they are requesting the Court to issue an order to show cause why the defendants should not be held in contempt on the previous stipulated judgment and permanent injunction in this case.  I've reviewed the materials that you've provided to the Court.  And as just basic legal standard here, it is the moving party's responsibility to establish contempt by clear and convincing evidence in violation of a specific court order and by failing to take reasonable steps within the parties' power to comply.

There are two essential time frame order issues here I think that are involved.  There's behavior that was before January 1st of 2022 at which point the stipulated judgment and injunction allowed the defendant to sell off inventory that

they had agreed came within the scope of all the intellectual property asserted in the underlying case and they were limited to making those sales on their specific website.  And then after January 1st of 2022 or as of that date, they were enjoined to go forward with the sales of the accused products.

It's again the Court's understanding from what's been filed that the issue prior to January was that the accused products were being sold while they were actually -- the sale was being conducted on the defendants' website, they were being advertised on Facebook and other social media platforms so that you could see them for sale there and click through to the website so you could actually make the purchase, and that the plaintiffs felt that was in violation of the injunction.  So let's start with that and you can fill me in.

ATTORNEY ROSENBERG:  Good afternoon, Your Honor.  By the way of background, we brought this case over a year ago because of the defendants' infringement of Kaotica's utility patent, design patent, trade dress, and copyright.  We filed a preliminary injunction motion before Your Honor, and while the hearing was scheduled, before then, we had an ENE with Magistrate Judge Butcher and resulted in settlement of this case.  The settlement agreement is captured in the stipulated judgment and permanent injunction which Your Honor so ordered.

As part of that settlement, Kaotica forego -- forewent seeking its full damages.  It took a portion.  In return the

case was supposed to end, and the defendants were supposed to comply with the terms to which they agreed.  And they haven't.

And going through, preparing for this hearing, I keep wondering what are the defendants doing here?  Are they playing games or just trying to come as close to the line as crossing it?  And even though intent is not a factor in determining contempt, I just could not fathom why the defendants on multiple levels refused to abide with the plain terms of the stipulated judgment and permanent injunction to which they agreed.

Then on Tuesday of this week, I received a letter from defendants' attorney stating that the current product which they're selling does not infringe Kaotica trade dress rights quote "if any which had never been found or agreed to exist in the first place," unquote.  And this just encapsulates everything.  The trade dress is defined in paragraph 3.3i of the judgment, and it's also shown in Exhibit 1 to the judgment. Moreover in paragraph 3j of the judgment, the defendants agreed that the Kaotica trade dress is quote "valid and subsistent" unquote.

So to take this position, and I understand from a preview of the presentation that defendants are going to make today that they don't understand what the trade dress is, this is just making a mockery of the terms of the amended stipulated judgment and permanent injunction.  The judgment and injunction

were negotiated with counsel. Mr. Lobbin here signed the judgment on behalf of the defendants, and to now say that they don't understand what the judgment means is incredibly disingenuous.

So let's turn to what happened before January 1st. On Facebook, they were offering a product for sale. They had multiple photographs of the product, they had the price of the product, a written description of the product. And this is on the sell feature -- I'm sorry, the shop feature. It was not just a post that shows a musician or someone else using a product. This was on the shop feature. There was a workable button that said "checkout." Not check out, two words, to take a look, but checkout one word as in a cashier or a cash register. Yes, clicking on that button brought you to the Iconic Mars website.

But under the case law, what constitutes an offer for sale enjoined in the judgment and injunction is more than satisfied with what was on Facebook. The description, price, and a means to purchase. Not a mere advertisement. This was an offer for sale.

After January 1st, the defendants offered for sale the old product. They were specifically enjoined from quote "the sale, offering for sale, promotion, and distribution" of that product. But it didn't end. It continued. And I'm going to show you a chart, Your Honor. All these exhibits which trace

defendants' conduct. These are images taken from plaintiff's (as said) website and Facebook and the judgment. So this over here is exhibit -- the judgment, Exhibit 2, which is I believe defendants' product. Right here, the date of February 22nd is defendants' website, same image.

On February 22nd, we had the conference with Magistrate Judge Butcher and Your Honor ordered us here.

February 28, six days later, they were still advertising and promoting and offering for sale the old product.

This is just another image, December 7th on Facebook, "checkout" on website.

February 5th three days before we filed the papers for this motion, same image.

February 22nd when Your Honor ordered this hearing, same image.

And then February 28th, six days later, still showing the same image on their website. They were offering and advertising and promoting the original product that was enjoined and the subject of this litigation months after they were enjoined from doing so.

And then after January 1st, they began selling a new product that is nearly identical.

THE COURT: I want to deal with these separately.

ATTORNEY ROSENBERG: Okay.

THE COURT:  Because I don't think you're going to meet your burden on the new product.  They have their dec relief action.  We can deal with whether the new product is different or not.  But if there have been continuing sales after January 2022 of the accused product that's the subject of the injunction, which you've indicated, then that would be a violation, and I don't know how you get around that.  Let me hear the defendants' response to that.

ATTORNEY ROSENBERG:  Just one thing.  Their response is well, that's not what we shipped, but the injunction prohibits the offer -- promotion, advertising, and offer for sale.  If they were engaging in bait and switch, that's not an excuse.  That's false advertising.  But they were offering that product for sale.

THE COURT:  Thank you.

ATTORNEY LOBBIN:  Thank you, Your Honor.  And let me address the before January issues, as you requested.  And speaking of bait and switch, I mean, we're here to do equity.  You're here to do equity, not me.  You're the judge.  The Court is here to do equity.  And when you're here to do equity, you have to at least consider whether the one requesting equity is coming here with clean hands, and we submit that that's not the case.  This was a big bait and switch.

We have been talking to counsel since this action was first filed to try to work on a resolution.  We're not in a

position to afford litigation, even though we don't infringe everything.  And so we submit that this entire settlement agreement and trying to enforce the terms -- we've got to look at the terms of the settlement agreement against the actions going forward -- is just ingenious and shows unclean hands by plaintiff as we've stated in our declaration submitted in opposition to this OSC.

And let me start there.  The settlement agreement says until January 1st, prior to January 1st, the defendants are allowed to sell, as Your Honor said, a selloff, right?  This is typical, right?  This is IP 101.  You agree to a settlement, you agree to some period of selloff, and you keep doing what you're doing until January 1.  So plaintiff was being too cute by half here by drafting the settlement agreement.  Yes, we agreed to it, Your Honor.  I have to admit we did sign it, okay.

But too cute by half here.  Paragraph 12, selloff on the website; i.e., keep doing what you're doing until January 1st.  All of a sudden, we sign the agreement and keep doing what you're doing, according to them, now violates the agreement.  Are you kidding me?

I mean, on our website, it says our site is hosted by Shopify Inc.  This is ecommerce.  Everyone knows how it works.  You have Instagram, social media, you get people excited, you drive them to your website.  Shopify is the back end of our

website.  That's where the sales happen.  They knew that. Everybody knows that.

They crafted the settlement agreement to say keep doing what you're doing, oh, but by the way, the day after you sign it, you're in violation.  That is unclean hands.  And their counsel, their day-to-day counsel, immediately in November starts going to Instagram, take down notice; starts going to Facebook, take down notice; go to eBay, take down notice.  That is the contempt that's going on here.  And we'll bring a motion if we need to, but, again, we're not here to litigate.  We're here to move on to our version 2, our version 3, which is what we've done.

So that addresses the issue I think that Your Honor requested feedback on.  And I can talk later about the other issues.  But it was known since day one, this is a website to Shopify, you know, generating buzz on social media.  Those are not sales.

THE COURT:  The problem I'm having with the terms of the injunction and the representations that have been made is that the defendants have represented the method by which they made sales on their website was fully known to the plaintiffs at the time they agreed them to allow them to do this selloff. Paragraph 12 of the order specifically says that they should only offer for sale and sell on their website on that address. The defendants understood that, they claim, that that meant

they could continue to do business through their website and that was the method by which they did it.

There's nothing here that indicated more broadly that they could not advertise people to their website through other websites, the manner in which you were allegedly functioning when this happened, and I don't know that the term is clear enough, defined by clear and convincing evidence that they're in violation of it.  There's no evidence they were selling their product other than you had to go to their website to buy it.

Yes.  You didn't really address my question.  You went on to other things.  But I'm not convinced there has been a violation here by the fact that the Iconic Mars website was accessed through Facebook or Instagram or some other vehicle to get there so that you could get to their website to make a purchase.

ATTORNEY ROSENBERG:  But it was more than just advertising.  And under the case law that when there's a description of a product, a price.  And here you have a significant description, you have multiple images, and you have a checkout function.  Checkout is not advertising.  Checkout is buy.  Yes, you had to go to another website to complete the transaction, but checkout, buy, offer for sale.

THE COURT:  How did you expect them to sell their product?  They have asserted that your client knew how they

operated, how they sold their product, how their website used these links so people could find their website and buy their product.  What is it you were anticipating they were going to do up until January, those three months, October, November, December, to sell their product?

ATTORNEY ROSENBERG:  They could advertise it.  For example, you do not need use to the word "checkout."  Facebook has another on the shop function, it says "view on website."  That's a different level.  They could have made -- I have no problem with that.  But when you have checkout, that is a different level.  And in their opposition, they said that somehow they're forced to use the checkout function.  That's not true.  Nobody forced them to advertise on the mobile version of Facebook, which is where the defendants say you're forced to use that checkout provision, the checkout button.

So this is more -- we are focusing on the Facebook advertising more than advertising that enabled the purchasing process.  If it said "view on website," I would say it's different.  It gave the link to the website.

THE COURT:  Was there any discussion at the time you finalized the terms of this agreement as to how they were going to operate, that they could not do what they had clearly been doing up until that point for the next three months?

ATTORNEY ROSENBERG:  I don't recall one way or the other.  But on the other hand --

THE COURT:  All right.  I'm not going to find them in contempt for those sales.  I don't think that the terminology of the injunction was so clear that by clear and convincing evidence their acts to continue doing what they were doing, which was allowed under the terms of the injunction until the end of the year, constituted a contempt of the order.

ATTORNEY ROSENBERG:  But, Your Honor, they were also selling on Amazon and Facebook.

THE COURT:  I'm done with that issue.

ATTORNEY ROSENBERG:  That's not advertising.  Okay.

THE COURT:  So the next issue then is the new products that they claim they introduced in January.  And the plaintiffs are, again, asserting that, in fact, that the product that was sold and delivered, however, is not your new product, correct?

ATTORNEY ROSENBERG:  Well, I don't know what was delivered.  But certainly what was offered for sale was the old product.

THE COURT:  Okay.  Go ahead, defense counsel.

ATTORNEY LOBBIN:  Thank you.  First of all, counsel does know what's delivered because his client ordered it in January of this year, and they ordered it so that they could figure out their theories about contempt.

And going back to what this case is about, Your Honor, this was a patent case and a copyright case and a trade dress claim, low and behold, thrown in there like the tail wagging

the dog.  So the settlement agreement was to memorialize that. We had extensive discussions.  By the way, I do remember what was discussed, and if we need to go to parol evidence, we can because there seems to be an ambiguity, although we didn't think there was.

The settlement agreement memorializes that we don't want to litigate, right?  There was a pending preliminary injunction motion before Your Honor.  We wanted to move on.  We moved on to our version 2 product.  We sold only the version 2 product starting on January 1st.  And what plaintiff did was brought this motion because they assert, not patent infringement; they know there's no more patent infringement, not design patent infringement; they know there's no more design patent infringement, not copyright infringement; they know there's no more copyright infringement; but low and behold, we've got this trade dress claim that's part of the settlement agreement, and so we'll assert that.

THE COURT:  They're actually asserting the design patent again as well the '690.

ATTORNEY LOBBIN:  We can get into that, but there's clear distinctions there.  The trade dress, over my objections, was not defined in the settlement agreement.  And we asserted, you know, we want to settle, but we don't infringe any trade dress.  And by the way, if you assert trade dress again, we have the right to contest it.  And that's in paragraph 10 of

the settlement agreement.

We don't admit to the validity of any trade dress, and we don't admit to the infringement of any trade dress. And as Your Honor -- I know Your Honor knows, trade dress litigation, the first step to finding out whether you have claims to actually tell the defendant what your trade dress is, okay? They refused to do that.

Now should we have perhaps not signed the settlement agreement until that was done? Perhaps, yes. We signed it anyway. And they said their trade dress, just go look and see, and look and see at Exhibit A to the settlement agreement which is -- Josh, if you can pull this up. I'm not sure if you can. On the screen, this is page 3. We'll get you a copy of our PowerPoint.

But suffice it to say, the settlement agreement showed pictures of their product, okay, which is circular. Our product is not. We didn't infringe their trade dress then. We don't infringe after January 1st.

Now what did happen on January 1st, Your Honor, is that the construction of our product changed internally, and some of the features. This is a product, Your Honor, where you take the cover off, the colored piece, which is called the pop filter. You take it off, you put it over a microphone, you put the pop filter back on, and it enhances the sound quality of the recording.

So what changed on January 1st? Well, what changed is the accused infringing product was no longer being sold. The only product being sold was the version 2 product. And the reason we're here today is because plaintiff's counsel instead of buying the product and looking to see what changed, they said well, it looks the same so it must be the same product and, therefore, we're going to assert contempt.

So the product is totally different. Yes, it's a pop filter, so they all have generally the same shape. But on the a product like this, the trade dress they're asserting here has never been assessed, first of all, it's never been defined, and the rights are thin at best.

And if I can show you some examples, Your Honor. These are big, but let's see if we can see them here. So the accused product. You know, last year when the lawsuit was brought, this was our product, okay? Smooth inside. I don't know if you can see the light thing in there. Not circular. You can see that from here. Not circular. It's got sort of a-- sort of an eggy sort of shape. Their product attached to the settlement agreement, circular.

Oh, this, okay, asserted trade dress, never defined. Pictures attached to the settlement agreement. We don't know. We didn't infringe it then. We didn't infringe it version 2. So version 1. And January 1st, version 2. Now you can see the inside, if the light hits it right, you can see those ridges.

The reason is we want to get as far as away from this plaintiff as possible, okay. And we did some testing. It didn't affect the quality of the product. The outside shape, the same. So when you have the filter on, version 2 looks like version 1, but key to the patent claims is the inside, because the patent has limitations and the claims that deal with that.

So now, version 3. We want to get still further away. We have been trying since this lawsuit was first filed to work with them. We don't want to argue preliminary injunction, we don't want to come here for contempt hearings. We want to work with them and say whatever you think your rights are, we want to get away.

THE COURT: When did version 3 go on sale?

ATTORNEY LOBBIN: It's in the process of being rolled out. So that's where we are. Now, again, I think the problem was that the look if you have the filter on. But that's not -- so trade dress deals with how the product is -- you know, when a consumer buys the product, they want to know, you know, what's going on inside. Because they have to take it off, put the filter on, put it on the microphone.

You know, it's not a just a one look thing. It looks kind of similar, like the shape of a bottle, too similar. You want to know a little bit more to have a valid trade dress. So perhaps shame on us for not getting that clear. I mean, it was clear to us based on the discussions, but perhaps the -- you

know, the terms of the settlement agreement aren't exactly clear.

But, again, we're here on contempt, Your Honor, as I don't have to remind you, but I will anyway since I like to talk. We're here on a contempt motion which requires clear and convincing evidence, violation of a specific indefinite corridor by failing to take reasonable steps to comply. Now what are our reasonable steps? We're communicating with this plaintiff all along, here's our version 2.

Let's -- you know, another thing we should have done, Your Honor, perhaps a lot of times, as I think the Court knows, in a settlement agreement where a new product is being rolled out, you want to get that new product blessed.

THE COURT: All right. We're moving past what I want to talk about.

ATTORNEY LOBBIN: All right. Thank you.

THE COURT: So the injunction of the order on the initial case which went into effect on January 1st permanently enjoined the defendants from inducing or contributing or infringing the '690, which is the design patent and the trade dress. The fact that you signed an agreement and agreed to be permanently joined and now claim you don't know what their trade dress was is your problem, not their problem.

However, the issue becomes whether or not what you were selling after January 1st would constitute a violation of

the design patent and the trade dress and also what you were

advertising.  And what am hearing is the problem, one problem

is not necessarily what you actually sold and delivered, which

you claim are now substantially or significantly different than

what you agreed the accused product, which was covered by the

trade dress and the design patents, but that you were providing

something else and that you are even further moving away from

those designs, but they have contended through this

demonstration and in their papers that you were advertising

actively the originally accused product and that even though

you ultimately sold the new product, the pictures, the

advertisements that brought people to your website continued

after the 1st to be the accused device.  Is that true?

ATTORNEY LOBBIN:  Can I address that?  Yes?  No, it's

not true.  So this is the original version 1 accused product at

the beginning of the case.  This disappeared before

January 1st.  The product disappeared.  The advertising for the

product disappeared.  Gone.

This is version 2.  Noninfringing in our -- not

violating the agreement, noninfringing, substantial design

changes.  This is version 2.  This is the only thing that was

sold, advertised, discussed, shown anywhere after January 1st.

THE COURT:  Is that that?  The pictures he's putting

up that he's telling me came after January 1st from various

sources that you were using to drive business to your website

that he has just represented to me, plaintiff's counsel, are pictures of the original accused product?

ATTORNEY LOBBIN: Those are pictures of version 2, not pictures of the original product.

ATTORNEY ROSENBERG: Your Honor, those photographs are identical. They, the plaintiff -- I'm sorry. The defendants were enjoined from selling a product that looked like that. That cannot be a different product. But if is, they are infringing with trade dress because you can't make under the case law for the purposes of an injunction in contempt minor changes that --

THE COURT: Well, I disagree with you, Counsel, as for a matter of contempt that the changes they made are not sufficient.

So the only question that's left for me on your motion right now is whether or not those are actually photographs of the accused product or whether they're photographs of the new product that they were selling.

ATTORNEY ROSENBERG: They were enjoined from selling, advertising, offering for sale, promoting the accused product. Whatever, that -- Your Honor, there are differences between the products. They are not the same. If I can hand them up, I will. Can I hand them up?

THE COURT: Sure.

ATTORNEY ROSENBERG: Okay. There are differences.

And if you look there closely at that, that is the same product offered for sale.  That is the original, and this is the new one.

THE COURT:  So these pictures then, this demonstrative you put up here, is this the same picture I'm looking at page 18 of your brief at docket 44-1?  At that page, it's 22?

ATTORNEY ROSENBERG:  Yes.

THE COURT:  And, Counsel for the defendants, you're saying that that picture on plaintiff's brief at docket 44, page 22 is your new designed product?

ATTORNEY LOBBIN:  I'm not sure where they got that picture.  Our pictures that we used after January 1st are the newly designed product.

ATTORNEY ROSENBERG:  The December 7th screen shot was taken from defendants' Facebook page.

THE COURT:  That was December 7th.  They were allowed to advertise their old product on December 7th, so that doesn't help me.

ATTORNEY ROSENBERG:  It does in this way, in February, the photograph was identical.  In the top left, that's the image from the injunction in October, but the two images to the right of it are February of this year.  They're the exact same product being shown.  These are not the same product.  There are differences.

THE COURT:  Do I have all of this somewhere?

ATTORNEY ROSENBERG: No. Because they came out after we submitted our papers. We can submit it afterwards, Your Honor.

THE COURT: And who is authenticating what those are and who took the pictures and who posted them and who is acknowledging that they are photos, other than your opinion that they're the same?

ATTORNEY ROSENBERG: Your Honor, I created the screen shots. And the one in the top left and from the judgment. And it's in my declaration. The two most recent ones I have not authenticated, but I will. But the other ones are authenticated in my declaration.

THE COURT: All right. Thank you.

ATTORNEY LOBBIN: Your Honor, as I explained and if you'll -- if you're interested in having Mr. Olaleye explain as well, these two products when the filter is on do look similar, but nobody -- you know, this is version 2. This is version 1. When you put the filter on, the outlying shape, yes. That was not -- the focus of version 2 was no patent infringement, no design patent infringement, no copyright infringement. And we never thought there was any trade dress infringement because we never thought that there was any trade dress.

But, nonetheless, the shape is different than the asserted trade dress. And that shape, look, version 1, version 2 have the same outline of shape, right? But as of

January 1st, there were no images, there were no products left of version 1.  All the images and products used to sell version 2 were version 2.

THE COURT:  Part of the problem that the Court is having is that there's so much functional aspect to these designs that has to be taken into consideration in considering both a design patent and trade dress and whether or not once you consider the functionally driving aspects of it, how different can they and should they be.  The pictures I have that the defendants provided with their brief make these differences between these two products that you have now handed to the Court look more different than I would say they are appearing in person, and I'm just not sure if that's angles or whatever.

ATTORNEY ROSENBERG:  Your Honor, that the exterior actually -- the exterior appearance has nothing to do with function.  That is foam, yes.  What matters for function is the interior chamber.  The exterior, you will see all these noninfringing alternatives from the design patent perspective that are squares, that are octagons, cylinders with fronts cut off.  The exterior shape doesn't matter.  It's the interior shape.

THE COURT:  So your trade dress is a round product.  It's round.  You don't get to keep extending it to more flattened and oval because if that is the decorative aspect,

you don't get to go broader than a ball.  You have a ball.

ATTORNEY ROSENBERG:  We're only asking that the terms that the defendants agreed to in the stipulated judgment and injunction be enforced, that they were enjoined from selling a product that looks like the one on your right.  They are now selling a product that looks exactly identical to it.  And this is for the trade dress aspect.  We haven't got to the design patent yet.

THE COURT:  It's the same problem with your design patent.  You have a design patent on a circular device.

ATTORNEY ROSENBERG:  But they're enjoined from selling a device -- a specific device, the device on your right, Your Honor, the original device.  And the new device is not colorably different.  And that is the standard both in the judgment, that is the standard they can challenge the validity of the trade dress, and that is the standard whether or not a new product is subject to an existing injunction.  It is not colorably different.  It is the same.  Minor differences does not render one product colorably different than another.

THE COURT:  Okay.  I've heard that argument.  You made that argument.  I am not convinced.  I'm sorry.  They have their dec relief action.  You can charge their new product with infringement.  You can file your counterclaim that they are still infringing your patents and your trade dress, but I do not believe at this point for purposes of a contempt citation

that the changes they have made, which have moved farther away from your original design, are not insufficient enough to give rise to contempt.  I'm not persuaded.  So that issue is not on the table.  And this gentleman is the principle of the company?

ATTORNEY LOBBIN:  Yes.

THE COURT:  I'd like you to take the stand, sir.

ATTORNEY ROSENBERG:  One more thing, Your Honor.  With respect to the photographs, there's nothing on the record that the defendant said these photographs shown in that chart or any photographs in our brief were of the new product.  Never denied it.  Now for the first time, counsel is denying it.

THE COURT:  That's why I want to put him on the stand. He's the responsible party.

Oluseyi James Olaleye, called as a witness, testified as follows:

(Witness given an oath)

THE CLERK:  I am going to ask you to state your entire name, spelling it all for the record.

THE WITNESS:  All right.  Oluseyi Olaleye.

THE COURT:  She's going to need for you to spell your name.

THE WITNESS:  O-l-i-s-e-y-i, middle name is James, and last name is O-l-a-y-e.

THE COURT:  Sir, the allegation has been made that as of January 1st of this year when you were enjoined from

continuing to sell and advertise for sale the accused product that you continued to do so, and counsel has provided this chart today with images that counsel for the plaintiff took down from the website saying that this is your old product, and I would like you to tell me what that is, if you recognize any of those websites, and what product is displayed there.

THE WITNESS:  Thank you, Your Honor.  After January 1st, we started selling the version 2.  The version 2 has a clear pattern inside which does not infringe the utility patent at all.  And we discontinued the first version.  We don't sell it anymore.  I took the loss.

And when I started selling the version 2, we actually took a new picture because the pop filter is considered an attachment.  You can actually use the product without the attachment in, which is the pop filter.  So you can take out the pop filter, you would able to look at the difference between the version 1 and the version 2.  You could use a gooseneck pop filter to use this product, which a lot of people do, without putting the pop filter.  The pop filter is considered an attachment.  The attachment, you could buy -- the pop filter could come in a different shape and it would still look the same.

Now the image on the website is clearly the version 2.  And the version 2 -- and the website also states in the description that this is a V2 version, okay?  So it's clear on

the description, customers know, they purchase it, they got it, and they realize it has ridges inside and it's not the same as version 1.  So the foam is the actual product, and it does not infringe.  And we clearly changed the image also.

THE COURT:  All right.  You can ask him, if you want to inquire about anything else.

ATTORNEY LOBBIN:  No.  Thank you, Your Honor.

THE COURT:  Counsel, do you have?

BY ATTORNEY ROSENBERG:

Q    When did you start saying version 2 on descriptions?

A    I actually started around December 28th.

Q    So why on several of those images in the full ones that you have, it doesn't say version 2?

A    It does state version 2.  After January 1st, we did put a version 2 on it.  And also on Amazon, it states version 2.  And your team actually, which works for guys, purchased the product around early January twice and it and received it, and it received the version 2.  And we actually update -- we actually--

ATTORNEY ROSENBERG:  Your Honor, if you look at my declaration, you'll see that a number of the screen shots, it does not say version 2.  That came later.

ATTORNEY LOBBIN:  Objection.  Testimony from counsel.  Excuse me.  I'll object, Your Honor.

THE COURT:  I'm sorry.  Where I am looking for this,

sir? I mean, if you want to get on the stand and testify too, we can do that, but right now, I have this gentleman's testimony that these changes were made and that those figures are not the version that was the accused device.

ATTORNEY ROSENBERG: So for example, Exhibit 4 to my declaration which is the Amazon screen shot from February 8th does not say version 2.

THE COURT: I'm going to hand you what has been submitted to the Court at docket 44-2 at page 21. It appears to be a download from I guess this is an Amazon website for the Iconic Mars portable recording vocal isolation booth. This document is dated February 8th. And, sir, which device is that?

THE WITNESS: This is the version 2. The reason why it actually looks like this is because the pop filter is considered an attachment. You take out the pop filter, you realize clear difference. You can take the pop filter out and you can see the clear difference between the version 1 and version 2. You can go ahead and take a look at it.

THE COURT: It's inside. I know they look different, but it is your testimony, sir, that this is the new version?

THE WITNESS: This is the version 2, and we only sell version 2.

THE COURT: All right. Anything else?

ATTORNEY ROSENBERG: No, Your Honor.

THE COURT:  Thank you.  You can step down.  At this point, the Court is not going to find that the defendants in this case are in contempt of the original injunctive order. And I want the case to just proceed under the new case and if you want to continue to litigate the differences now of the new version that Iconic Mars has got on the market and is selling as to whether or not that also comes within the scope of your trade dress and your design patent, and I don't know if you want to assert your utility patent, I don't know if you have answered yet in the dec relief action.  We'll move forward and litigate that and let a jury decide if these things are within the scope of those claims.

ATTORNEY LOBBIN:  Thank you, Your Honor.  We have not proceeded with the second action yet.  We don't want to litigate, so we'll work with counsel to try to work that out. I would request that we be -- the defendants have leave to file an application for our fees on this contempt motion.

THE COURT:  I'm not going to do that.  This was messy enough.  While I don't think they have met a clear and convincing evidence standard, I think there has at least been some confusion that led at least to them bringing the motion in good faith but not sustaining it.  I don't think it was frivolous or inappropriate.  And since you sought no relief on your own for what you claim was their bad acts, I'm not going to grant you without any motion on your part any relief.

ATTORNEY LOBBIN: Thank you.

THE COURT: I would like you to try to go back to Judge Butcher and see if you can work this out. They have indicated they are continuing to change their design, moving visually much farther away now from your trade dress and design patent with a much more square looking device, and maybe you can reach some common ground. But if not, they have filed their action. It's pending. You need to answer and we need to move this case forward. All right. That's all for today. Thank you.

ATTORNEY LOBBIN: Thank you, Your Honor.

(Court in recess at 2:45 p.m.)

CERTIFICATE OF OFFICIAL STENOGRAPHIC COURT REPORTER

I, Mauralee Ramirez, federal official stenographic court reporter in and for the United States District Court for the Southern District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that to the best of my ability, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 9th day of May 2022

S/ Mauralee Ramirez
Mauralee Ramirez, CSR No. 11674, RPR
Federal Official Court Reporter

INDEX

| WITNESS: | PAGE |
|---|---|
| Oluseyi James Olaleye | |
| Examination by The Court | 25 |
| Examination by Attorney Rosenberg | 27 |

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, California 92109
Tel: 949.636.1391

*Pro Bono* Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**Kaotica IP Corp.**, a Canadian corporation,

Plaintiff,

v.

**Iconic Mars Corporation**, a California corporation, et al.,

Defendants.

Case No. 3:21-cv-00433-CAB-DEB

**DECLARATION OF STEPHEN M. LOBBIN IN SUPPORT OF DEFENDANTS' MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT**

Honorable Cathy Ann Bencivengo

I, Stephen M. Lobbin, declare and state as follows:

1. I am an attorney with SML Avvocati P.C., *pro bono* counsel to Defendants (collectively "Iconic"). I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would testify competently thereto.

2. In the Complaint in this action, Plaintiff Kaotica asserted utility patent infringement, design patent infringement, copyright infringement, and trade dress infringement against Iconic's accused infringing "Comet Version 1" product. Kaotica attached with its Complaint several images of the Comet Version 1 accused

product, all of which show correctly this microphone attachment product having features including a smooth, cylindrical interior and a circular "pop filter" attachment with Iconic's name and logo "iconicmars" ***depicted in gray-colored lettering***. *See* ECF No. 1-2 at 33-36, 38-41 and 45-46. Attached herewith as **Exhibit 1** are two of the images of the accused product filed with the Complaint. See ECF No. 1-2 at 45-46.

3. In August 2021, Kaotica provided similar, correct images of the Comet Version 1 accused product with its Motion for Preliminary Injunction. *See* ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19.

4. The parties conducted a settlement conference with Magistrate Judge Butcher in September 2021 and reached a settlement in principle based, in part, on Iconic's proposed redesigns of its accused infringing Comet Version 1 product.

5. For several months in 2021, before and after the September 2021 settlement, Iconic worked to create new, non-infringing redesigns, and Iconic specifically disclosed and discussed its efforts with Kaotica. *See, e.g.*, ECF No. 26-6 at 2. Iconic was a new company and intended to create its own distinctive products and brand image. Also, as a startup, Iconic could not afford to engage in extended litigation.

6. Attached herewith as **Exhibit 2** is a true and correct copy of a July 2021 invoice from TN Connections in Los Angeles for sample product images for Iconic's "Comet Version 2" redesign. Images of the Comet Version 2 redesign existed as early as July 2021.

7. Attached herewith as **Exhibit 3** is a true and correct copy of an invoice dated September 29, 2021 from a vendor for samples of Iconic's Comet Version 2, in preparation for beginning to sell the redesigned product after the settlement.

8. Attached herewith as **Exhibit 4** is a true and correct image of the Comet Version 2 (shown at ECF No. 45-12 at 2), which is more oblong and angular at the base, includes internal ridges avoiding Kaotica's patents and Trademark

Registration No. 5,568,302, and has a pop filter with a ***white instead of grey logo/lettering***. *Compare* Exhibits 1 and 4 (herein); *see also* ECF No. 60 at 25 (Court noting "the changes they have made [] have moved farther away from your original design").

9. By early October 2021, Iconic had uploaded to its website images of the Comet Version 2 product redesign. Attached herewith as **Exhibit 5** is a true and correct copy of a web page image from October 3, 2021, showing one of several images of the Comet Version 2 product on Iconic's website during that time. In anticipation of selling the Version 2 product following the settlement, Iconic wanted to introduce the new design to its customers and potential customers, to gain feedback on the design, and generate interest and momentum for the transition from Version 1 to Version 2 by January 2022.

10. As stated correctly in Paragraph 4 of the Stipulated Judgment entered October 28, 2021, the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, which was limited to the Comet Version 1 as stated in Kaotica's Complaint. *See* ECF No. 43 at 3; ECF No. 1-2 at 33-36, 38-41 and 45-46. Only Version 1 existed at the time of the Complaint in early 2021, and only Version 1 was an accused product in this action.

11. Paragraph 4 also makes reference to the "Accused Products" as being the example "shown in Exhibit 2 hereto . . . that infringes one or more claims of the '662 Patent and/or the '690 Patent." *See* ECF No. 43 at 3, 17. Attached herewith as **Exhibit 6** is a true and correct copy of the Stipulated Judgment, showing the image filed as ECF No. 43 at 17.

12. The Exhibit 2 attached to the Stipulated Judgment, however, shows a new Version 2 image from Iconic's website, rather than the Version 1 accused product from Kaotica's Complaint. This was a mistake. As noted *supra*, the Version 1 accused product is rounder (closer to a ball) and shows a logo in ***gray-colored lettering on the pop filter*** (*see* Exhibit 1 herein), while the Version 2 is

more oblong and shows a logo in ***stark white lettering on the pop filter*** (*see* Exhibits 4-5 herein).

13.   Attached herewith as **Exhibit 7** is a true and correct copy of a visual comparison of the images of ECF 1-2 at 46 and ECF No. 43 at 17.  The latter image purports to depict the accused product as Exhibit 2 to the Stipulated Judgment, but by the explicit terms of Paragraph 4, it does not.  The latter image shows the Version 2 redesign, which was a mistake to be included with the Stipulated Judgment.

14.   Moreover, the Version 2 redesign does not infringe the Kaotica patents (as referenced in Paragraph 4 of the Stipulated Judgment).  Attached herewith as **Exhibit 8** is a true and correct copy of Kaotica's dismissal of any patent infringement contentions vis-à-vis the Version 2 product.

15.   The incorrect image shown in Exhibit 2 to the Stipulated Judgment (ECF No. 43 at 17) does not change the scope or reach of the literal terms of agreement, particularly the definition of "Accused Products" in Paragraph 4.

16.   ***Only the Comet Version 2 has a pop filter with a white instead of grey logo and lettering***.  This is the coloring distinction to which Iconic's witness testified at the June 2024 trial.  Attached hereto as **Exhibit 9** is a true and correct copy of this portion of the trial testimony of Iconic's principal, Mr. James Olaleye.  In his testimony, Mr. Olaleye explains that "Version 1 also, the pop filter was gray, so I could easily tell [the difference in the images]."

17.   Although I am not certain how this mistake happened exactly, I am certain the image shown in Exhibit 2 of the Stipulated Judgment is a mistake—that is, Exhibit 2 shows the Version 2 product, not the accused infringing Version 1 product.  That a mistake happened is obvious when comparing the images of the accused infringing Comet Version 1 that are attached to Kaotica's Complaint and motion with the image of Comet Version 2 in the Stipulated Judgment.  *Compare* ECF No. 43 at 17 *with* ECF No. 1-2 at 33-36, 38-41 and 45-46, ECF No. 23-1 at 7, 15-17 and 20, ECF No. 23-2 at 11-14 and 16-19; *see also* Ex. 5 (herewith).

18. After the parties agreed on the body/text of the Stipulated Judgment, which took many weeks, Kaotica's counsel at the time—Mr. Mark J. Rosenberg of the Tarter Krinsky firm in New York—emailed me on October 13, 2021 a revised version of the agreement terms, and he attached 8 images for the representation of the Kaotica product at issue. Mr. Rosenberg did not include any image(s) corresponding to the Iconic accused product.

19. Attached herewith as **Exhibit 10** is a true and correct copy of Mr. Rosenberg's October 13, 2021 email. I do not remember having a concern, however, because the scope of the agreement was limited by its terms to the Comet Version 1 design. I was not aware, however, that by mid-October 2021, Iconic had posted an image of the Comet Version 2 design on its website.

20. Mr. Rosenberg sent me another confirming email on October 26, 2021, but this time he attached only the body/text of the agreement, without any exhibits or images. Attached herewith as **Exhibit 11** is a true and correct copy of Mr. Rosenberg's October 26, 2021 email. After I confirmed the final version of the agreement, Mr. Rosenberg filed the Stipulated Judgment with two exhibits, as it now appears as ECF No. 43.

21. Regrettably and with sincere apologies to the Court for my inattention, I did not recognize the mistake until trial in the related case. My inattention to the mistake was, in part, because: (a) Kaotica's counsel assembled and filed the Stipulated Judgment; (b) I never received from Kaotica the image of Exhibit 2 before Kaotica filed the Stipulated Judgment; (c) the focus of the parties' discussions for many weeks in September-October 2021 was exclusively on finalizing the written terms of the Stipulated Judgment, which specifies in Paragraph 4 that the "Accused Products" are only those "Kaotica has alleged" infringe the asserted rights, as limited to the Version 1 product identified in the Complaint (*see* ECF No. 43 at 3) and preliminary injunction motion (*see* ECF No. 23-1 at 7, 15-17 and 20; ECF No. 23-2 at 11-14 and 16-19); (d) I assumed that any image of the

accused product attached as Exhibit 2 would match one of the images of the Version 1 product which Kaotica filed with the Complaint and preliminary injunction motion; and (e) my attention in the related case was on the differences between the actual, three-dimensional Version 1 and Version 2 product designs, rather than the scope of the Stipulated Judgment which expressly was limited to the Version 1 design.

22.     Since the 2024 trial in the related case, I have attempted to speak with Mr. Rosenberg to discuss Exhibit 2 to the Stipulated Judgment, but Mr. Rosenberg never responded to several inquiries.  I learned that Mr. Rosenberg moved to a new position and is no longer with the Tarter Krinsky firm.

23.     During the same time frame in mid-2021, Iconic also created a "Comet Pro" redesign with a distinctive square-shaped pop filter.  Attached herewith as **Exhibit 12** is a true and correct image of the Comet Pro redesign.  Unfortunately, because of supply and sourcing difficulties and delays, Iconic was not able to transition completely to the Comet Pro design in time for January 1, 2022, which could have mooted any dispute in this action concerning trade dress infringement.

24.     Before trial in the related case, the parties conferred about another mistake in Exhibit 1 of the Stipulated Judgment, which shows corrupted images for the Kaotica product.  *See* ECF No. 43 at 8-15.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 1st day of May 2025 at San Diego, California.

/s/ Stephen M. Lobbin

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin

**KILPATRICK TOWNSEND & STOCKTON LLP**

Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@ktslaw.com
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Attorney for Plaintiff
KAOTICA IP CORP.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA IP CORP., a Canadian corporation,

Plaintiff,

v.

ICONIC MARS CORPORATION, a California corporation, et al.

Defendant.

Case No. 3:21-cv-00433-CAB-DEB

**KAOTICA IP CORP.'S OPPOSITION TO MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT**

Hearing Date: May 16, 2025

Honorable Cathy Ann Bencivengo

## I. INTRODUCTION

Almost three and a half years after this Court entered the Stipulated Judgment, Iconic attempts to correct a purported "mistake" that would have been evident from even a cursory review of the draft before filing. This "mistake," however, is not an "oversight or omission" of the Court. Fed. R. Civ. P. 60(a). Instead, mistakes of the parties must be brought to the Court's attention within one year of the Stipulated Judgement. Fed. R. Civ. P. 60(b)(1); 60(c). Iconic's motion is far too late. This is sufficient reason, alone, to deny Iconic's motion.

Separately supporting denial is that Iconic did not make any "mistake," but rather simply failed to exercise even a modicum of diligence. Counsel for Iconic, Stephen Lobbin, signed the Stipulated Judgment on behalf of Iconic, attesting to this Court the accuracy of the statements therein, and contractually bound his client to its terms without reviewing the key definitional exhibit to the agreement. Lobbin and Iconic should have recognized this purported "mistake" prior to filing the Stipulated Judgment, or at the very least when Lobbin and Iconic filed the second lawsuit between the parties based on that Stipulated Judgment. Instead, after weaponizing the Stipulated Judgment against Kaotica unsuccessfully, Iconic seeks a do-over to fix its damning admission on the stand at trial. Iconic's and Lobbin's carelessness, however, is not a basis for relief under Rule 60.

Even setting aside Iconic's procedural deficiencies, which are enough to doom Iconic's motion, Iconic also fails to substantively show that the images in the Stipulated Judgment are incorrect. Most critically, Iconic's revisionist history is contradicted by documentary evidence confirming the pop filter font color is not dispositive of which version of the Comet an image depicts. Iconic only relies on evidence tied exclusively to the ***pop filter***—not the foam body of the Comet. As Mr. Olaleye confirmed at his deposition, the same pop filters can be used with either the Comet Version 1 or Comet Version 2. Mr. Olaleye's uncorroborated declaration yet again contradicts sworn interrogatory responses from the Second Litigation and

cannot save Iconic here. Therefore, Iconic's evidence discussing the pop filters sheds no light on which foam body—and thus which version of the Comet product—was included in Exhibit 2 to the Stipulated Judgment. Without any convincing evidence, Iconic's motion should be denied.

## II.    ARGUMENT

### A.    Iconic's motion is improper under Rule 60(a) because the Court made no error or mistake in entering the Stipulated Judgment.

Iconic improperly relies on Rule 60(a) to correct an error made by Iconic and Lobbin. Under Rule 60(a), a Court may only correct a judgment based on the Court's error. "Rule 60(a) is not intended as a remedy for errors made by a party." *Gerstein v. C.I.A.*, No. C-06-4643 MMC, 2010 WL 669743, at *10 (N.D. Cal. Feb. 23, 2010) (contrasting purpose of Rule 60(a) to correct error by the court and Rule 60(b) to correct error made by a party). Courts have denied relief under Rule 60(a) when the Court accurately entered orders based on joint motions by parties. *See, e.g.*, *id.* (denying motion to set aside court's dismissal based on a stipulation of the parties because the court's order was consistent with the stipulation); *D.C. v. County of San Diego*, No. 18-CV-13-SBC, 2023 WL 8439559, at *7 (S.D. Cal. Dec. 5, 2023) (denying joint motion and stipulation to correct because there was no "blunder in execution" in the entry of dismissal "grant[ing] the precise relief the Parties sought").

The result should be the same here. The Court faithfully entered the Stipulated Judgment submitted by the parties. *Compare* Dkt. 42, *with* Dkt. 43. The only error identified by Iconic is that the *parties* allegedly attached the incorrect images at Exhibit 2 of the proposed Stipulated Judgment. Dkt. 66 at 1, 4–5 (detailing the parties' actions that led to the alleged mistake). Iconic cannot seek to cure any such alleged mistake made by the parties under Rule 60(a), and its motion should be denied.

### B. Even if construed under Rule 60(b)(1), Iconic's motion is untimely and fails.

Even if Iconic's motion were construed to be a motion to correct a mistake by a party under Rule 60(b)(1)[1], Iconic's motion must be denied because it was brought far beyond the one-year deadline. Motions under Rule 60(b) "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). The Stipulated Judgment was entered on October 21, 2021, yet Iconic waited over three and a half years to bring the present motion. This Court lacks jurisdiction over a motion under Rule 60(b)(1) outside the one-year time limit. *See Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989) (holding that the district court lacked jurisdiction to consider Rule 60(b)(2) motion filed more than one year after entry of judgment); *Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 645 (9th Cir. 1984) (holding that court lacked jurisdiction to grant relief under Rule 60(b)(1) because appellees did not file their motion within one year of entry of judgment). Iconic's motion fails on that basis alone. *See also, e.g.*, *In re Roark*, No. 22-CV-1962 TWR (WVG), 2023 WL 11987552, at *8 n.4 (S.D. Cal. Aug. 22, 2023) (finding no error in denying motion under Rule 60(b)(2) and (3) given the judgment "occurred more than a year before" the motion was filed), *aff'd*, No. 23-55750, 2024 WL 4891013 (9th Cir. Nov. 26, 2024), *cert. denied sub nom. Roark v. San Diego Cnty. Credit Union*, No. 24-6867, 2025 WL 1287114 (U.S. May 5, 2025); *Sikousis Legacy Inc. v. B-Gas Ltd.*, No. 22-cv-03273-CRB, 2024 WL

---

[1] Iconic's motion only alleges "mistake" and not any other basis under Rule 60(b). Nor can Iconic rely on Rule 60(b)(2)–(6) as none of those are applicable here. Iconic has not alleged there is any newly discovered evidence—merely Iconic's and Lobbin's failure to look at Exhibit 2. Fed. R. Civ. P. 60(b)(2). Iconic has also not alleged fraud, a void judgment, or that it satisfied or discharged judgment. Fed. R. Civ. P. 60(b)(3)–(5). And Iconic cannot demonstrate under Rule 60(b)(6) that "extraordinary circumstances . . . prevented [Iconic]" from taking timely action to prevent or correct an erroneous judgment. *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (citation omitted). Simple diligence could have alerted Lobbin and Iconic to this issue.

5048914, at *5 (N.D. Cal. July 29, 2024) (finding that "Plaintiffs have missed their window to bring a Rule 60(b)(2) motion" since "it has been over a year since the two [challenged] orders").

Nor has Iconic made "a showing of exceptional circumstance" to warrant remedy under Rule 60(b). *Tapia v. Cisneros*, No. 22cv283-LL-NLS, 2024 WL 1973483, at *2 (S.D. Cal. May 2, 2024) (citing *Engleson v. Burlington N.R.R. Co.*, 972 F.2d 1038, 1044 (9th Cir. 1994)); *Fed. Trade Comm'n v. John Beck Amazing Profits, LLC*, No. CV 9-4719-MWF (CWx), 2021 WL 4313101, at *1 (C.D. Cal. Aug. 19, 2021) ("Reconsideration for any of the reasons set forth in Rule 60(b) is an extraordinary remedy that works against the interest of finality and should be applied only in exceptional circumstances." (citation omitted)).

Iconic's delay is simply unjustifiable. Iconic's motion and the supporting Lobbin Declaration focuses on purported "inattention to the mistake." Dkt. 66 at 4; Dkt. 66-2, ¶¶ 17–21. It strains credulity, however, that neither Iconic nor Lobbin requested or reviewed a legally binding judgment against Iconic in full. Indeed, Lobbin signed the Stipulated Judgment on behalf of Iconic (Dkt. 42), attesting that "to the best of [his] knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances*** . . . [that] the factual contentions have evidentiary support." Fed. R. Civ. P. 11 (emphasis added).

Yet now Lobbin claims that he never received images of the Comet Version 1 to be included in the Stipulated Judgment—the undisputed subject matter of the Stipulated Judgment and, by his own admission, a focus of the negotiations—but was not concerned about that fact. Dkt. 66-2, ¶¶ 17, 19, 21. Exhibit 2 to the Stipulated Judgment ***defined*** the Accused Products using the images in Exhibit Dkt. 43, ¶ 4 ("specifically its Iconic Mars Comet shown in Exhibit 2 hereto (individually and collectively the 'Accused Products')"). Iconic's obligations are inextricably tied to the definition of the Accused Products. *Id.* (enjoining activity related to the Accused Products); ¶¶ 9–11 (contingent on "products [that] are more than colorably

different than the Accused Products"); ¶ 12 (defining sell-off period for the Accused Products). It is unfathomable that Mr. Lobbin can simultaneously claim "the focus of the parties/ discussions for many weeks in September-October 2021 was exclusively on finalizing the written terms of the Stipulated Judgment," including how the "Accused Products" are defined, while claiming to have not reviewed the images that actually defined the Accused Products in the Stipulated Judgment. Dkt. 66-2, ¶ 21. This is not a reasonable inquiry required under Rule 11.

Further, as part of its motion, Iconic and Lobbin conspicuously omit the actual attachments and images they received during negotiations and do not appear to provide a full history of negotiations with Kaotica over the Stipulated Judgment, including what information Iconic or Lobbin sent to Kaotica. *See, e.g.*, Dkt. 66-13 (referencing but not including attachments to email from counsel for Kaotica); Dkt. 66-12 (referencing but not showing Iconic's revisions and images of the Kaotica trade dress). Therefore, it is unclear whether additional evidence exists that shows Iconic and Lobbin should have been on notice about the source of the image in Exhibit 2.

Moreover, on January 23, 2022, mere months after the Court entered the Stipulated Judgment, Iconic filed a lawsuit asserting breach of the Stipulated Judgment. *Iconic Mars Corp. v. Kaotica Corp.*, No. 3:22-cv-00092-CAB-DEB, Dkt. 1 (S.D. Cal. Jan. 23, 2022) (the "Second Litigation"). As Iconic and Lobbin attested in that complaint, "In the Stipulated Judgment, the parties ***specifically delineated*** the Accused Products . . . ." *Id.*, ¶ 7 (emphasis added). This "specific delineation" is the images at Exhibit 2. Again, Iconic and Lobbin have no excuse for not reviewing and identifying any purported mistake in Exhibit 2 when filing the Second Lawsuit. Nor does Iconic or Lobbin have any excuse for failing to recognize this issue throughout that lawsuit, nor for delaying its motion almost a full year after this issue was raised in the June 2024 trial in the Second Lawsuit.

Had Iconic and Lobbin performed the normal amount of diligence, they could have sought relief far earlier. *AmTrust Bank v. Lewis*, 687 F. App'x 667, 670 (9th Cir. 2017) ("Because [the plaintiff] could have made his arguments to the district court before entry of final judgment, he did not establish 'mistake, inadvertence, surprise, or excusable neglect' necessary for relief under Rule 60(b)(1) . . . ."). Iconic's motion should be denied because it was not a "mistake," but rather, Iconic's and Lobbin's pattern of carelessness and lack of diligence. "[N]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997) (citation omitted).

**C. Iconic has not identified strongly convincing evidence that the images of the Comet Version 1 are incorrect in the Stipulated Judgment.**

Iconic's self-serving, demonstrably false declaration and single generic photography invoice fall far short of the "strongly convincing" evidence necessary "to induce the court to reverse its prior decision," requiring its motion to be denied. *DeYoung v. On Habeas Corpus*, No. 1:12-cv-02042-JLT, 2013 WL 1876120, at *2 (E.D. Cal. May 3, 2013). Not only are Iconic's shifting factual averments unsupported, but they are contradicted by documentary evidence.

Iconic argues that the Stipulated Judgment must be incorrect because the font color on the pop filter of the Comet product is dispositive of which version it is—that is, supposedly because the pop filter on the Comet featured in the Stipulated Judgment has white font used in the lettering of the brand name, it must necessarily be the Comet Version 2. Dkt. 66 at 3 ("Only the Version 2 product displayed the white logo/lettering; the Version 1 product never did."); Dkt. 66-1, ¶¶ 8, 12–13, 15; Dkt. 66-2, ¶¶ 2, 8, 12, 16. However, this is demonstrably false. Kaotica is and has been in possession of a Comet Version 1 that features a pop filter with white font, shown below as previously photographed and filed in connection with Kaotica's

summary judgment briefing in the Second Litigation. *Second Litigation*, Dkt. 54-2 at 2–3.

| **Kaotica's Old Comet (*Second Lit.*, Dkt. 52-2)**[2] | **Stipulated Judgment (Dkt. 66-8)** | **Iconic's Gray Font (Dkt. 66-9)** |
|---|---|---|
| | | |

Iconic's argument that font color on the pop filter is dispositive is also belied by its own social media, which shows Iconic used white font on the pop filters with the Comet Version 1. Despite Iconic claiming that "[o]nly Version 1 existed at the time of the Complaint in early 2021" (Mot. at 3; Dkt. 66-1, ¶ 2), Iconic posted the below image of the Comet Version 1 with what appears to be **white** font on the pop filter to its Facebook page on January 25, 2021—six weeks ***before*** the Complaint in the Prior Litigation was filed. Machleidt Decl. Ex. 1; *see* Dkt. 1.

Because various examples of the Comet Version 1 appear to use the pop filter with white font, Iconic's statement that the color of the product name is dispositive of version number is false and cannot support revision of the Stipulated Judgment.

In the same vein, Iconic's surrounding narrative as to how and when it created the Comet Version 2 imagery "as early as July 2021" (Dkt. 66-1, ¶ 6) is

---

[2] The declarant who captured the images in Docket 54-2 (Second Litigation) submitted with her declaration a statement confirming that the Comet Version 1 "has a smooth inner chamber," which undisputedly indicates the Comet Version 1 product. Dkt. 54-2, ¶ 4. This confirms there is no confusion between the product versions in Kaotica's possession.

uncorroborated and likewise does not supply credible evidence that the Stipulated Judgment images are incorrect. Not only is it plain from the above images that the white lettering existed before any of the lawsuits between Kaotica and Iconic—and certainly before July 2021 when Iconic alleges it had those images manufactured—but the singular invoice Iconic argues shows the creation of the white lettering does nothing of the sort. The invoice shows only an alleged invoice for "Product Photography" and a "transparent background." Dkt. 66-4. There is no evidence besides Mr. Olaleye's say so showing what product this invoice is for or the images created. The vague invoice standing alone without any evidence of what images actually were created is not probative of the issue at hand whatsoever.

Moreover, the color text on the pop filter provides no insight into whether the Comet Version 1 or 2 foam body was used. As Mr. Olaleye testified in his deposition in the Second Litigation, the pop filters are "interchangeable between the version 1 and version 2 Comet." Machleidt Decl. Ex. 2 at 174:20–23. None of Iconic's evidence confirms whether the foam body of the Comet Version 1 or Version 2 was used for any of the purported images.

Lastly, Iconic and Lobbin yet again attempt to advance the argument that the Comet Version 2 "is more oblong and angular at the base" (Dkt. 66-1, ¶ 8) despite giving contradicting statements in sworn interrogatory responses and at Iconic's deposition in the second lawsuit. Machleidt Decl. Ex. 3 at 2–3, Ex. 2 at 185:6–13, & Ex. 4 at 257:12–259:7. Appealing to a shifting narrative over time that morphs to suit Iconic's present goals is also far from the type of "strongly convincing" evidence Courts require to provide relief three and a half years after the Stipulated Judgment was entered.

## III. CONCLUSION

For all the above stated reasons, Iconic's motion should be denied.

DATED: May 14, 2025

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Dario A. Machleidt* ___________

Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@ktslaw.com
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Attorney for Plaintiff
KAOTICA IP CORP.

KILPATRICK TOWNSEND & STOCKTON LLP
Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@ktslaw.com
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Attorney for Plaintiff
KAOTICA IP CORP.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KAOTICA IP CORP., a Canadian corporation,

Plaintiff,

v.

ICONIC MARS CORPORATION, a California corporation, et al.

Defendant.

Case No. 3:21-cv-00433-CAB-DEB

**DECLARATION OF DARIO A. MACHLEIDT IN SUPPORT OF KAOTICA'S OPPOSITION TO MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT**

Hearing Date: May 16, 2025

Honorable Cathy Ann Bencivengo

MACHLEIDT DECLARATION ISO KAOTICA'S OPPOSITION TO MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT
CASE NO. 3:21-cv-00433-CAB-DEB

- 1 -

Appx460

I, Dario A. Machleidt, declare:

1.      I am an attorney duly licensed to practice law in the State of Washington and admitted to this Court. I am an attorney at the law firm of Kilpatrick Townsend & Stockton LLP, counsel for Defendant Kaotica IP Corp. ("Kaotica") in the above-referenced action.

2.      I have personal knowledge of the facts stated in this declaration and, if called upon to do so, I could and would competently testify hereto.

3.      Attached hereto as Exhibit 1 is a true and correct copy of a Page Vault capture of the website https://www.facebook.com/iconicmarsinc/photos/2846504922231203 taken on October 6, 2022.

4.      Attached hereto as Exhibit 2 is a true and correct copy of excerpts of the Rule 30(b)(6) deposition of Iconic Mars Corporation and the Rule 30(b)(1) deposition of Mr. James Olaleye taken on July 13, 2023 annotated to highlight portions cited in Kaotica's opposition.

5.      Attached hereto as Exhibit 3 is a true and correct copy of excerpts of Iconic Mars Corporation's verified Responses to Kaotica's Second Set of Interrogatories annotated to highlight portions cited in Kaotica's opposition.

6.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts of the trial transcript from *Iconic Mars Corporation v. Kaotica Corporation*, No. 22-cv-0092-CAB-DEB annotated to highlight portions cited in Kaotica's opposition.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: May 14, 2025                    */s/ Dario A. Machleidt*
                                        Dario A. Machleidt

MACHLEIDT DECLARATION ISO KAOTICA'S OPPOSITION TO MOTION TO CORRECT MISTAKE IN STIPULATED JUDGMENT
CASE NO. 3:21-cv-00433-CAB-DEB

- 1 -

Appx461

# EXHIBIT 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ICONIC MARS CORPORATION, )
a California corporation, )
)
Plaintiff, )
)
vs. ) Case No.
) 3:22-cv-00092
KAOTICA CORPORATION, a ) CAB-DEB
Canadian corporation, )
)
Defendant. )
____________________________________)
)
And Related Counterclaims. )
____________________________________)

***CONFIDENTIAL***

30(B)(6) VIDEO DEPOSITION OF ICONIC MARS CORPORATION AND OLUSEYI OLALEYE IN HIS INDIVIDUAL CAPACITY
JULY 13, 2023
SAN DIEGO, CALIFORNIA

Job No. 10123539

Pages 1 - 274

Reported by

Cynthia J. Vega, RMR, RDR, CSR 6640, CCRR 95

Confidential
Oluseyi Olaleye
Iconic Mars Corp. vs. Kaotica Corp.

APPEARANCES

For the Plaintiff:

SML AVVOCATI PC
By: Shawn Lyons, Esq.
Joshua N. Osborn, Esq.
888 Prospect Street, Suite 200
La Jolla, California 92037
(949) 636-1391
arl@smlavvocati.com
jno@smlavvocati.com

For the Defendant:

KILPATRICK TOWNSEND & STOCKTON LLP
By: Kathleen R. Geyer, Esq.
Dario A. Machleidt, Esq.
1420 Fifth Avenue
Seattle, Washington 98101
(206) 224-2857
kgeyer@kilpatricktownsend.com
dmachleidt@kilpatricktownsend.com

The Videographer:

Matt Miller

* * * * *

Page 2
www.aptusCR.com
Appx464

The video deposition of Oluseyi Olaleye, a Witness herein, taken on behalf of Defendant, on Thursday, July 13, 2023, before Cynthia J. Vega, CSR 6640, beginning at the hour of 9:37 a.m., at 12255 El Camino Real, Suite 250, in the City of San Diego, County of San Diego, State of California.

INDEX

WITNESS

Oluseyi Olaleye

| EXAMINATION | PAGE |
|---|---|
| By Ms. Geyer | 8 |
| By Mr. Osborn | 259 |
| By Ms. Geyer | 268 |

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Defendant Kaotica Corporation's Amended Notice of Deposition of Iconic Mars Corporation Pursuant to Rule 30(b)(6) | 9 |
| Exhibit 2 | Responses to Defendant Kaotica Corporation's First Requests for Admission | 12 |
| Exhibit 3 | Responses to Kaotica's Interrogatories | 20 |
| Exhibit 4 | Video, Kaotica0000438 | 25 |
| Exhibit 5 | Video, Kaotica0000437 | 26 |
| Exhibit 6 | Responses to Defendant Kaotica Corporation's Third Set of Interrogatories | 31 |

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 7 | Financial records spreadsheet | 39 |
| Exhibit 8 | Spreadsheet, Bates IMC000512 | 53 |
| Exhibit 9 | Sales Magnitude invoice, January 21, 2022 | 57 |
| Exhibit 10 | Order details Shenzhen Packgift Technology Co., Ltd. | 76 |
| Exhibit 11 | Chase for Business transaction, July 11, 2022 | 85 |
| Exhibit 12 | Chase for Business transaction, May 11, 2022 | 85 |
| Exhibit 13 | Chase for Business transaction, February 27, 2022 | 85 |
| Exhibit 14 | Responses to Defendant Kaotica Corporation's Second Set of Interrogatories | 96 |
| Exhibit 15 | Facebook page printout | 104 |
| Exhibit 16 | Email string, November 1, 2021 | 112 |
| Exhibit 17 | Web page search screen shot for Kaotica eyeball reviews | 163 |
| Exhibit 18 | Web page search screen shot for eyeball microphone | 165 |
| Exhibit 19 | Web page search screen shot for Kaotica eyeball microphone | 168 |

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 20 | DCMT Proforma Invoice, June 17, 2021 | 171 |
| Exhibit 21 | Proforma Invoice, September 29, 2021 | 175 |
| Exhibit 22 | Spreadsheet | 187 |
| Exhibit 23 | Amended Stipulated Judgment and Permanent Injunction | 199 |
| Exhibit 24 | Complaint | 214 |
| Exhibit 25 | Letter to Shopify from Tim Billick, November 15, 2021 | 218 |
| Exhibit 26 | Printout from Iconic Mars' eBay page | 239 |
| | (Exhibits 4, 5, and 8 retained by counsel.) | |

| QUESTION INSTRUCTED NOT TO ANSWER | PAGE | LINE |
|---|---|---|
| Looking at Exhibit 16, at the bottom of the page Mr. Lobbin's email says, quote, "We have assurances from the client that these issues are in the process of being fixed and will be by tomorrow." What assurances did you give Mr. Lobbin about fixing these issues? | 120 | 10 |

SAN DIEGO, CALIFORNIA

THURSDAY, JULY 13, 2023, 9:37 A.M.

THE VIDEOGRAPHER: Good morning, everyone. We are now on the record. Today's date is July 13, 2023, and the time on record is 9:37 a.m.

This is the deposition of Oluseyi Olaleye being taken in the matter of Iconic Mars Corporation versus Kaotica Corporation, on behalf of the defendant.

The witness is appearing at 12255 El Camino Real, Suite 250, San Diego, California 92130.

My name is Matt Miller appearing for Aptus Court Reporting located at 401 West A Street, Suite 1680, San Diego, California 92101.

I am the official videographer. This recording is the only authorized video recording of this deposition. The audio and video recording will take place at all times unless all counsel agree to go off the record.

Will counsel please identify yourselves and state whom you represent beginning with the noticing attorney.

MS. GEYER: Kathleen Geyer on behalf of defendant Kaotica Corporation. And with me is Dario

Machleidt.

MR. LYONS: Shawn Lyons on behalf of SML Avvocati on behalf of Iconic Mars. With me is Josh Osborn.

THE VIDEOGRAPHER: Thank you.

The court reporter today is Cindy Vega and she may now swear in or affirm the deponent.

OLUSEYI OLALEYE,

Witness herein, being first duly sworn, testifies as follows:

EXAMINATION

BY MS. GEYER:

**Q. Good morning.**

A. Good morning.

**Q. Can you please state your full name for the record.**

A. Oluseyi Olaleye.

**Q. Have you ever had your deposition taken before?**

A. Have I ever did a deposition before? This is my first time.

**Q. So you understand that you're under oath today and you must answer my questions truthfully?**

**Q. So foam on this invoice --**

A. Yeah. This would be version 2 probably.

**Q. Foam on this invoice is referring to the molded foam in the shape of the Comet product; correct?**

A. Yes. Yes.

**Q. You said this invoice is for the version 2.0 Comet; correct?**

A. I think so.

**Q. Besides the date, is there anything that can tell you whether this is the version 1 or version 2 Comet?**

A. I would never order version 1 when we are going through all these problems which I know for sure I was already sticking with version 2. So that's version 2.

**Q. So as of June 2021, Iconic Mars was no longer ordering version 1 Comet?**

A. Yes.

**Q. Are the pop filters manufactured by Shenzhen Dingchuang interchangeable between the version 1 and version 2 Comet?**

A. Yeah.

MS. GEYER: I'm going to mark as Exhibit 21 a document with Bates numbers IMC000305.

A. They're very similar, but it's -- the version 2 has -- maybe if you put it on a scale you might notice a little higher density. That's about it. But the inner cavity definitely has ridges in there.

**Q. So the differences between the version 1 Comet and the version 2 Comet is the higher density and the ridging in the inner cavity; is that correct?**

A. Yes.

**Q. Are there any other differences between the version 1 and version 2 Comet?**

A. No.

**Q. When did Iconic Mars receive the first shipment of the version 2 Comet?**

A. It is very hard because I don't know exact time because I started getting the shipment early 2021 because, you know, they could ship some in small quantity to me and then -- you know, before we place larger quantities. So we started getting it way ahead, early 2021. I think either in the beginning of second quarter or first quarter. I can't remember the specific date, but I've been having the version for quite a while because I knew what was coming, so I was preparing ahead.

# EXHIBIT 3

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel: 949.636.1391

Attorney for Plaintiff and Counterdefendant
**Iconic Mars, Inc.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

ICONIC MARS CORPORATION,
Plaintiff,

v.

KAOTICA CORPORATION.,
Defendant.

AND RELATED COUNTERCLAIMS

Case No. 5:20-cv-00728-GW-GJS

**RESPONSES TO DEFENDANT KAOTICA CORPORATION'S SECOND SET OF INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 33, Plaintiff responds as follows to Defendant's First set of Interrogatories.

GENERAL OBJECTIONS

Plaintiff objects to each Interrogatory and Request for Production to the extent that it fails to comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of California.

Plaintiff objects to each Interrogatory and Request for Production to the

extent that they purport to impose on Plaintiff an obligation to provide information for or on behalf of any person or entity other than the Plaintiff and/or purports to seek information that is within the possession, custody, or control of Plaintiff and Plaintiff expressly declines to do so.

Plaintiff objects to each Interrogatory and Request for Production on the grounds that it is compound, overbroad, duplicative, burdensome, and/or harassing.

Plaintiff objects to each Interrogatory and Request for Production to the extent that it seeks confidential, non-public information.

Plaintiff objects to the definition of "YOU" and "YOUR" as overbroad, unduly burdensome, and reasonably calculated to lead to admissible evidence. Plaintiff is unable to make representation on behalf of "employees, agents, officers, directors, servants, representatives, companies…." in their individual capacities. Moreover, Plaintiff is unable to search exhaustively for all information possessed by these third parties whom Plaintiff does not have control or authority over. All responses herein are based on a reasonably diligent inquiry within the four corners of Plaintiff's facilities.

**Responses**

**INTERROGATORY NO. 8.**

Exclusive of the Inner Cavity, describe in detail all differences between the aesthetic design of the Version 1.0 Comet and the Version 2.0 Comet, including differences in the designs or product configurations thereof, as shown in product advertisements, product packaging, and in use.

**Response:** Plaintiff objects to the request as vague, overly broad, and unduly burdensome. Plaintiff also objects to the extent responsive information is protected by the attorney-client or work-product privileges, is irrelevant or not proportional to the needs of the case, or is a legal conclusion or expert opinion. Subject to and without waiving the foregoing objections, Plaintiff responds that

the primary differences between the aesthetic design of the Version 1.0 Comet and the Version 2.0 Comet is the inner cavity, which is commonly viewed by the consumer during ordinary use, as the user must install a microphone without the pop filter installed.

**INTERROGATORY NO. 9.**

Exclusive of the Inner Cavity, describe in detail all differences between the aesthetic design of the Version 2.0 Comet and the Kaotica Eyeball Product, including differences in the designs or product configurations thereof, as shown in product advertisements, product packaging, and in use.

**Response:** Plaintiff objects to the request as vague, overly broad, and unduly burdensome.  Plaintiff also objects to the extent responsive information is protected by the attorney-client or work-product privileges, is irrelevant or not proportional to the needs of the case, or is a legal conclusion or expert opinion. Subject to and without waiving the foregoing objections, Plaintiff responds that an ordinary consumer would not confuse the Comet 2.0 for the Kaotica Eyeball trademark or trade dress, as the flat thick edges of the larger opening of the Comet 2.0 differ from the thin spherical lip of the opening of the Kaotica Eyeball and its registered design. The sharp edge on the bottom of the Comet also differs from the protected spherical design. And the smooth inner cavity claimed by the registered mark is missing from the Comet 2.0.  Furthermore, the Comet 2.0 is not completely spherical, and has distinctive flat surfaces and angles on its surface.

**INTERROGATORY NO. 10.**

Describe in detail the basis for your contention that the Kaotica Trade Dress is functional, including identifying every reason that you contend the Kaotica Trade Dress is functional.

**Response:** Plaintiff objects to the request as vague, overly broad, and unduly burdensome.  Plaintiff also objects to the extent responsive information is

## VERIFICATION

Pursuant to Fed. R. Civ. P. 33(b)(5), on behalf of Plaintiff, I hereby verify that, based on a reasonable inquiry, the foregoing answers are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called to testify, I could and would competently do so.

# EXHIBIT 4

08:24:30

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ICONIC MARS CORPORATION,

Plaintiff,

v.

KAOTICA CORPORATION,

Defendant.

No.22-cv-0092-CAB-DEB

June 10, 2024

San Diego, California

08:24:30

TRANSCRIPT OF JURY TRIAL - DAY 1
(MORNING SESSION)
BEFORE THE HONORABLE CATHY ANN BENCIVENGO
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: SML Avvocati, P.C.
By: STEPHEN LOBBIN, ESQ.
JOSHUA OSBORN, ESQ.
ADRIAN LYONS, ESQ.
888 Prospect Street, Suite 200
La Jolla, California 92037

For the Defendant: Kilpatrick
By: DARIO MACHLEIDT, ESQ.
KATHLEEN GEYER, ESQ.
KRISTIN ADAMS, ESQ.
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101

Court Reporter: Juliet Y. Eichenlaub, RPR, CSR
USDC Clerk's Office
333 West Broadway, Room 420
San Diego, California 92101
juliet_eichenlaub@casd.uscourts.gov

Reported by Stenotype, Transcribed by Computer

09:25:10 A. Yes, I'm right there.

Q. Do you see on page 183 -- I'm going to read from lines four through nine. Follow along with me, please.

"Question: I think we got double negatives there so I'm going to try that again. Do you agree with me that the increased density for the Version 2 Comet does not affect the aesthetic design?

"Answer: It doesn't."

Did I read that correctly?

A. Yes, you read that correctly. But if I explain --

ATTORNEY MACHLEIDT: Objection. Move to strike.

ATTORNEY LOBBIN: Objection.

THE WITNESS: -- what density means --

THE COURT: Stop. What is your objection?

09:25:53 ATTORNEY LOBBIN: Objection is it's not impeachment. He didn't give an answer before that's inconsistent to this.

THE COURT: It's a party witness. He can use his deposition for any purpose. It's fine.

And, sir, your answer just at the time was "it doesn't."

Move on, Counsel.

BY ATTORNEY MACHLEIDT:

Q. Ms. Gray, is the system online? Thank you very much.

Let's go back to Exhibit 372. It's the one where you flipped through the pages, and I think we can do this one

09:26:23 quick.

Ms. Gray, if you can put up that exhibit and go to page 17. It's been published.

What we're looking at here, this is an image of the new Comet, correct?

A. Yes.

Q. Ms. Gray, you can take that down.

The only difference -- I apologize. Are you ready? Sometimes we flip through tabs. I want to make sure you weren't reading anything.

A. I'm not reading anything right now.

Q. The only difference between the old Comet and the new Comet is that the new Comet has a higher-density foam and ridges on the inner cavity?

09:27:06 A. There's a lot of difference. I might not go into detail of it, but looking right there, you can see the line in the bottom. The new Comet and the old Comet you can see the larger bottom circle right there, and you can see the clear line. You can see the Version 2 is much more larger, and that's why I increase density because it helps sound isolation. And when you making a new product, you have to improve.

If you don't improve, you're going to lose your value, you're going to lose your customers. And I took that as an opportunity to improve my product and make that product much better. The thicker the density, the better the quality. I

09:27:45 increase the density. I increase the size. I change the color. I improve on the pop filter. I took it as an opportunity.

That's why you create new mold. If you working with a Version 1, you use the same old mold. I did not do that. I created new mold. A new mold means new product. Old mold means old product. So you have to understand the difference.

Q. Do me a favor, go back to that last tab in your binder, please.

Are you looking at your deposition transcript again?

A. Yes.

Q. Please turn to page 185. Let me know when you're there.

A. Yes, I'm right here.

09:29:06 Q. I'm going to read from lines 6 through 13. Please follow along with me. Question --

A. Hold on.

Q. Of course. Are you on page 185?

A. 184. Okay, 185, yes, go ahead. Line six.

Q. Line six.

"Question: So the differences between the Version 1 Comet and the Version 2 Comet is the higher density and the ridging in the inner cavity; is that correct?

"Answer: Yes.

"Question: Are there any other differences between

09:29:37 the Version 1 and Version 2 Comet?

"Answer: No."

Did I read that correctly?

A. Yes, you read that correctly, both visibly when you look and --

ATTORNEY MACHLEIDT: Objection. Move to strike.

THE COURT: That's fine. The answer stands at "yes."

BY ATTORNEY MACHLEIDT:

Q. Yesterday, you talked about Google ads; do you remember that?

A. Yes, I did talk about that.

Q. Are you fairly familiar with what a Google ad is?

A. I use it every day.

Q. Iconic writes the text that is contained in its Google ads, 09:30:12 correct?

A. Yes, we do.

Q. Is it fair to say that you don't know if any of Iconic's end users are professionals?

A. I have different people operating Google ads. I cannot do it all by myself.

Q. I apologize. This is my fault. End users, the people who buy the Comet. So moving away from the Google ads. That's the context of my question. Is that helpful?

A. The end users -- what's wrong with the end users?

Q. My question was: You don't know if any of the Iconic end

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Joshua N. Osborn (SBN 317435)
jno@smlavvocati.com
**SML AVVOCTI P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel: 949.636.1391

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Iconic Mars Corporation.**, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**Kaotica Corporation**, a Canadian corporation,<br><br>Defendant. | Case No. '22CV0092 JO BLM<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF PATENT AND TRADE DRESS, BREACH OF CONTRACT, BUSINESS INTERFERENCE, UNFAIR COMPETITION AND MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

For its Complaint, Plaintiff Iconic Mars Corporation ("IMC") hereby alleges as follows:

## JURISDICTION AND VENUE

1. This is an action including for non-infringement under the patent laws of the United states, 35 U.S.C. § 101, *et. seq.* and trademark laws of the United States, 15 U.S.C. § 1051, *et. seq.*, for a declaratory judgment, and for related claims. This Court has subject matter jurisdiction including under 28 U.S.C. §§ 1331, 1338(a), 1367 and 2201-02.

2. This Court has personal jurisdiction over Defendant because it has committed its unlawful acts alleged herein in California and in this District.

3. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b)-(c) and 1400.

## RELATED CASE

4. Pursuant to CivLR 40.1(f)-(g), this action is related to the prior action *Kaotica IP Corp. v. Iconic Mars Corp. et al.*, Case No. 3:21-cv-00433-CAB-DEB (S.D. Cal.), because the actions involve the same parties and (a) are based on similar claims, (b) involve the same patent, and (c) involve substantially the same facts and the same questions of law.

## PARTIES

5. Plaintiff IMC is a California corporation having its principal place of business in California.

6. Upon information and belief, Defendant Kaotica Corporation ("Kaotica") is a Canadian Corporation with a place of business at 3917-17th Street SW, Calgary, Alberta, Canada T2T 4P3.

## BACKGROUND FACTS

7. To resolve the prior action involving a prior version of IMC's product—a foam microphone attachment—the same parties agreed to (and this Court entered) an "Amended Stipulated Judgment and Permanent Injunction" dated October 28, 2021 and over which this Court retained jurisdiction. Herewith as Exhibit A is a true and correct copy of the Stipulated Judgment.

8. In the Stipulated Judgment, the parties specifically delineated the Accused Products, and specifically excluded potential new/redesigned products which "are more than colorably different."

9. As permitted by the Stipulated Judgment, IMC sold its "Old Comet" Accused Product until the end of December 2021 on its own website, using the third-party service Shopify as a back end service provider (which is stated on

Plaintiff's website "iconicmars.com"). Herewith as Exhibit B is a true and correct copy of the "Terms of Service" for the iconicmars.com website, which discloses Shopify specifically, including as follows: "Our store is hosted on Shopify Inc. They provide us with the online e-commerce platform that allows us to sell our products and services to you."

10. On November 15, 2021, Defendant Kaotica violated the Stipulated Injunction by sending a DMCA cease and desist notice concerning IMC's Old Comet product to both Shopify and Facebook, resulting in a major interruption in IMC's business. Herewith as Exhibit C is a true and correct copy of Kaotica's November 15, 2021 DMCA notice.

11. Kaotica also sent a cease and desist notice to Facebook, which caused Facebook to delete IMC's advertising page. Herewith as Exhibit D is a true and correct copy of the notification from Facebook.

12. Starting on January 1, 2022, IMC began selling a new, redesigned version of its product (the "New Comet"). The redesigned New Comet includes an inner chamber surface pattern of varying diameters, further negating any plausible allegation of infringement of Kaotica's utility patent, U.S. Patent No. 8,737,662. The redesigned look of the New Comet also negates any plausible allegation of infringement of Kaotica's design patent, U.S. Patent No. D733,690, or its previously-alleged "Kaotica Trade Dress." Herewith as Exhibit E is a true and correct copy of images of IMC's New Comet product.

13. Despite obvious non-infringement, on January 4, 2022 Shopify took down IMC's store webpages based on Kaotica's November 15, 2021 DMCA cease and desist notice. Herewith as Exhibit F is a true and correct copy of the notification from Shopify.

14. The same day, IMC filed a counter notification because (a) none of the images or text on its website infringed any Kaotica copyright, (b) the accused infringing images were independently created photos of the New Comet product,

and (c) none of the text at issue in the previous lawsuit was reproduced on IMC's website.

15. On January 6, 2022, Shopify sent an email to IMC which stated: "This email is to inform you that pursuant to section 512(g)(2)(c) of the US Copyright Act, we have received notice from the Complainant, Tim Billick, that they have filed an action seeking a court order to restrain you from engaging in infringing activity relating to the content on your Shopify store, Iconic Mars." Herewith as Exhibit G is a true and correct copy of Shopify's January 6, 2022 email.

16. But there was no such action pending, which Kaotica knew just like it knew none of IMC's images or text infringed any Kaotica copyright. Herewith as Exhibit H is a true and correct copy of PACER case searches made on January 13, 2022.

17. Soon thereafter, Kaotica sent Shopify and eBay further notices alleging infringement of patents and trade dress by IMC's New Comet product, allegations which are implausible and therefore baseless. Herewith as Exhibit I is a true and correct copy of Kaotica's further notice to Shopify. Herewith as Exhibit J is a true and correct copy of emails received from eBay.

18. Tellingly, however, Kaotica's counsel did not even attempt to order a sample of the New Comet product until January 12, 2022 (which order was not received until January 17, 2022). The order was placed after Kaotica alleged infringement; as such, Kaotica failed to complete any reasonable due diligence before interfering with IMC's business. Herewith as Exhibit K is a true and correct copy of a confirmation of Kaotica's January 12, 2022 order.

19. Kaotica also filed similar infringement allegations with Instagram and Facebook, resulting in the permanent "take down" of IMC's Instagram page. Because IMC primarily uses Instagram and Facebook to drive customers to its online store, IMC's entire business has been eviscerated by Kaotica's baseless

allegations of infringement. Herewith as Exhibit L is a true and correct copy of communications to and from Instagram and Facebook.

20. Kaotica's actions have irreversibly damaged my business and irreversibly damaged my ability to attract customers and to sell to those customers. Kaotica's actions have also affected IMC's ability to sell apparel and accessories which have no relation to the New Comet product sold by IMC.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of U.S. Patent 8,737,662)**

21. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

22. Defendant has represented to third parties, including eBay, that Plaintiff's New Comet product infringes Kaotica's U.S. Patent No. 8,737,662 ("the '662 patent"). Herewith as Exhibit M is a true and correct copy of the '662 patent, including relevant portions of the file history.

23. The claims of the '662 patent require "a cylindrical-shaped cavity with a substantially uniform diameter along a longitudinal axis of the second cavity," which is a claim limitation added to overcome a Patent Office rejection based on prior art. As such, the doctrine of equivalents is unavailable.

24. Plaintiff's New Comet product is designed with a cavity having an obviously irregular-patterned inner surface creating an obviously varying cavity diameter. Therefore, because the New Comet clearly has no semblance of a "substantially uniform diameter," it cannot infringe the '662 patent.

25. Had Defendant or its counsel inspected the New Comet product, no allegation of infringement of the '662 patent would have been communicated to third parties such as eBay.

26. By virtue of Defendant's allegations of infringement, an actual case and controversy within the meaning of the Declaratory Judgments Act between the parties concerning the noninfringement of the '662 patent.

27. A judicial declaration of noninfringement is necessary and appropriate to resolve this controversy.

28. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to customer relationships because of Defendant's baseless infringement allegations. Such irreparable injury cannot be remedied adequately unless Defendant is enjoined immediately from making further baseless allegations, and commanded to rectify Plaintiff's status quo ante, including with eBay.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment of Noninfringement of U.S. Patent D733,690)**

29. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

30. Defendant has represented to third parties, including eBay, that Plaintiff's New Comet product infringes Kaotica's U.S. Patent No. D733,690 ("the '690 patent"). Herewith as Exhibit N is a true and correct copy of the '690 patent.

31. The '690 design patent discloses, shows and claims a clearly spherical microphone cover with a large cylindrical-shaped cavity having a uniform inner diameter.

32. When viewed in light of the prior art, which includes basic spherical shapes such as those of the Sennheiser MZW-421 Foam Windscreen for MD421 Microphone ("MZW") which has been sold on Amazon since September 6, 2007, it is clear that the New Comet product and the design claimed in the '690 patent are not similar enough to justify any allegation of infringement. First, rather than being spherical, the New Comet design is obviously irregular in shape and contour, showing distinctive angles and flat surfaces. Second, rather than a smooth cylindrical-shaped cavity, the New Comet design shows an obviously irregular-patterned inner surface creating an obviously varying cavity diameter. Therefore, the New Comet cannot infringe the '690 design patent.

33. Had Defendant or its counsel inspected the New Comet product, no allegation of infringement of the '690 patent would have been communicated to third parties such as eBay.

34. By virtue of Defendant's allegations of infringement, an actual case and controversy within the meaning of the Declaratory Judgments Act between the parties concerning the noninfringement of the '690 patent.

35. A judicial declaration of noninfringement is necessary and appropriate to resolve this controversy.

36. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to customer relationships because of Defendant's baseless infringement allegations. Such irreparable injury cannot be remedied adequately unless Defendant is enjoined immediately from making further baseless allegations, and commanded to rectify Plaintiff's status quo ante, including with eBay.

## THIRD CLAIM FOR RELIEF

**(Declaratory Judgment of Noninfringement of Alleged Kaotica Trade Dress)**

37. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

38. Defendant has represented to third parties, including Instagram and Facebook, that Plaintiff's New Comet product infringes Defendant's asserted trade dress rights in and to its "Kaotica Eyeball" product. The Kaotica Eyeball is a spherical, foam microphone cover with a large cylindrical shaped cavity with a uniform diameter.

39. On information and belief, there is no evidence substantiating that the design of the Kaotica Eyeball product is non-functional or has acquired distinctiveness via secondary meaning.

40. Even if the Kaotica Eyeball could embody a valid trade dress, Plaintiff's New Comet product and the Kaotica Eyeball design could not be confusingly similar. First, rather than being spherical, the New Comet design is

obviously irregular in shape and contour, showing distinctive angles and flat surfaces.  Second, rather than a smooth cylindrical-shaped cavity, the New Comet design shows an obviously irregular-patterned inner surface creating an obviously varying cavity diameter.

41.   Had Defendant or its counsel inspected the New Comet product, no allegation of trade dress infringement would have been communicated to third parties such as Instagram and Facebook.

42.   By virtue of Defendant's allegations of infringement, an actual case and controversy within the meaning of the Declaratory Judgments Act between the parties concerning noninfringement alleged trade dress.

43.   A judicial declaration of noninfringement is necessary and appropriate to resolve this controversy.

44.   Plaintiff also has suffered and continues to suffer irreparable injury, including damage to customer relationships because of Defendant's baseless infringement allegations.  Such irreparable injury cannot be remedied adequately unless Defendant is enjoined immediately from making further baseless allegations, and commanded to rectify Plaintiff's status quo ante, including with Instagram and Facebook.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Contract)**

45.   Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

46.   Plaintiff and Defendant entered into a valid contract via the Stipulated Judgment.

47.   Plaintiff has fully performed its part of the contract.

48.   Defendant, in violation of Paragraph 12 of the Stipulated Judgment, interfered with Plaintiff's right to "sell the Accused Products on Iconic Mars' website" until January 1, 2022.

49. As a direct and proximate result of Defendant's breach, Plaintiff has suffered significant financial losses, including lost sales and harm to its reputation and brand.

29. Plaintiff requests entry of a judgment against Defendant including monetary damages, in addition to any other or alternative relief deemed appropriate, along with an award of interest, attorney fees and costs to the fullest extent allowed by law.

## FIFTH CLAIM FOR RELIEF

**(Intentional Interference With Prospective Economic Advantage)**

50. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

51. Defendant knew of Plaintiff's economic relationships with its customers that probably would have resulted in an economic benefit to Plaintiff.

52. Defendant engaged in wrongful conduct, including stating misrepresentations (a) to Shopify that an action under 17 U.S.C § 512(g)(2)(c) was pending on January 6, 2022, in order to keep IMC's store web page disabled, and (b) to eBay, Instagram and Facebook that the New Comet product infringed patents and trade dress rights.

53. In making these misrepresentations, Defendant intended to disrupt Plaintiff's economic relationships with its customers and prospective customers, and with Shopify, eBay, Facebook and Instagram.

54. As a result, Plaintiff was and is unable to sell its products, and was and is unable to advertise to customers, resulting in a complete loss of sales.

55. Plaintiff's economic relationships with its customers have been disrupted completely, causing catastrophic economic harm to Plaintiff.

56. Defendant's misconduct conduct was a substantial factor in causing the economic harm to Plaintiff.

57. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to customer relationships because of Defendant's interference. Such irreparable injury cannot be remedied adequately unless Defendant is enjoined immediately from further unlawful business interference, and commanded to rectify Plaintiff's status quo ante, including with Shopify, eBay, Instagram and Facebook.

**SIXTH CLAIM FOR RELIEF**

**(Unfair Competition)**

58. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

59. By its acts alleged herein, Defendant has knowingly engaged in unfair acts or practices and unfair methods of competition, including but not limited to making misrepresentations about Plaintiff and its products, and otherwise engaging in deceptive trade practices and unlawful, unfair or fraudulent business acts or practices, in violation of Cal. Bus. & Prof. Code § 17200.

60. These acts include stating misrepresentations (a) to Shopify that an action under 17 U.S.C § 512(g)(2)(c) was pending on January 6, 2022, in order to keep IMC's store web page disabled, and (b) to eBay, Instagram and Facebook that the New Comet product infringed patents and trade dress rights.

61. Defendant's unfair competition has resulted in and continues to result in unjust enrichment, and Defendant has committed its acts of unfair competition willfully and maliciously to injure Plaintiff's business and improve its own.

62. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to customer relationships because of Defendant's unfair competition. Such irreparable injury cannot be remedied adequately unless each Defendant is enjoined immediately from further unfair competition, and commanded to rectify Plaintiff's status quo ante, including with Shopify, eBay, Instagram and Facebook.

**SEVENTH CLAIM FOR RELIEF**

**(Misrepresentation under 17 U.S.C § 512(f))**

63. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

64. By its acts alleged herein, Defendant has knowingly and materially misrepresented that (a) Plaintiff's Shopify webpages infringe Defendant's copyrights, and (b) Defendant filed a court action under § 512(g)(2)(c) on January 6, 2022.

65. Defendant knew or should have known that none of the images or text on Plaintiff's webpage at www.iconicmars.com infringe any copyright of Defendant, and that there was no court action pending on January 6, 2022.

66. As a result of relying on Defendant's misrepresentations, Shopify removed Plaintiff's webpages, which damaged Plaintiff and resulted in lost sales.

67. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to customer relationships because of Defendant's misrepresentations. Such irreparable injury cannot be remedied adequately unless each Defendant is enjoined immediately from further misrepresentations, and commanded to rectify Plaintiff's status quo ante with Shopify.

**PRAYER FOR RELIEF**

Therefore, Plaintiff prays for the following relief:

A. A determination that Plaintiff has not infringed U.S. Patent 8,737,662;

B. A determination that Plaintiff has not infringed U.S. Patent D733,690;

C. A determination that Plaintiff has not infringed any valid trade dress rights of Defendant;

D. A determination that Defendant has intentionally interfered with Plaintiff's prospective economic advantage;

E. A determination that Defendant has engaged in unfair competition in violation of Cal. Bus. & Prof. Code § 17200;

F. A determination that Defendant has misrepresented that Plaintiff's webpages infringed its copyrights under 17 U.S.C § 512(f);

G. An accounting for damages adequate to compensate for Defendant's unlawful actions, intentional interference and/or unfair competition, including Plaintiff's actual damages including lost profits, treble damages, pre-judgment and post-judgment interest, and costs;

H. A determination that this is an exceptional case, and an award of costs, expenses and attorney fees to Plaintiff;

I. Pre-judgment and post-judgment interest on such monetary relief; and

J. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 23, 2022

**SML AVVOCATI P.C.**

By: /s/ Stephen M. Lobbin
Attorneys for Plaintiff

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ICONIC MARS CORPORATION

**(b)** County of Residence of First Listed Plaintiff ____________
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Stephen M. Lobbin, SML Avvocati P.C., 888 Prospect Street, Suite 200, La Jolla CA 92037

## DEFENDANTS

KAOTICA CORPORATION

County of Residence of First Listed Defendant ____________
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

'22CV0092 JO BLM

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☒ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
35 U.S.C. 271

Brief description of cause:
Declaratory judgment for patent non-infringement, breach of contract, business interference, unfair competition and misrepresentation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE Cathy Ann Bencivengo DOCKET NUMBER 3:21-cv-00433-CAB-DEB

DATE: Jan 23, 2022

SIGNATURE OF ATTORNEY OF RECORD: /s/ Stephen M. Lobbin

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

KILPATRICK TOWNSEND & STOCKTON LLP
X. Diego Wu Min (State Bar No. 317488)
dwu@kilpatricktownsend.com
12255 El Camino Real, Suite 250
San Diego, CA 92130
Telephone:(858) 350-6154
Facsimile: (858) 350-6111

Dario A. Machleidt (Admitted *Pro Hac Vice*)
dmachleidt@kilpatricktownsend.com
Kathleen R. Geyer (Admitted *Pro Hac Vice*)
kgeyer@kilpatricktownsend.com
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 224-2857
Facsimile: (206) 374-2199

Attorneys for Defendant
KAOTICA CORPORATION

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

ICONIC MARS CORPORATION, a California corporation

Plaintiff,

v.

KAOTICA CORPORATION, a Canadian corporation

Defendant.

AND RELATED COUNTERCLAIMS

Case No. 3:22-cv-00092-CAB-DEB

**DEFENDANT KAOTICA CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Date: December 8, 2023

Judge: Hon. Cathy Ann Bencivengo

**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT**

**TO THIS HONORABLE COURT AND TO PLAINTIFFS:**

PLEASE TAKE NOTICE that on December 8, 2023 before the Honorable Cathy Ann Bencivengo, United States District Court, Southern District of California, 333 West Broadway, Courtroom 15A, San Diego, California 92101,

Defendant and Counter-claimant Kaotica Corporation ("”Kaotica") hereby moves for Summary Judgment. Per Judge Bencivengo's Chambers Rules, no oral argument will be heard unless separately ordered by the Court. Kaotica, however, respectfully requests that the Court hold oral argument on its motion.

This motion is made pursuant to Dkt. 31, ¶ 21 and Dkt. 48.

Kaotica moves the Court for summary judgment on the following claims and counterclaims:

1. Iconic's claim of misrepresentation;
2. Iconic's claim of intentional interference with prospective economic advantage;
3. Iconic's claim of unfair competition;
4. Iconic's request for declaratory judgment of non-infringement of the Kaotica Trade Dress;
5. Kaotica's counterclaim of infringement of the Kaotica Trade Dress; and
6. Kaotica's counterclaim for breach of contract.

Kaotica's motion is supported by the concurrently filed Memorandum of Points and Authorities, the Declarations of Kathleen Geyer and Arneita F. Gray, the exhibits attached to Ms. Geyer's declaration, by the Court's records herein, and by such other argument and evidence as Kaotica may offer on reply.

DATED: November 3, 2023

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Dario A. Machleidt*
DARIO A. MACHLEIDT

Attorneys for Defendant
Kaotica Corporation

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Joshua N. Osborn (SBN 317435)
jno@smlavvocati.com
Adrian R. Lyons (SBN 346075)
arl@smlavvocati.com
**SML Avvocati P.C.**
888 Prospect Street, Suite 200
La Jolla, California 92037
Tel: 949.636.1391

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**Iconic Mars Corporation.**, a California corporation,

Plaintiff,

v.

**Kaotica Corporation**, a Canadian corporation,

Defendant.

Case No. 3:22-cv-00092-CAB-DEB

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT INCLUDING *DAUBERT* CHALLENGE**

Date: December 8, 2023
Ctrm: 15A

Honorable Cathy Ann Bencivengo

PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARARTELY ORDERED

PLEASE TAKE NOTICE that pursuant Rule 56(a) and this Court's Civil Case Procedures, Plaintiff Iconic Mars Corporation ("IMC") respectfully requests summary judgment in its favor on all key claims and counterclaims in this action, and against Defendant Kaotica Corporation ("Kaotica"). This Motion is based upon this Notice and the Memorandum herein and the pleadings and other papers on file in this action, including the declarations and exhibits filed herewith, and such further

evidence or argument as may be presented at or before the hearing of this Motion, if any.

## Memorandum

In this action, Plaintiff IMC asserts several causes of action based on the contempt and breaches by Defendant Kaotica concerning this Court's October 28, 2021 "Amended Stipulated Judgment and Permanent Injunction," which resolved Kaotica's patent and trade dress infringement allegations in a previous, related case. *See* Doc. No. 1 (Complaint) at 2, ¶ 7, Ex. A (this Court retaining jurisdiction to enforce the judgment). IMC request rulings against Kaotica for the following pending causes of action: (a) Declaratory Judgment of Noninfringement of Alleged Kaotica Trade Dress, (b) Breach of Contract (including Contempt of Court), (c) Intentional Interference With Prospective Economic Advantage, (d) Unfair Competition, and (e) Misrepresentation under 17 U.S.C § 512(f). *See* Doc. No. 1 at 7-11, ¶¶ 37-67; *see also* Doc. No. 50 (stipulated order dismissing declaratory judgment Counts I and II). By its counterclaims, Kaotica asserts (a) Breach of Contract, (b) Infringement of Kaotica's previously-asserted utility patent, U.S. Patent No. 8,737,662 ("the '662 patent"), (c) Infringement of Kaotica's previously-asserted design patent, U.S. Patent No. D733,690 ("the 'D690 patent"), (d) Federal Unfair Competition, (e) Trademark Infringement, and (f) Initial Interest Confusion. *See* Doc. No. 12 at 18-22. Because there is no genuine issue concerning the material facts related to each of these claims and counterclaims, summary judgment in favor of Plaintiff IMC is warranted.

## Background of Undisputed Material Facts

In March 2021, Kaotica sued IMC in this Court for alleged patent and copyright infringement concerning the parties' competitive products, which are relatively simple foam attachments for microphones. To resolve the dispute, the parties agreed to (and this Court entered) an "Amended Stipulated Judgment and Permanent Injunction" dated October 28, 2021 and over which this Court retained

jurisdiction to enforce. *See* Doc. No. 1 at 2, ¶ 7, Ex. A (hereafter the "Stipulated Judgment"). In the Stipulated Judgment, the parties specifically delineated the single Accused Product (which IMC was permitted to continue selling "[p]rior to January 1, 2022"), and specifically ***excluded*** IMC's new/redesigned products which "are more than colorably different" vis-à-vis Kaotica's asserted patents. *See id.* at 2, ¶ 8.

As permitted by the Stipulated Judgment, IMC sold its "Old Comet" Accused Product until the end of December 2021 on its own website (just as before), using the third-party service Shopify as a back-end service provider (just as before, which always has been stated on Plaintiff's website "www.iconicmars.com"). *See id.* at 2-3, ¶ 9, Ex. B ("Our store is hosted on Shopify Inc. They provide us with the online e-commerce platform that allows us to sell our products and services to you."); *see also* Olaleye Decl. ¶ 2.[1] The Shopify platform does not advertise or sell merchants' products, other than allowing the merchant to sell its own products, directly from its own website. *See* Shopify, https://www.shopify.com (last visited Nov. 3, 2023). On November 15, 2021, however, Defendant Kaotica violated the Stipulated Injunction by sending a DMCA cease and desist notice concerning the Old Comet product to both Shopify and Facebook, resulting in a major interruption in IMC's business. *See* Doc. No. 1 at 3, ¶ 10, Ex. C ("We write to you to ensure that Iconic Mars does not utilize your platform to sell its infringing 'Comet' product."). Kaotica also sent a cease and desist notice to Facebook, which caused Facebook to delete IMC's advertising page. *See id.* at 3, ¶ 11, Ex. D ("Your post has been reported for copyright infringement . . . by Kaotica Corporation.). Kaotica's actions clearly breached (and constitute contempt of) the Stipulated Judgment, and interrupted IMC's ability to sell its products online during crucial days of the 2021 Thanksgiving/Christmas holiday selling season. *See* Olaleye Decl. ¶¶ 3-4.

[1] The Declaration of Oluseyi James Olaleye (with Exhibits 1-5) is filed herewith.

By January 1, 2022, IMC had ceased selling any of its Old Comet product, and had begun selling only its new, redesigned, non-infringing "New Comet" product version.  The New Comet includes an inner chamber surface pattern of varying diameters, further negating any plausible allegation of infringement of Kaotica's '662 utility patent.  *See* Olaleye Decl. ¶ 5.  The redesigned look of the New Comet also negates any plausible allegation of infringement of Kaotica's '690 design patent, or its previously-alleged "Kaotica Trade Dress."  *See* Doc. No. 1 at 3, ¶ 12, Ex. E.  Despite obvious non-infringement, on January 4, 2022, Shopify took down IMC's store webpages based on Kaotica's November 15, 2021 DMCA cease and desist notice.  *See id.* at 3, ¶ 13, Ex. F.  The same day, IMC filed a counter notification because (a) none of the images or text on its website infringed any Kaotica copyright, (b) the accused infringing images were independently created photos of the New Comet product, and (c) none of the text at issue in the previous lawsuit was reproduced on IMC's website.  *See id.* at 3-4, ¶ 14; *see also* Olaleye Decl. ¶ 6.

On January 6, 2022, Shopify sent an email to IMC which stated: "This email is to inform you that pursuant to section 512(g)(2)(c) of the U.S. Copyright Act, we have received notice from the Complainant, Tim Billick, that they have filed an action seeking a court order to restrain you from engaging in infringing activity relating to the content on your Shopify store, Iconic Mars." *See* Doc. No. 1 at 4, ¶ 15, Ex. G.  But there was no such action pending, which Kaotica (including its counsel Mr. Billick) knew, just like it knew none of IMC's images or text infringed any Kaotica copyright.  *See id.* at 4, ¶ 16, Ex. H.  Soon thereafter, Kaotica sent Shopify and eBay further notices alleging infringement of Kaotica's patents and alleged trade dress by IMC's New Comet product, allegations which also were implausible and therefore baseless as well.  *See id.* at 4, ¶ 17, Exs. I-J.

Tellingly, Kaotica did not even attempt to order a sample of the New Comet product until several days after its notice, on January 12, 2022 (which order it did not receive until at least January 17, 2022). The order was placed ***after*** Kaotica already had alleged infringement. As such, Kaotica failed to complete any reasonable investigation of the New Comet product, or other due diligence, before intentionally interfering with IMC's business. *See id.* at 4, ¶ 18, Ex. K. Kaotica also filed similar infringement allegations with Instagram and Facebook, resulting in the permanent "take down" of IMC's Instagram page. Because IMC primarily uses Instagram and Facebook to drive customers to its online store, IMC's entire business was eviscerated by Kaotica's baseless allegations of infringement. *See id.* at 4-5, ¶ 19, Ex. L; *see also* Olaleye Decl. ¶ 7.

Despite IMC's efforts to respond immediately to Kaotica's notices to third-party service providers, Kaotica's intentional actions have irreversibly damaged IMC's business and irreversibly damaged its ability to attract customers and sell to those customers. Kaotica's actions have also affected IMC's ability to sell apparel and accessories which have no relation to its New Comet product. *See* Doc. No. 1 at 5, ¶ 20; *see also* Olaleye Decl. ¶ 14. Kaotica's actions prompting "take downs" by IMC's third-party providers like Instagram, Facebook, eBay and Shopify not only violated the terms of the parties' and this Court's Stipulated Judgment (constituting contempt of court and breach of contract), but they also equate to intentional interference with prospective economic advantage, and unfair competition. For example, Kaotica stated misrepresentations (a) to Shopify that an action under 17 U.S.C § 512(g)(2)(c) was pending on January 6, 2022, in order to keep IMC's store web page disabled, and (b) to eBay, Instagram and Facebook that the New Comet product infringed patents and trade dress rights. As a result, IMC was not able to sell its products in its established sales channels via Shopify, Instagram, Facebook and eBay. The harm to IMC continues every day. *See* Olaleye Decl. ¶ 15.

**Only Kaotica, Not IMC, Has Breached The Stipulated Judgment**

A claim for breach of contract requires "(1) the contract, (2) [IMC's] performance, (3) [Kaotica's] breach, and (4) resulting damages to [IMC]." *Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal. App. 4th 221, 228 (2014). Further, a finding of contempt is appropriate where Kaotica "disobeys a specific and definite court order" by failing to take "all the reasonable steps within [its] power to [ensure] compliance." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (citing *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983)) (quotation marks and brackets omitted); *see The Armand Hammer Found. v. Hammer Int'l Found.*, No. 23-1215, at *3-4 (C.D. Cal. Sep. 11, 2023) (elements include that "alleged contemnor (1) 'violated the court order,' (2) 'beyond substantial compliance,' (3) 'not based on a good faith and reasonable interpretation of the order'") (quoting *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009)).

Here, Kaotica demonstrated contempt of, and breached, this Court's Stipulated Judgment (and the parties' agreement) by sending a DMCA cease and desist notice concerning the Old Comet product to both Shopify and Facebook, which shut down IMC's business and particularly its ability to sell the products it was specifically permitted to sell under the Stipulated Judgment. Kaotica knew IMC used Shopify as its back-end, e-commerce platform to sell its products as admitted in the deposition excerpt below.

Q So this is a letter sent by Tim Billick to alicia.denoudan@shopify.com. The date is November 15, 2021.
A Correct.
Q Do you remember -- have you seen this document before?
A Yes.
Q So --
(Simultaneous speakers.)

BY MR. OSBORN:

Q How long before this letter was sent did you know that Iconic Mars was using Shopify?
A ***Six months prior***. I'd say probably, you know, Q1 of 2021.

Ex. 4 at 32:1-11 (emphasis added). Furthermore, as is clear from the wording of Kaotica's letter to Shopify, Kaotica intended for Shopify to remove IMC from its platform on November 15, 2021. The letter specifically emphasized that IMC "shall **only** offer for sale and sell the Accused Products on Iconic Mars' website, which has the web address of www.iconicmars.com," with emphasis explicitly added on "**only**." *See* Doc. No. 1, Ex. C. Kaotica's letter also closes with "we hope that you **will** cease carrying the Comet product as soon as possible." *Id*. It is clear from the context and tone of the letter that Kaotica wanted Shopify to remove Iconic Mars from its platform, as there would be no other reason to emphasize "**only**" from Paragraph 12 of the Stipulated Judgment. Iconic Mars did not use the Shopify platform anywhere else except for its website. Furthermore, if Kaotica wanted to inform Shopify of the prohibition against selling the Old Comet product which began on January 1, 2022, it would have quoted Paragraph 8, which explicitly enjoins IMC from selling the Old Comet product without any exceptions. *See* Doc. No. 1, Ex. A. There would be no reason to quote Paragraph 12, or emphasize the word "**only**" instead of the key date of January 1, 2022. The only reasonable interpretation of the letter sent by Kaotica to Shopify was that Kaotica intended to breach the Settlement Agreement and violate this Court's Order in order to prevent IMC from selling the Old Comet product on its own website, as the Settlement Agreement specifically allowed IMC to do. Kaotica's cease and desist notice to Facebook, which caused Facebook to delete IMC's advertising page, also demonstrated contempt for, and breached, the Stipulated Judgment because the agreement did not prevent IMC from advertising the Old Comet in Paragraph 12.

*See id.* Notably, Kaotica's actions in breach of the Stipulated Judgment interrupted IMC's ability to sell its products during the crucial days of the Thanksgiving/Christmas holiday selling season. *See* Olaleye Decl. ¶ 4.

IMC itself did not breach the parties' agreement. During the period before January 1, 2022, the only place IMC offered to sell and sold the Original Comet product was its website, as permitted by the agreement. *See* Olaleye Decl. ¶ 16. All of IMC's other activities on other platforms during that time were limited to generating interest in potential customers, and directing potential customers to the IMC website for offers to be communicated and for sales to be completed. *Id.* IMC used these methods, which included social media postings, prior to the Stipulated Judgment, and Kaotica was aware of IMC's practices at that time which were incorporated into the Stipulated Judgment. *Id.*

Since December 30, 2021, IMC has advertised and offered for sale only the New Comet product. *See* Olaleye Decl. ¶ 17. The Original Comet was discontinued at that time, and no Original Comet product has been sold or distributed since December 30, 2021. *Id.* To the extent that images showing the Original Comet product have been used on IMC's website and social media marketing, those images only would have appeared accidentally, or it was not known that the images were Original Comet products, as they were submitted by IMC's customers. *See* Olaleye Decl. ¶ 18. Additionally, any image used to advertise the New Comet product has a similar external appearance to the Old Comet product, and all links to IMC's storefronts directed customers to the New Comet product only. *Id.*

As such, only Kaotica is in contempt or, and has breached, this Court's Stipulated Judgment.

**IMC Has Not Infringed Any Valid Patent Or Trade Dress, Nor Could It Be Liable For Unfair Competition Or Initial Interest Confusion**

Because IMC did not breach the Stipulated Judgment, it cannot be liable for any patent or trade dress infringement, unfair competition, or "initial interest confusion" concerning the Old Comet. Specifically, per the terms of the Stipulated Judgment, because IMC did not sell the Old Comet product after January 1, 2022, the Old Comet product could not infringe Kaotica's utility patent, design patent, registered trademark, or alleged trade dress, nor could it cause any confusion with customers.

Concerning the New Comet product sold after January 1, 2022, this product cannot infringe the Kaotica Trademark Registration No. 5,568,302 ("the '302 Registration") or any valid trade dress asserted in or to the Kaotica Eyeball product. Specifically, in regards to the '302 Registration, there are a number of key differences between the claimed three-dimensional configuration in the registration and the New Comet product, both of which have been reproduced below:

Smooth inner cavity
Perfect sphere without any edges
Ridged inner cavity
Flat outer surface



Rapid change in slope at edge
Clear edge

Exs. 1-2. From just a cursory examination, there are clear differences between the '302 Registration and the New Comet. For example, the New Comet has a completely flat surface by the larger opening, whereas the claimed registration maintains a spherical shape around the larger opening. Additionally, the New Comet possesses a sharp angular cone which forms a linear edge around the bottom portion of the New Comet, a shape which is completely different from the perfectly spherical shape of the '302 Registration. Finally, the New Comet has ridged walls throughout the inner chamber, while the inner chamber walls of the '302 Registration are completely smooth. Kaotica admitted it has never manufactured or sold a Kaotica Eyeball product without a smooth interior cavity:

> Q Have you ever manufactured a Kaotica Eyeball product that does not have a smooth interior cavity?
> A No.
> Q Have you ever sold a Kaotica Eyeball product that does not have a smooth interior cavity?

A No.

Ex. 4 at. 18:12-17 (non-confidential).

Additionally, these more than colorable differences also exist between the New Comet and the Kaotica Eyeball product, which are reproduced below:

Kaotica
Kaotica
5
EXHIBIT 1
Perfect sphere without any edges

Doc. No. 1, Ex. A.

iconicmars
Flat outer surface
Rapid change in slope at edge
Clear edge

Based on these differences alone, it is implausible that any consumer would confuse the two products at any point in time, either before, during or after purchase.  Also, in order to use the product, a customer would be required to remove the pop filter to install a microphone, revealing the differences between the inner chambers as well.  Furthermore, there is no evidence that any consumers have actually confused the two products, and Kaotica has not produced any customer surveys or other evidence of consumer confusion.

Moreover, in the context of these "microphone attachments" and how they function, nearly all of the features of these product designs are functional, not ornamental at all.  For example, the overall shape of the products is dictated by the microphone it must connect to.  *See* Olaleye Decl. ¶ 20.  Both of the inner chambers must be able to fit a wide range of microphones.  *Id.*  Even the area by the second chamber is dictated by the microphone setup it must connect to, because a surface that is incompatible with most microphone stands would prevent it from being usable.  *Id.*  The shape and position of the center chamber is also dictated by its function, because it exists to provide a pathway for sound to move from the entrance to the microphone.  A cylindrical chamber offers the greatest volume-to-surface area ratio, allowing the greatest amount of air to pass through while using the least amount of material.  Additionally, the shape of the pop filter is dictated by the shape of the chamber itself, and it must be sized and shaped so as to cover the opening and filter out the popping sounds made when an individual speaks into the microphone.  As such, the registered trademark and claimed trade dress are functional and invalid.

Because there is no likely confusion between the New Comet and the '302 Registration or the Kaotica Eyeball, IMC cannot be liable for trademark or trade dress infringement, unfair competition or initial interest confusion.

**Kaotica Is Liable For Misrepresentation Under 17 U.S.C § 512(f)**

On January 6, 2022, Shopify sent an email to IMC which stated: "This email is to inform you that pursuant to section 512(g)(2)(c) of the U.S. Copyright Act, we have received notice from the Complainant, Tim Billick, that they have filed an action seeking a court order to restrain you from engaging in infringing activity relating to the content on your Shopify store, Iconic Mars." *See* Doc. No. 1, ¶ 15, Ex. G.  But there was no such action pending, which Kaotica knew just like it knew none of IMC's images or text infringed any Kaotica copyright.  *See id.* ¶ 16, Ex. H. The actions that led to Shopify sending its email to IMC on January 6, 2022, after IMC submitted its counter-notification on January 4, 2022, would therefore be a misrepresentation, intended to keep IMC's Shopify store down.

**Kaotica Also Is Liable For Unfair Competition**

As discussed above, Kaotica's actions intentionally interfered with IMC's prospective economic advantage, and resulted in unfair competition by Kaotica. Kaotica's actions have irreversibly damaged IMC's business and irreversibly damaged its ability to attract customers and to sell to those customers.  Kaotica's actions have also affected IMC's ability to sell apparel and accessories which have no relation to its New Comet product.  Furthermore, Kaotica took its actions without verifying that the Old Comet product was being sold, as it placed an order for the sample product well after it had sent its various takedown notices to eBay, Instagram and Facebook and had misrepresented that the New Comet product infringed patents and trade dress rights, when it does not.

**Kaotica's Damages Expert Should Be Excluded Or Limited Under *Daubert***

Kaotica's damages expert, Mr. Jack Roberts, should be excluded or limited under *Daubert*, as portions of his testimony regarding causation of price erosion are speculative and conclusory.  First, Mr. Roberts does not cite any evidence of confusion, loss of goodwill or reputation loss to Kaotica, nor does he cite any survey, discussions with actual customers, or written feedback from customers.

Instead, his conclusions are based entirely on "[d]iscussion with Mr. Zukowski." Ex. 5 at 16-18. Furthermore, Mr. Roberts only attributes supposed decreases in price of Kaotica's products to IMC, and fails to consider the effects of other competitors known in the market. *Id*. at 18. As seen in Exhibit 3, which is a copy of the first page of search results for "microphone isolation" on Amazon.com on February 10, 2023, there are at least 17 other products with a similar look and function as the Kaotica Eyeball products, which range in price from $28-$89, prices which drastically undercut both the New Comet product and the Kaotica Eyeball product. Therefore, Mr. Roberts' conclusion that IMC's product had any effect whatsoever on Kaotica's business is unsupported, impermissible speculation and conjecture, and should be excluded from consideration in this action.

**Conclusion**

For each of the foregoing reasons, Plaintiff IMC respectfully requests a favorable summary judgment ruling on all liability issues, leaving only an accounting for the amount of IMC's damages suffered (and other remedies) to be resolved based on Kaotica's breach of contract, contempt, misrepresentation and unfair competition.

Respectfully submitted,

Dated: November 3, 2023

**SML Avvocati P.C.**

By: /s/ Stephen M. Lobbin
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ICONIC MARS CORPORATION, Plaintiff, v. KAOTICA CORPORATION, Defendant.

Docket No. 22-cv-0092-CAB-DEB

June 10, 2024
1:00 p.m.

San Diego, California
AFTERNOON SESSION

TRANSCRIPT OF JURY TRIAL, VOLUME 1
BEFORE THE HONORABLE CATHY ANN BENCIVENGO,
UNITED STATES DISTRICT JUDGE, AND A JURY
(PAGES 112 THROUGH 228, INCLUSIVE.)

A-P-P-E-A-R-A-N-C-E-S

For the Plaintiff: SML Avvocati, P.C.
888 Prospect Street, Suite 200
La Jolla, California 92037
By: STEPHEN LOBBIN, ESQ.
JOSHUA OSBORN, ESQ.

ADRIAN LYONS, ESQ.

For the Defendant: Kilpatrick
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
By: DARIO MACHLEIDT, ESQ.
KATHLEEN GEYER, ESQ.
KRISTIN ADAMS, ESQ.

Court Reporter: Chari Bowery, RPR, CRR
USDC Clerk's Office
333 West Broadway, Suite 420
San Diego, California 92101
chari_bowery@casd.uscourts.gov

Reported by Stenotype, Transcribed by Computer

SAN DIEGO, CALIFORNIA; JUNE 10, 2024; 1:00 P.M.

-o0o-

(The following proceedings were held in open court in the presence of the jury:)

THE COURT:  You will notice that when you come and go, they all stand up.  They do that for you because you are the triers of the fact in this case, just like you are there wearing a black robe.  It is a sign of respect for your role in the case.

So when you go home tonight, you should tell your family that, when you come and go from the room, they should stand.

It has never worked for me, but you never know.

Well, the jury is all back, and we are ready to go, so I now invite Iconic to make their opening statement.

ATTORNEY LOBBIN:  Thank you, Your Honor.  We are wired up.  We have the microphone working.

Thank you, Your Honor.

Ladies and gentlemen of the jury, now that we have seven of you instead of 30, I can talk more directly with you.  Once again, my name is Stephen Lobbin, a lawyer here in San Diego.  My law firm is SML Avvocati.  We are from San Diego, live here and work here.  My colleagues who are with me are Mr. Josh Osborn, also a lawyer here in San Diego, with me; Mr. Sean Lyons, and he is also here in San Diego, with me; and Mr. James Olaleye, who is the owner, the founder of Iconic Mars

find us anymore, so they kicked us off the algorithm completely and our sales just plummet. It was -- when I started the company, Iconic Mars, the Instagram, Iconic Mars, they destroyed that for me permanently, and I have to sit down and use a different name. Because they went ahead and reported that I am infringing. And then until today, I emailed Facebook and Meta all the time trying to get back the old Instagram.

We have influencers, celebrities, "American Idol" contestants --

Q James, let's make this clear. Take a breath.

Your original Instagram account, what was it called?

A Iconic Mars.

Q And what is your Instagram account called now?

A Iconic Mars Inc.

Q When did you create Iconic Mars Inc.?

A After they shut us down permanently, in I think January, immediately after I realized --

Q Thank you. Okay.

Did you ever make sales directly on Instagram or Facebook?

A I don't sell on Facebook. We just use it as a means of brand awareness and marketing. Customers have to come to the website to buy the product.

Q And going back to your original Instagram account, have you tried to regain access?

A I tried. Multiple times. We emailed Meta. I did

everything I could.  Even Mr. Zukowski say he will try help us --

Q    James, just answer the question.

Have you tried contacting Kaotica to regain access to your Instagram account?

A    Yes, we did.  They said they will, but we never did.

Q    Thank you.  Let me go to my next question.

Was your Facebook and Instagram account linked?

A    Yes, they were linked together.

Q    They are linked together right now?

A    Yes.  When I post to Instagram, it goes on Facebook.

Q    Were they linked after January 1 of 2022?

A    They have always been linked together.

Q    We will go to the next question.

Did the stipulated judgment prevent you from advertising or marketing the Comet Version 2?

A    No.

Q    Let's go back to the stipulated judgment.  Go to Exhibit 2.

James, what is this image?

A    The Comet.

Q    Which version?

A    This is Version 2, not Version 1, because Version 1 does not have -- apart from the height and everything, Version 1 also, the pop filter was gray, so I could easily tell.  Even

just by looking at it, I know straight up, it's Version 2.

Q    So, you are telling me the stipulated judgment had Version 2, not Version 1?

A    The stipulated judgment has Version -- well, this image they are using is actually Version 2, not Version 1.

THE COURT:  Sir, this is the exhibit to the stipulated judgment that was the accused product.  I think you might want to reconsider your response.

Perhaps if you gave him a hard copy instead of doing it on the screen, it might help him.

ATTORNEY LYONS:  Your Honor, we will move on.

THE COURT:  Okay.

BY ATTORNEY LYONS:

Q    How did Instagram marketing and advertising drive Iconic Mars' sales?

A    The advertising?

Q    Yes.

A    When we advertise the products by posting on Instagram, it helps a lot because it helps customers to be able to see the products and what the product does, so the customers can now go to the website and buy the products.  So it does help improve a lot, huge margin.

Q    How did Facebook marketing and advertising drive sales?

A    Facebook does help a lot, because when we run ads, it shows on Facebook and Instagram together, and customers get to

Comet in the stipulated judgment for the new one. How can what Mr. Billick did in January of 2022 be so egregious as to be misrepresentation necessary for their claim, if, in trial, even after Your Honor tried to fix it, their CEO stuck to his guns and said the Comet in the stipulated judgment -- absolutely, that's the 2.0?

This does not amount to interference based on misrepresentation. If anything, I believe I used -- well, I won't go into more argument than that.

But what Mr. Billick did was essentially take the legal conclusion from what their own CEO did yesterday on the witness stand. That is not the misrepresentation necessary for interference.

THE COURT: Counsel?

ATTORNEY LOBBIN: Well, the interference claim, before they even got the product -- the product in the stipulated judgment, everyone agrees, is the Version 1. I don't know what they think they are going to establish with confusing a witness on the stand.

THE COURT: They didn't confuse him. He testified all by himself when you showed him the picture and it was the Version 2.

ATTORNEY LOBBIN: But it didn't exist. It wasn't being sold at the time, so it was not Version 2. It was Version 1. Everything was clear about that. That was the

product at issue in the lawsuit, so obviously it can't be Version 2.

Kaotica didn't even obtain Version 2 until January 12.

Before then, they sent all sorts of notices, which we have testified about, to Meta, to Shopify and others, intended -- and you just heard testimony from their witness -- that was awfully likely to interfere with their ability to sell product.

So that was the relationship that was disrupted. The sales were disrupted. They knew of the relationship. They engaged in conduct. They even went so far as to try to repair the misconduct, which speaks loudly to the fact that the original takedown notices were misconduct.

And, you know, obviously, from that, they intended to disrupt those relationships, during the holiday selling season and beyond, and that caused harm to Iconic.

So, all the elements are there. There's evidence to -- for the jury to reasonably conclude all of the elements of the claim are there, and certainly not as a matter of law. This is -- again, the jury can decide what they want, but we don't believe judgment as a matter of law is justified. And if Your Honor thinks there's something missing, you know, we have examined --

THE COURT: Your case-in-chief is done, so you don't get to go and fill in here.

But the question -- and I am going to again deny your

is Exhibit 128.  Take a look at them yourselves.  We were surprised when we put them together because we realized there actually are differences between those two.  And Iconic did nothing to explain how and why the product that they brought to trial differs, potentially in the same ways that their CEO testified about on the stand.

The answers just kept changing over time.  Each time, given under oath and even now in trial, there are two different versions of the New Comet, the one we bought long ago and the one they brought to trial.

Trial, in many ways, is a unique experience because you actually don't know what is going to happen, despite all the work that you do leading up to getting to this point.

When Iconic's CEO was testifying in response to his own lawyer's questions, his lawyer asked him, "Let's look at the stipulated judgment."  At the back of that document there's a photo, there's an image of what is supposed to be the Old Comet, Version 1, because the stipulated judgment was signed at the end of October 2021.  Version 2 was not supposed to exist.  Throughout the entire course of the case, the stipulated judgment was entirely about the Old Comet, the Version 1.

On the stand, in response to his own lawyer's questions, Iconic's CEO said, "Nope.  The picture in the stipulated judgment from 2021, that's Version 2.  No doubt about that.

Even just by looking as it, I know, straight up, it's Version 2."

That was not me extracting some sort of sneaky concession from him on cross-examination.  That was him testifying in response to a very basic question from his own lawyer.

The Judge got involved.  She even said, "Sir, I think you might want to reconsider your response.  We are talking about the stipulated judgment."

They didn't fix it.  There was no follow-up, not from the witness, not from his lawyers.

I bring up all of this to say if they don't know the difference between the old and the new when they look at images, how is Mr. Billick, how was Kaotica supposed to know that there was any difference when they looked at iconicmars.com, Instagram, or what have you?  If they can't tell the difference, how can what Mr. Billick did amount to knowing that it was false or anything involving reckless disregard or lack of regard for the truth?  It is simply not there.

What they did, at best, is a bait-and-switch, by keeping old images of a product that was supposed to disappear, and when Kaotica responded under the contract, telling people "Iconic's violating our rights; they are not allowed to do that," Iconic became the aggressor and said, "We are going to sue you," and they did.

got takedown notices. They just wanted to sell for six weeks. They didn't get what they got.

If you go to the next page, which he conveniently leaves out, look at paragraph 10. What does this say? Iconic Mars reserves the right to challenge the validity and/or enforceability of the trade dress vis-a-vis products other than the accused products, provided they are colorably different.

Well, Version 1, Version 2. Look at them, you know the differences. They are even different in color, bigger shape, different shapes, inside ridges. There was a redesign. This was a lot of effort. Different product. We get to challenge the trade dress.

Now, counsel told you, "Well, oooh, what is the deal with these products? Some are different than others. Their samples are different than ours."

I leave that to you. I don't know what he was implying. These are foam. There are manufacturing tolerances. Different batches. I don't know if you have been involved with a product like this. Different batches come out different. You can decide what to do with that.

When counsel asked you about the settlement agreement -- this is a key document in the case, you will have to look at it.

The stipulated judgment, he makes a big deal about Mr. Olaleye saying on the stand, "Oh, that looks like the

Version 2," but the agreement was about Version 1.

They wrote the agreement, so if they attached the wrong product to the agreement, who is doing the shenanigans?

ATTORNEY MACHLEIDT:  Objection.

THE COURT:  Sustained.

Counsel, that is an improper argument for which there's absolutely no basis.

Come over here to the sidebar right now.

(The following proceedings were heard at sidebar:)

THE COURT:  Where do you get off in good faith to argue that the exhibit that's attached to the stipulated judgment was the Version 2?  The Version 2 wasn't even available.

ATTORNEY LOBBIN:  He said it was.

THE COURT:  No.  The stipulated judgment attaches a picture of the Version 1 of the Comet that was available at the time that it was the accused product.

ATTORNEY LOBBIN:  That was the intent of the agreement, yes.

THE COURT:  And are you telling me it is not?

ATTORNEY LOBBIN:  He said it was not.

THE COURT:  No.  Your client said it wasn't.  Your client testified it was the Version 2.  He never said that.

ATTORNEY LOBBIN:  He argued it.  He just argued it.

THE COURT:  I am going to direct the jury that

there's no evidence whatsoever that the stipulated -- you know, you are bordering on getting a contempt issued from me. Go back.

(The following proceedings were held in open court:)

THE COURT: The stipulated judgment -- you will look at it. It attaches, as a picture, an exhibit, a photograph of the Comet Version 1 that was the accused product that the parties agreed infringed the trade dress.

The argument being made here is that somehow that was the Version 2. The Version 2 didn't exist at the time. It was a judgment that ended the case over the Version 1.

The only testimony at issue regarding that was, on the stand, Mr. Olaleye mistakenly thought that that picture was -- was rather adamant that that was a picture of the Version 2.

It couldn't have been. It wasn't. I tried to help them clean it up. They didn't.

This argument that somehow defense counsel is misleading you is inappropriate, and you are to disregard it. It is not evidence anyway, but it is an inappropriate argument.

You may finish, sir. You have less than five minutes.

ATTORNEY LOBBIN: Thank you.

That's my point. Stipulated judgment was about Version 1. 2021, Version 1. And we get to January 1, everything later than that, Version 2. Agreement is about Version 1. Everything else is Version 2. I just want to make that clear.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ICONIC MARS CORP.,

Plaintiff,

v.

KAOTICA CORP.,

Defendant.

Case No.: 22-CV-0092-CAB-DEB

**ORDER ON EQUITABLE CLAIMS AND MOTION FOR ATTORNEYS' FEES AND COSTS**

**[Doc. Nos. 123, 125 and 119]**

Before the Court are the parties' post-jury trial motions for resolution of equitable claims asserted in this litigation, and Kaotica Corporation's motion for an award of attorneys' fees and costs. [Doc. Nos. 123, 125 and 119.] Iconic Mars Corporation ("Iconic") seeks a finding of unfair competition against Kaotica. Kaotica Corporation seeks an award of disgorgement of Iconic's profits for trade dress infringement, enhancement of the jury award of damages, attorneys' fees and costs, and a permanent injunction. The Court heard argument on the motions on January 16, 2025. [Doc. No. 142; Doc. No. 144, Hr'g Transcript.]

**A. Background**

As set forth in the pretrial order, [Doc. No. 96], this case is between two companies, Iconic and Kaotica. These companies manufacture and sell microphone isolation products. Generally, these products fit over a microphone to eliminate background noises, isolate the

recording, and remove unwanted room noises. Kaotica manufactures and sells a product known as the Eyeball. Iconic manufactures and sells a product known as the Comet.

In 2021, these parties were involved in a lawsuit filed in this district in which Kaotica accused Iconic's Comet sales of infringing Kaotica's intellectual property rights, including Kaotica's trade dress rights in its Eyeball product under 15 U.S.C. § 1125(a). *See Kaotica Corp. v Iconic Mars Corp., et al.,* Case No. 21-cv-433-CAB.

Trade dress is the non-functional overall appearance or design of a product that consumers recognize and rely upon to distinguish it from others in the market. *See* Ninth Circuit Model Civil Jury Instructions, 15.3; *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 765 n.1 (1992). The 2021 lawsuit was resolved by entry of a Stipulated Judgment in which Iconic agreed that Kaotica's trade dress for the Eyeball product, as depicted in Exhibit 1 of the Stipulated Judgment,[1] is valid and subsisting. Iconic also admitted that sales and offers for sale of its Comet product, as depicted in Exhibit 2 of the Stipulated Judgment, infringed Kaotica's trade dress in violation of 15 U.S.C. § 1125(a). [Doc. No. 1-2, at 3–4, Exs. 1 and 2.] Iconic acknowledged that its sales of the Comet caused Kaotica irreparable harm and agreed to cease sales, promotion, and use of its infringing Comet product (hereinafter referred to as the Old Comet), by January 1, 2022.

On December 30, 2021, Iconic started selling a microphone isolation product which will be referred to as the New Comet.[2] On January 23, 2022, Iconic filed the current lawsuit alleging that Kaotica violated the terms of the Stipulated Judgment by interfering with its sales of the Old Comet prior to January 1, 2022, and with sales of the New Comet after January 1, 2022, causing Iconic damage. Iconic also sought a declaration that the New Comet did not infringe Kaotica's trade dress rights in its Eyeball product.

---

[1] Kaotica's trade dress for the Eyeball product, as depicted in the exhibit to the Stipulated Judgment, is the external appearance of the product consisting of a spherical black body onto one side of which is placed a flat, circular pop filter of a contrasting color, creating the look of an eyeball. The internal configuration of the product is not incorporated in the defined trade dress.

[2] Trial Testimony of Oluseyi James Olaleye, owner and founder of Iconic. [Doc. No. 102, at 23.]

Kaotica counterclaimed for violation of the Stipulated Judgment by Iconic based on Iconic's use of images of the Old Comet to market its products after the cutoff date of January 1, 2022. Kaotica also alleged that Iconic willfully infringed its trade dress rights in the Eyeball design and appearance with its New Comet design and claimed damages for Iconic's sales of the New Comet.

**B. Pretrial Adjudications**

Kaotica moved for summary adjudication on its claim that Iconic breached the Stipulated Judgment by using images of the Old Comet in online marketing after January 1, 2022. The Court granted that motion and left the element of damages resulting from the breach for the jury to determine at trial. [Doc. No. 77.] The Court also granted Kaotica's motions that it did not make misrepresentations to Shopify regarding Iconic's Comet products either before or after January 1, 2022, allegations that gave rise in part to Iconic's claims for breach of contract, intentional interference, and unfair competition. [*Id.*]

**C.   Trial**

The case went to trial on June 10, 2024. After four days of testimony and argument, the jury returned a verdict in favor of Kaotica finding that Iconic's New Comet willfully infringed Kaotica's trade dress in the Eyeball. The jury awarded Kaotica $275,000 in damages based on evidence that Kaotica had to reduce the price of the Eyeball product to compete with Iconic's infringing New Comet product. [Doc. No. 113, Verdict.]

Kaotica also sought disgorgement of Iconic's profits from sales of the infringing New Comet product. The Court sent this question to the jury for an advisory verdict. The jury returned a verdict that Kaotica should be awarded $411,758 of Iconic's profits from sales of the New Comet. [*Id.*]

The jury did not find for Iconic on its claim that Kaotica intentionally interfered with Iconic's prospective economic advantage by misrepresenting to eBay, Instagram or Facebook after January 1, 2022, that Iconic continued to infringe Kaotica's trade dress rights and by requesting that Iconic's advertising be taken down.

**D. The Parties' Equitable Claims**

**1. Iconic's Claim for Unfair Competition**

Pursuant Fed. R. Civ. P. 52(a)(1), Iconic now moves for a finding from the Court on its claim in equity that Kaotica competed unfairly with Iconic in violation of California Business and Professions Code § 17200. [Doc. No. 123.]

Iconic does not articulate in its moving papers (or address in substance in its reply brief [Doc. No. 135]) what it asserts it demonstrated at trial to establish unfair competition on the part of Kaotica to support its claim. The entirety of its argument is the following, "[At] trial, Iconic presented documents and testimony which could support findings and a conclusion of unfair competition." [*Id.* at 5.] No specific evidence, testimonial or documentary, is identified. The Court is essentially asked to find facts from the record to make Iconic's claim for it. That is not the Court's job. *See generally, Parrish v. Mabus*, 679 Fed. Appx. 620, 621 (9th Cir. 2017) ("A bare assertion in a brief with no supporting arguments, or an argument made only in passing, is insufficient to avoid waiver.")

In the Pretrial Order, Iconic alleged that Kaotica engaged in unfair acts or practices and unfair methods of competition by representing to social media/advertising platforms eBay, Instagram and Facebook that the New Comet product infringed Kaotica's intellectual property rights. [Doc. No. 96 at 4.] The evidence at trial regarding this assertion consisted of notices sent in January 2022 by attorney Timothy John Billick on behalf of Kaotica stating that Iconic was subject to a Stipulated Judgment that prohibited the advertisement and sale of the Old Comet product after January 1, 2022. [Doc. No. 105, Billick Trial Testimony, at 42–45.] Billick requested the advertising platforms remove the Iconic product images as Kaotica asserted they were the same content as the images used prior to 2022 and infringed Kaotica's trade dress in accordance with the Stipulated Judgment. [*Id.*]

Iconic contended that these representations were issued in bad faith because Kaotica was not using images of the Old Comet on advertising platforms and Kaotica did not first obtain the New Comet product before sending takedown notices to the advertising platforms. Iconic argued that had Kaotica done so, it would have seen that the New Comet

did not infringe the trade dress and was not subject to the stipulated injunction and the advertising did not violate the injunction or constitute trade dress infringement.

The evidence presented at trial, however, demonstrated that Iconic was continuing to use the same product images of the Old Comet to promote sales of the New Comet after January 1, 2022.[3] [Doc. No. 103, Zukowski Trial Testimony, at 97–104, demonstrating Iconic online advertising posts.] Further, the trade dress appearance of the New Comet compared to the Old Comet was virtually indistinguishable, at least in photographic images. This was demonstrated at trial when the creator of the Iconic products, Mr. Olaleye, who previously testified that he could distinguish the two versions from each other, [Doc. No. 100, Olaleye Trial Testimony at 59], incorrectly identified an image of the Old Comet as the New Comet on the stand. [*Id.* at 64–65.]

To prove an unfair business practice under Cal. Bus. & Prof. Code § 17200, Iconic was required to prove by a preponderance of the evidence that Kaotica engaged in a business practice that was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. In determining whether the accused practice was unfair, the court must weigh the utility of the conduct against the gravity of the harm to the alleged victim. *Searle v. Wyndham Int't, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002).

Iconic was obligated by the Stipulated Judgment entered in the first litigation to stop using the images of the Old Comet to promote sales of its products after January 1, 2022. Iconic also agreed that the Old Comet design infringed Kaotica's valid trade dress rights and it was obligated to discontinue infringing sales. A claim for unfair competition does not permit the court to review the fairness of the obligations and admissions Iconic entered as a result of its 2021 agreement with Kaotica. *Id.*

---

[3] These same allegations of false claims of trade dress infringement and violations of the Stipulated Judgment formed the basis of Iconic's tort claim for Intentional Interference with Prospective Economic Advantage which the jury rejected. [Doc. No. 113.]

The evidence at trial established that the actions Kaotica undertook in January of 2022 were within the scope of its rights under the Stipulated Judgment and terms of the injunction. Further, asserting that the redesign of the Iconic's product, the New Comet, still infringed Kaotica's trade dress was not made in bad faith as the redesigned product's trade dress aspects were virtually indistinguishable from the previously enjoined product. This finding is further supported by the jury's verdict that the New Comet infringed Kaotica's trade dress. [Doc. No. 113.]

Iconic has not proven its claim for unfair competition against Kaotica and the Court finds for Kaotica on that claim.

**2. Kaotica's Claim for Disgorgement of Profits**

The jury having found that Iconic's sales of the New Comet willfully infringed Kaotica's trade dress rights in Kaotica's Eyeball product, also made an award of $411,758 to Kaotica of Iconic's profits. This award was for advisory purposes only, as disgorgement of profits under the Lanham Act is subject to principles of equity and for the Court to determine. 15 U.S.C. § 1117(a).

In awarding disgorgement of profits, courts consider equitable factors which may include: (1) defendant's mental state, such as whether the defendant had the intention to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting the plaintiff's rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off. *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 7089922, at *10 (C.D. Cal. Oct. 25, 2023).

Equitable considerations favor an award of Iconic's profits to Kaotica. Iconic entered a judgment in 2021 acknowledging that Kaotica's trade dress rights were valid and infringed by its Old Comet design. Iconic further agreed that its infringing sales were causing irreparable harm to Kaotica. Iconic committed to stop selling the Old Comet and cease using the infringing design in its advertising no later than January 1, 2022. This did not happen.

After January 1, 2022, Iconic continued to use images of the Old Comet to attract business to its website to sell the New Comet. Kaotica did not delay in asserting its rights for the breach of the Stipulated Judgment and to enforce its rights against the New Comet. Although Kaotica did not present evidence that consumers purchased the New Comet believing it to be a Kaotica product, the circumstances of this case support a conclusion that Iconic continued to use infringing trade dress through the posting of old images to attract potential customers and trade on Kaotica's goodwill. Further, the jury found the design of the New Comet infringed Kaotica's trade dress and that this continued infringement was willful. *See id*. at 11 (citing *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 218 (2020)) (a finding of willfulness is an important consideration in determining whether an award of profits is appropriate).

The evidence supports a finding that Iconic diverted consumers to its website to sell its product in part using product images that infringed Kaotica's trade dress. Iconic continued to use Kaotica's trade dress after committing to cease such use as of January 1, 2022 and did so willfully. Iconic did not adhere to the Stipulated Judgment and disregarded its obligations under that judgment; as such, the Court finds disgorgement of Iconic's profits for its continued infringement an appropriate remedy. *See Playboy Enters., Inc. v. Baccarat Clothing Co., Inc*, 692 F.2d 1272, 1274 (9th Cir. 1982) (violations of the Lanham Act should be unprofitable for the infringer and disgorgement of profits is at times necessary to deter an infringer's deliberate and willful misconduct).

For an award of Iconic's profits, Kaotica's burden at trial was to establish Iconic's revenues from the sale of the infringing New Comet. 15 U.S.C. ¶ 1117(a); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir 2015). Kaotica presented evidence at trial of Iconic's revenues through Mr. Jack Roberts. Mr. Roberts provided expert economic testimony analyzing the revenues Iconic earned from sales of the New Comet. [Doc. No. 115, Trial Testimony of Roberts, at 87–93, 97–98.] Based on the documentation provided from Iconic in discovery, Mr. Roberts testified that from January 1, 2022 through April 30, 2023, Iconic generated $339,279 from sales of the New Comet.

[*Id.* at 87–90.] Mr. Roberts further testified that he did not receive requested additional information updating Iconic's revenues from May 2023 to the trial in June 2024. [*Id.* at 90–91.] He therefore estimated revenues for that period based on the monthly gross revenues reported for January 2022 through April 2023, and estimated additional revenue through trial for sales of the New Comet at $254,459, for a total of $593,738. [*Id.* at 91.]

Mr. Roberts acknowledged that costs should be deducted from the gross revenue. Establishing the expenses that should be deducted from the gross revenue to arrive at the infringer's net profits is the burden of the infringer. 15 U.S.C. § 1117(a); *Fifty-Six Hope Rd.*, 778 F.3d at 1076. The testimony established that Iconic did not produce in discovery sufficient documentation to demonstrate its deductible expenses. [Doc. No. 115 at 92–93.] Although not Kaotica's burden, Mr. Roberts made some general assumptions regarding costs attributable to the production based on cost information presented at trial and concluded that Iconic's net revenue for the New Comet product from January 2022 to June 2024 was $411,758, approximately a 70% profit margin. [*Id.* at 98.] The jury awarded this amount in its advisory verdict. [Doc. No. 113.]

Iconic argues that the Court should not accept this evidence and that an award of $411,758 is excessive and many times Iconic's "real-world profits, based on its typical profit margin, units sold and sales revenue." [Doc. No 123 at 4; Doc. No. 135 at 3.] Iconic's motion references trial testimony as to its "real-world profits" being usually 60% or so, but without specific citation to the record.[4] Iconic asks the Court to assess a more realistic number representing Iconic's "small, real-world profits," such that the disgorgement does not amount to a penalty for its infringement. 15 U.S.C. § 1117(a) (recovery of an infringer's profits shall be compensatory and not a penalty).

---

[4] The Court searched the trial transcripts and located Mr. Olaleye's testimony representing that Iconic Mars' profit margin was 60%. [Doc. No. 100 at 72.] This was offered at trial without corroboration in the form of documentation or any accounting analysis.

The Court accepts Kaotica's calculations of Iconic's gross revenues for the relevant time period at an estimated $593,738. While Iconic challenged Mr. Roberts' calculations on cross-examination, it offered no credible evidence to contradict his opinion. Iconic came up quite short in the view of the jury in establishing its expenses to offset this gross revenue number, resulting in the jury adopting Kaotica's overall disgorgement claim of $411,758.

Iconic had the burden to demonstrate its deductible costs and generally failed to do so with particularity. As the infringer, Iconic should not benefit from its failure to provide documentation in this litigation to support assertions for which it has the burden of proof. Nevertheless, the Court finds that Mr. Roberts' assessment of a profit margin of approximately 70% based on the limited data he received likely overestimates Iconic's actual net profits. Applying the 60% margin testified to by Mr. Olaleye to the revenues calculated by Kaotica, the Court finds an equitable award to Kaotica of Iconic's profits for the infringing sales of the New Comet to be $356,243.

Finding that Iconic willfully continued its infringement of Kaotica's trade dress, the Court orders disgorgement of Iconic's profits for sale of the New Comet in the amount of $356,243.[5]

**3. Enhancement of Damages**

In assessing damages under the Lanham Act, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. 15 U.S.§ 1117(a). Kaotica made a claim for actual damages based on price erosion—it had to lower the price of its Eyeball product to compete with Iconic's infringing New Comet product.

---

[5] Iconic argued misleadingly that the disgorgement of profits for its willful infringement somehow amounted to a "double recovery" for Kaotica and such an award is prohibited by the Lanham Act. [Doc. No. 132 at 4.] Iconic however also acknowledged that Kaotica did not make a claim for lost sales, but rather price erosion on products it sold—a different theory of damages. Iconic's reference to a prohibited double recovery is another example of misapplying the law.

Mr. Roberts provided testimony that based on Kaotica's annual pricing history, the net selling price of the Eyeball product had consistently averaged $198 a unit. Kaotica decreased the price to respond to competition from the New Comet product to $177 a unit in 2022, and $166 a unit in 2023. [Doc. No. 115, Trial Testimony of Roberts, at 78–85.] Mr. Roberts calculated that Kaotica lost $349,828 because it had to lower its prices after Iconic's New Comet came onto the market. Although Iconic challenged the assumption that Kaotica dropped its prices due solely to competition from the New Comet, it did not provide any alternative to Mr. Roberts' price erosion computation.

The jury awarded Kaotica $275,000 for price erosion damages. [Doc. No. 113.] Although the jury may not have been entirely convinced that Kaotica dropped its prices solely to respond to competition from Iconic, and therefore awarded less than the amount Kaotica claimed, the Court finds the evidence presented by Kaotica was sufficient to prove by a preponderance of the evidence that its actual loss due to competition with the infringing product was greater than the jury's award. To fully compensate Kaotica for the damages its incurred due to infringement of its trade dress, pursuant to 15 U.S.C. § 1117(a), the Court enhances the jury's actual damage award to $350,000, supported by Mr. Roberts' analysis.

Kaotica argues that an award trebling the jury's verdict to an amount of $825,000 is needed to fully compensate Kaotica for its damages. Kaotica argues (1) that it may have increased its price over time but for Iconic's competition and (2) that it incurred other advertising expenses and loss of goodwill due to the infringement not accounted for in the price erosion calculations. Kaotica further represents that Iconic, despite the jury's verdict that its New Comet product infringes Kaotica's trade dress, continues to sell the New Comet and Kaotica therefore continues to accrue price erosion damages to compete with this ongoing infringement. Some of these claims are speculative, others are not sufficiently quantifiable for the Court to include in the enhancement as compensation.

The Court enhances the damages award to Kaotica from $275,000 to $350,000.

### 4. Attorneys' Fees and Costs

#### a. Award Against Iconic

The Lanham Act authorizes discretionary attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). Kaotica is the prevailing party in this litigation. A party may be considered prevailing for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Kaotica prevailed on its claims of breach of the Stipulated Judgment and trade dress infringement, the predominant issues in the case.

A court determines if a case is exceptional by considering the totality of the circumstances and evaluating whether the case is one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated based on a preponderance of the evidence. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023) (quoting *SunEarth Inc. v. Sun Earth Solar Power Co., Ltd.* 839 F.3d 1179, 1180 (9th Cir. 2016)).

In considering the totality of the circumstances the court may consider "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Jason Scott*, 68 F.4th at 1223 n.13 (internal citations omitted). Willful infringement alone can satisfy the exceptional case standard. *Id.*

The jury found the infringement willful, and the Court agrees. In this case, the willfulness determination is exacerbated by the fact that Iconic admitted in a Stipulated Judgment that its product design infringed valid trade dress, admitted the infringement caused irreparable harm to Kaotica, and Iconic committed to ceasing that infringement.

The Stipulated Judgment in the first litigation attached photographs of the Eyeball product identifying the claimed trade dress. "Photographs showing the Kaotica Trade Dress are attached hereto as Exhibit 1." [Case No. 21-cv-433, Doc. No. 43 at 7–15.] All

of the photographs in the exhibit depict only the external aspect of the Kaotica product – a spherical black body with a flat, circular pop filter of a contrasting color on one side. The internal cavity is neither shown nor claimed as part of the agreed upon trade dress.

Despite entering a judgment setting forth this trade dress description, in this litigation Iconic repeatedly tried to recraft the scope of admitted trade dress to incorporate other aspects of its accused product. Iconic asserted that because the New Comet used denser foam and has a different internal configuration than the Old Comet, it was a different product that did not infringe Kaotica's trade dress. [Doc. No. 102 at 28–31.] Although Mr. Olaleye acknowledged these alterations did not change the aesthetic look of Iconic's product, [*id.*], Iconic repeatedly asserted, based on these non-trade dress alterations, that it was not restrained by the Stipulated Judgment from challenging whether the Iconic New Comet infringed and whether Kaotica's product design was functional and not valid trade dress. [Doc. No. 96 at 5–6.]

Iconic initiated this case alleging that its new design did not infringe Kaotica's trade dress but did so by ignoring what it stipulated to and attempted to redefine what Iconic agreed constituted Kaotica's trade dress. This tactic was objectively unreasonable and without legal justification—the accused infringer cannot redefine the scope to the asserted trade dress to avoid an injunction and infringement, especially after the infringer agreed to the scope and validity of Kaotica's trade dress *and* agreed it infringed that trade dress. *See Sazerac Co., Inc. v. Fetzer Vineyards, Inc.* 251 F. Supp. 3d 1288, 1301 (N.D. Cal. 2017), a*ff'd*, 786 F. App'x 662 (9th Cir. 2019) (defendant cannot insert unclaimed elements into the asserted trade dress as claimed by the holder).

The Stipulated Judgment provided that Iconic could challenge Kaotica's trade dress if asserted against a product other than the Old Comet, if the product trade dress was more than colorably different than the Old Comet. [Doc. No. 1–2 at 4 ¶ 10.] Yet the trade dress aspect of the product configuration between the Old Comet and the New Comet was so similar that even the creator of the product could not tell them apart in a photograph.

The Court finds that Iconic's litigation position was frivolous, and the case meets the exceptional case standard. Given the willfulness of Iconic's conduct and the unreasonableness of its arguments to support its continued infringing conduct, Kaotica's motion for reasonable attorneys' fees and costs is GRANTED.

**b. Award Against Counsel**

Kaotica further requests that the Court sanction Iconic's counsel, Mr. Stephen Lobbin, under its inherent power and 28 U.S.C. § 1927 and order him responsible for the awarded fees and costs jointly and severally with Iconic.

The district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

> For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motived by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.

*Id.* (internal citations omitted).

Sanctions against counsel are justified when an attorney acts in bad faith or intends to mislead the court. *Id.* at 993; *see Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 664, 648 (9th Cir. 1997) (a finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument). An attorney's reckless misstatement of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case to gain tactical advantage in another case, is sanctionable under a court's inherent power. *Fink*, 239 F.3d at 994.

Any attorney who multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. "A prerequisite to the imposition of Section 1927 sanctions is that the attorney's conduct be in

bad faith." *Soules v. Kauaians for Nukolii Campaign Comm*., 849 F.2d 1176, 1185 (9th Cir. 1986). "Bad faith may be inferred from a totally baseless course of conduct." *Kimble v. ADT Sec. Servs.,* No. 3:16-CV-02519-GPC-BLM, 2018 WL 1898556, at *5 (S.D. Cal. April 20, 2018).

Kaotica's motion, [Doc. No. 119], presents a compelling summary of the history of this litigation and the unreasonable and vexatious conduct of Mr. Lobbin as lead counsel for Iconic to justify a sanctions award. At the hearing on these motions, the Court enumerated many of the positions and actions taken by counsel that support its finding of bad faith. [Doc. No. 144 at 21–24.]

The most egregious conduct that permeated this litigation was Mr. Lobbin's obstinate refusal to acknowledge the scope of Kaotica's trade dress claim to which his client had previously stipulated in a judgment. He repeatedly offered improper argument and testimony in an attempt to redefine Kaotica's rights to justify the ongoing infringement. He made unfounded arguments that the exhibits in the Stipulated Judgment in the first litigation had been somehow manipulated by Kaotica. Mr. Lobbin willfully advanced these frivolous and baseless positions from the filing of this lawsuit through closing even after the Court admonished him (multiple times) not to do so.

Mr. Lobbin repeatedly argued that Iconic did not agree to the terms of the 2021 Stipulated Judgment that he counseled his client to enter, particularly regarding the trade dress concessions. He essentially treated the previously entered judgment as if Iconic signed it under duress or with its fingers crossed—such that it was not binding or enforceable. He defied the Court's orders and directions during trial, made factually incorrect statements to the jury, and recklessly and repeatedly attempted to introduce irrelevant evidence to mislead the jury and confuse the issues.

Mr. Lobbin made unfounded assertions regarding discovery and impugned the integrity of opposing counsel without any justification. He never offered any support for his positions despite being given opportunities to do so. It became apparent during pretrial motion practice and at trial that Iconic was woefully deficient in meeting its discovery

obligations. Nevertheless, Iconic needlessly and unmeritoriously moved to challenge Kaotica's damages expert. On the morning of closing arguments, Mr. Lobbin made a frivolous objection to a jury instruction that he himself had offered and had previously confirmed with the Court.

The Court finds it appropriate to sanction Mr. Lobbin pursuant to its inherent authority and under 28 U.S.C. § 1927 for his bad faith tactics and conduct in the litigation of this case to (1) compensate Kaotica for the unnecessary expenses it incurred and (2) as a deterrent to his future conduct. Kaotica's motion for sanctions against Mr. Lobbin is GRANTED and he will be personally responsible, jointly and severally with Iconic, for the fees and costs awarded to Kaotica.[6]

**5. Permanent Injunction**

The Lanham Act "vests district courts with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right." 15 U.S.C. § 1116(a). The decision of whether to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *Ebay Inc. v. Mercexchange LLC*, 547 U.S. 388, 391 (2006).

A party seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A party must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* Iconic has not argued that Kaotica cannot meet these requirements.

---

[6] The Court recognizes that ability to pay is a factor in the award of sanctions pursuant to 28 U.S.C. § 1927. *Haynes v. City & Cnty. of San Francisco,* 688 F.3d 984, 987 (9th Cir 2012). In imposing sanctions "it lies with within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Id.* The district court, should it decide to reduce an amount on account of a sanctioned attorney's inability to pay, is not required to reduce the amount to that which the attorney is capable of satisfying. *Id.* at 988.

A party seeking a permanent injunction is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation of 15 U.S.C. § 1125. 15 U.S.C. § 1116. Iconic has not rebutted this presumption and to the contrary admitted in the Stipulated Judgment that its trade dress infringement was causing Kaotica irreparable harm.

Although monetary damages have been awarded to Kaotica, they have not been adequately compensated for the loss of goodwill or for the continued infringing activity that Iconic engaged in after the initial injunction was entered.

The balance of hardships weighs in favor of Kaotica. A permanent injunction would not bar Iconic from competing in this market but would necessitate that Iconic redesign its product to cease infringing Kaotica's trade dress. At trial the parties highlighted numerous other products in this market with non-infringing design alternatives. A permanent injunction would only require that Iconic comply with the law (and the judgment to which it previously entered) and abandon its use of Kaotica's trade dress in its product design and advertising.

Finally, the public interest is served by upholding Kaotica's rights under the Lanham Act. Consumers have an interest in accurate information about the products they are buying. *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc*. 559 F.3d 985, 993 n.5 (9th Cir. 2009) (the public has in interest avoiding confusion between companies' products).

Kaotica's motion for a permanent injunction is GRANTED. Kaotica will submit a proposed permanent injunction order that prohibits the use of Kaotica's trade dress by Iconic in the sale, offer for sale, manufacture, or distribution of the Old and New Comet products, including prohibiting the use of their images in advertising or promotion of any Iconic products, and the immediate destruction of all infringing products in Iconic's possession or control. Iconic will file a report with the Court within 30 days of the issuance of the injunction certifying the destruction of the infringing products and setting forth the steps taken to comply with the removal of Old and New Comet images from any advertising or web pages.

**E. Conclusion**

Having considered the evidence at trial, the submissions of the parties, and the record in this case, in accordance with the determinations set forth above, the Court finds as follows:

1) Iconic's motion for a finding of unfair competition against Kaotica is DENIED.

2) Kaotica's motion for disgorgement of Iconic's profits is GRANTED IN PART to an amount of $356,243.

3) Kaotica's motion to enhance the damage award of $270,000 is GRANTED IN PART to an award of $350,000.

4) Kaotica's motion for attorneys' fees and expenses against Iconic is GRANTED.

5) Kaotica's motion to find Iconic's lead counsel Mr. Stephen Lobbin responsible for the awarded fees and costs jointly and severally with Iconic, pursuant to the Court's inherent authority to sanction and 28 U.S.C. § 1927 is GRANTED.

6) The parties will contact the Magistrate Judge within 3 court days to set a schedule for limited discovery on the financial resources of Iconic and Mr. Lobbin to satisfy the sanctions portion of the award and a briefing schedule for the filing of Kaotica's application for attorneys fees and expenses.

6) Kaotica's motion for a permanent injunction is GRANTED. Kaotica will submit a proposed injunction in accordance with the scope set forth in this order no later than 10 days after entry of this order.

It is **SO ORDERED**.

Dated: February 5, 2025

Hon. Cathy Ann Bencivengo
United States District Judge

The first exhibit, Kaotica's counsel came to me right before trial and said, "Look at this Exhibit 1.  It has got all these lines, and it is a corrupted image, and it looks terrible."  I don't know how that happened.

That was two and a half years, you know, post document, right?

Exhibit 2 also became prominent because, you know, it became an important document at trial, obviously.

As Your Honor and the parties discussed during the litigation, several times, at several hearings, when you are dealing with trade dress, you are dealing with products, three-dimensional objects.

THE COURT:  And they were here.  And the jury saw them.  All of them.

ATTORNEY LOBBIN:  They were here.  Yes.

My point is just -- not an excuse.  An explanation.

I wasn't thinking about the Exhibit 2 because I was thinking --

THE COURT:  It is such a bad excuse.  I just really don't -- first of all, this is not a 60(a) motion.  This was not a clerical mistake.  There was not an omission from the clerk's office.  This is a 60(b) motion.

You want to change the finding in the case because this a critical exhibit to the stipulated judgment.  It is, therefore, too late, and I have no jurisdiction to make this change.

Procedurally, your motion is two and a half years or three years too late.  On those grounds alone, I would deny it.

But the argument that you have made, substantively, is that the photograph that was attached -- which you had every responsibility, as counsel, signing off and having your client sign off on a stipulated judgment, to review it and make sure it was correct.  And you apparently did not do so, by your own statements here today, because now you are saying, "Oh, well, I never really looked at it.  I didn't give it any attention.  It went in and it was wrong."

That is not excusable neglect.  And he should perhaps be talking to your malpractice carrier.

But, in their opposition, at Docket 68, at page 10, they have -- do you have a copy of their opposition?

ATTORNEY LOBBIN:  I do.

THE COURT:  They included a Facebook page from January 25th of 2021 that shows the Iconic Mars Comet Version 1 with white font on the pop filter.

That has been your entire argument why the one attached to the stipulated judgment can't be the Version 1, because you have represented to the Court that that was available sometime in August, which is how it accidentally became the exhibit in the litigation, but not before then.

This is six weeks before the initial complaint was filed, and this Facebook page they included shows the white font pop

face -- whatever -- from January.

So explain that.

ATTORNEY LOBBIN:  Well, the lighting of the image shows it looks white.  It is not, because those weren't made then.  And that's based on -- I wasn't involved in the case at that point in time.  I am relying on my client to tell me that the gray pop filter was all that was used on the Version 1.

And only when the Version 2 came along, in the middle of 2021, was the white -- the stark white color used.

The dull gray, if lit up enough, will look like this.  But that's not a stark white color.

And that's based on -- you know, Your Honor, I am not involved in the business.  I rely on my client to tell me that, if it's dull gray, it's Version 1.  If it's stark white, it is Version 2.

And that's what he testified at trial, and that's what Exhibit 7, our motion, shows; that the documents, the products, the images of which were attached to the complaint, the motions for preliminary injunction that they filed in the first case show the accused product, which is also in the text of the stipulated judgment, which says specifically, "The accused products are those that Kaotica alleges infringe in this case."

Well, what are those?

In my view, you don't -- you don't even need Exhibit 2.

The text of the stipulated judgment says, "The accused

products are these."

You go look at the complaint; "Okay.  They are those."

THE COURT:  The text of the stipulated judgment says, "As attached, Exhibit 2."

ATTORNEY LOBBIN:  Understood.  Understood.

THE COURT:  And since it's trade dress, a picture tells a thousand words rather than a bunch of written description.

ATTORNEY LOBBIN:  Well, according to the Ninth Circuit, a picture is not enough.  You have to have a description of elements for trade dress.  A picture, by itself, is not enough to show a trade dress.  I think that's what the -- I have a case on that, if you want.

THE COURT:  Well, again, what you all wrote and agreed to, whether or not it was trade dress, whether or not it was infringed, whether or not it was functional, all became moot because you agreed it was trade dress; it was infringed; it was causing irreparable harm to Kaotica; and that the exhibit that was attached to the order represented the product that was accused of infringement.

Now, the only explanation I have from you that that is not the right product is that you never looked at it and you didn't know and it was wrong.

ATTORNEY LOBBIN:  Well, the explanation, which is in our motion, is that Kaotica's counsel at the time didn't send

it to me.  We were working on the text of the agreement.

THE COURT:  Sir, this is such a terrible excuse.

You were representing this man.  You were entering a stipulated judgment with the Court that contains this language. You clearly reviewed it with him -- I hope -- before you told him to sign it.  And the idea that you had him sign it without having the exhibits attached and just went, "Oh, it will be all right; whatever," and then went on to file litigation in the current case, based on that judgment, when you had every opportunity and should have taken every opportunity to look at it in detail and go, "Oh, wait.  Six months ago, we entered this and this is wrong," and took no steps timely to confront Kaotica and correct it, is inexcusable.

I am not changing anything about the stipulated judgment. It is what it is.  It's been filed.  It's history in this case. And it's procedurally too late to make a change.

ATTORNEY LOBBIN:  And the only point I would make is the internal inconsistency between the language of what is described as the accused products and the image.

THE COURT:  Which puts you even more on notice that you should have done something about it sooner.

Counsel, do you want to add anything?

ATTORNEY ADAMS:  I will be very brief, Your Honor. We agree with you entirely.

On the procedure, I won't add anything.

## PROOF OF SERVICE

I hereby certify that on January 14, 2026, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Stephen M. Lobbin*